WILLIAM F. ABRAMS (SBN 88805)
wabrams@steptoe.com
SANJEET K. DUTTA (SBN 203463)
sdutta@steptoe.com
STEPTOE & JOHNSON LLP
1001 Page Mill Road, Building 4, Suite 150
Palo Alto, CA 94304
Telephone: (650) 269-7779
Facsimile: (202) 429-3902

DOUGLAS R. PETERSON (SBN 215949)
dpeterson@steptoe.com
STEPTOE & JOHNSON LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA 90067
Telephone: (310) 734 3269
Facsimile: (310) 734 3300

Attorneys for Defendant DIABLO TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

OAKLAND DIVISION

| | |
|---|---|
| NETLIST, INC., <br><br> Plaintiff, <br><br> vs. <br><br> SMART MODULAR TECHNOLOGIES, INC., SMART STORAGE SYSTEMS, INC., SMART WORLDWIDE HOLDINGS, INC. and DIABLO TECHNOLOGIES, INC., <br><br> Defendants <br><br> AND RELATED CASE | Case No.: No. 4:13-cv-05889-YGR <br><br> Related Case Nos: 4:13-cv-03901-YGR <br><br> **DEFENDANT DIABLO TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION TO STRIKE NETLIST, INC.'S DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS PURSUANT TO LOCAL PATENT RULE 3-1.** <br><br> Date: April 8, 2014 <br> Time: 2:00 p.m. <br> Judge: Honorable Yvonne Gonzalez Rogers <br> Place   Courtroom 5 – 2nd Floor <br>            1301 Clay Street <br>            Oakland, CA 94612 |

# TABLE OF CONTENTS

**Page Nos.**

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL AND PROCEDURAL BACKGROUND........................................................ 3

III. ARGUMENT................................................................................................................... 4

    A. Netlist's Infringement Contentions Fail to Meet the Requirements of Patent Local Rule 3-1........................................................................................... 4

        1. Netlist Fails to Compare the Asserted Patent Claims to the Accused ULLtraDIMM ................................................................................ 5

            a. Netlist Fails to Identify the Integrated Circuit in the Accused ULLtraDIMM that Specifically Applies to Each Asserted Claim Element .................................................................... 5

            b. Netlist Improperly Compares the Asserted Claims to Unrelated Patent Applications ........................................................... 6

            c. Netlist Improperly Compares the Asserted Claims to Self-Serving Diagrams that have no Connection to the Accused ULLtraDIMM .................................................................... 7

            d. The Accused ULLtraDIMM Was Not Commercially Available ................................................................................................ 9

        2. Netlist's Infringement Contentions Contain Inadequate Vague and Conclusory Allegations...................................................................... 10

        3. Netlist's Infringement Contentions Fail to Identify Any Netlist Confidential Information ........................................................................ 11

    B. Netlist Has Failed to Make a Reasonable Pre-Filing Inquiry, as Required by Rule 11 ........................................................................................ 11

    C. Netlist's Infringement Contentions Should be Struck and Infringement Related Discovery Should be Stayed................................................................. 13

IV. CONCLUSION............................................................................................................. 14

# TABLE OF AUTHORITIES

**Page Nos.**

**FEDERAL CASES**

*Antonious v. Spalding & Evenflo Co.*, Inc.,
    275 F.3d 1066, 1072 (Fed. Cir. 2002)..................................................................................12

*Bender v. Maxim Integrated Products, Inc.*,
    No. C 09-01152 SI, 2010 U.S. Dist. LEXIS 32115 (N.D. Cal. Mar. 22, 2010) .............. passim

*Infineon Technologies v. Volterra Semiconductor*,
    No. C 11-06239 MMC (DMR), 2013 WL 322570 (N.D. Cal. Jan. 28, 2013)....................... 4-5

*Micro Motion, Inc. v. Kane Steel Co.*,
    894 F. 2d 1318 (Fed. Cir. 1990)..............................................................................................12

*Network Caching Tech., LLC v. Novell, Inc.*,
    No. C-01-2079-VRW, 2002 WL 32126128 (N.D. Cal. Aug. 13, 2002)....................................5

*Nike, Inc. v. Adidas America Inc*
    479 F. Supp. 2d 664 (E.D. Tex. 2007)....................................................................................13

*O2 Micro Int'l Ltd. v. Monolithic Power Systems, Inc.*,
    467 F.3d 1355 (Fed. Cir. 2006)...............................................................................................13

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
    360 F.3d 1295 (Fed. Cir. 2004)...............................................................................................12

*Shared Memory Graphics LLC v. Apple, Inc.*,
    812 F. Supp. 2d 1022 (N.D. Cal. 2010) ..................................................................................11

*Tessenderlo Kerley, Inc. v. OR-Cal, Inc.*,
    No. C 11-04100 WHA, 2012 WL 1253178 (N.D. Cal. Apr. 13, 2012)....................................5

*Theranos, Inc. v. Fuisz Pharma LLC*,
    No. 11-CV-05236-YGR, 2012 WL 6000798 (N.D. Cal. Nov. 30, 2012)...................... 2, 12-13

*View Eng'g Inc v. Robotic Vision Systems, Inc.*,
    208 F.3d 981, 986 (Fed. Cir. 2000) ........................................................................................12

*Zenith Laboratories, Inc. v. Bristol-Myers Squibb Co.*,
    19 F.3d 1418 (Fed. Cir. 1994)............................................................................................. 7-8

ii

Case No. 4:13-cv-05889-YGR
MOTION TO STRIKE NETLIST'S INFRINGEMENT CONTENTIONS

**TABLE OF AUTHORITIES (CONTINUED)**

**OTHER AUTHORITIES**

Rule 11 of the Federal Rules of Civil Procedure ............................................................ 2, 4, 12-14

Patent Local Rule 3-1................................................................................................................ passim

Patent Local Rule 3-1(c) .............................................................................................................1, 4

Patent Local Rule 3-3......................................................................................................................2

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 8, 2014 at 2:00 p.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Yvonne Gonzalez Rogers, located at 1301 Clay Street, Oakland, CA 94612, Defendant Diablo Technologies, Inc. ("Diablo"), will and hereby does move the Court to strike Plaintiff Netlist, Inc.'s ("Netlist's") Disclosure of Asserted Claims and Infringement Contentions ("Infringement Contentions") pursuant to Local Patent Rule 3-1.

Specifically, Diablo seeks an order striking Netlist's Infringement Contentions and staying infringement related discovery until Netlist is able to amend its Infringement Contentions and comply with Patent Local Rule 3-1.

Diablo's Motion is based on this Notice of Motion and Motion, the following Memorandum, the supporting declarations and exhibits filed herewith, all pleadings and papers on file in this action, and such other materials and oral argument as may be presented at the hearing of this matter.

**ISSUES TO BE DECIDED**

1.  Whether Netlist's Infringement Contentions are inadequate under Patent Local Rule 3-1 because Netlist fails to compare the asserted claims to the accused product, and whether this Court should strike the contentions and order that infringement-related discovery be stayed to prevent further prejudice to Defendants.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Netlist's Infringement Contentions fail to comply with Patent L.R. 3-1(c). They do not compare the asserted claims to the accused product (ULLtraDIMM) because: (1) Netlist fails to locate the asserted claim elements on the integrated circuit of the accused ULLtraDIMM; (2) Netlist improperly compares its asserted claims to portions of unrelated patent applications from Smart Storage and Diablo; (3) Netlist improperly compares the patent claims to self-serving diagrams drafted by Netlist that have no connection to the accused product; (4) the accused

1  ULLtraDIMM was not commercially available when Netlist prepared its Infringement
2  Contentions; and (5) Netlist relies on vague and conclusory allegations that "discovery is likely
3  to show" for over 50 claim elements of the asserted patent claims.
4       Thus, an order striking the Infringement Contentions and staying further infringement
5  related discovery (including Patent L.R. 3-3 Invalidity Contentions) is the appropriate remedy.
6  *Theranos, Inc. v. Fuisz Pharma LLC*, No. 11-CV-05236-YGR, 2012 WL 6000798, at *7 (N.D.
7  Cal. Nov. 30, 2012).
8       There is no dispute that ULLtraDIMM was not commercially available when Netlist
9  prepared its Infringement Contentions. Once available, ULLtraDIMM will be a module for
10 increasing memory in servers. Dutta Decl., ¶ 16.  Netlist's Infringement Contentions do not
11 compare the asserted patent claims to the accused ULLtraDIMM.  Instead, Netlist compares its
12 asserted claims to portions of unrelated patent applications from Smart Storage and Diablo that
13 do not mention ULLtraDIMM.  Netlist does not explain how those patent applications relate to
14 the accused product.  Netlist also drafted self-serving, error-filled diagrams that have no
15 connection to the accused product.  The Infringement Contentions are further based on alleged
16 information including research into memory systems in general, and industry knowledge.
17 Netlist's Infringement Contentions cannot comply with Patent L.R. 3-1 without analyzing the
18 accused product itself because, without the accused product, Netlist cannot identify the circuits
19 in the accused product that specifically apply to each claim element.
20      By including vague and conclusory allegations that "discovery is likely to show" entire
21 elements of the asserted patent claims, Netlist asks Defendants and the Court to assume the
22 presence of claim elements, a strategy that violates the Local Rules and Rule 11.  This strategy
23 improperly shifts the burden to Defendants to establish that Netlist's Infringement Contentions
24 have a reasonable factual basis.
25      Accordingly, the Court should strike Netlist's Infringement Contentions, and in light of
26 Netlist's failure to provide adequate notice of the scope and nature of its infringement claims,
27 stay discovery related to infringement.
28

2

## II. FACTUAL AND PROCEDURAL BACKGROUND

On July 1, 2013, Netlist filed a Complaint for antitrust violations, unfair competition, and fraud against Smart Modular. Dkt. 1. On August 23, 2013, Netlist filed a First Amended Complaint alleging, *inter alia*, patent infringement of U.S. Patent Nos. 8,001,434 ("the '434 patent"), 8,301,833 ("the '833 patent"), 8,359,501 ("the '501 patent"), 8,516,185 ("the '185 patent), and 8,516,187 ("the '187 patent") against Smart Modular, Smart Worldwide, Smart Storage and Diablo. Dkt. 5.

Netlist did not attempt to obtain the accused ULLtraDIMM before filing suit. Dutta Decl., ¶ 12. Not until November 25, 2013, three months after asserting infringement, did Netlist first attempted to obtain the accused ULLtraDIMM by asking for a sample in its First Set of Requests for Production (RFP No. 4). *Id* at. ¶ 7, Ex. D. Diablo served proper objections to Netlist's discovery requests and Netlist has not attempted to overcome these objections. *Id* at. ¶ 7, Ex. E.

On January 21, 2014, Netlist served its Preliminary Infringement Contentions pursuant to Patent L.R. 3-1 contending that ULLtraDIMM infringes seven patents, including the five above-identified patents and U.S. Patent Nos. 7,881,150 ("the '150 patent") and 8,081,536 ("the '536 patent"). Netlist asserts 66 claims in its Infringement Contentions. *Id.* at ¶¶ 4-5, Ex. A, A-1-A-7. The '150 patent and the '536 patent were not included in any pleading that preceded the service of the Infringement Contentions. At the time that Netlist served its Infringement Contentions on Defendants, the accused ULLtraDIMM was not available publicly or commercially. *Id.* at ¶ 13.

To correct Netlist's improper assertion of two additional patents in its Infringement Contentions, Netlist filed a Motion for leave to file a Second Amended Complaint to amend the complaint to assert infringement of the '150 patent and the '536 patent on January 21, 2014. Dkt. 128. The Court granted this Motion for leave to file a Second Amended Complaint on February 5, 2014. Dkt. 140.

On February 3, 2014, a letter, on behalf of the Defendants, was sent to Netlist's counsel addressing the deficiencies in Netlist's Infringement Contentions. Dutta Decl., ¶ 9, Ex. F. Subsequently the parties met and conferred telephonically on February 7, 2014 and in person on

February 11, 2014 to discuss Netlist's deficient Infringement Contentions, but could not reach a resolution.

## III. ARGUMENT

### A. Netlist's Infringement Contentions Fail to Meet the Requirements of Patent Local Rule 3-1

The infringement contentions show that Netlist did not, and could not, conduct a sufficient pre-filing investigation, and instead, hopes to obtain information through its discovery requests to cure its deficiencies. This strategy violates the requirements of Patent L.R. 3-1 and Rule 11.

The "overriding principle of the Patent Local Rules is that they are designed [to] make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims." *Bender v. Maxim Integrated Products, Inc.*, No. C 09-01152 SI, 2010 U.S. Dist. LEXIS 32115, at *3-4 (N.D. Cal. Mar. 22, 2010) (citation omitted). The Patent Local Rules require any party claiming patent infringement to provide "[a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality." Patent L.R. 3-1(c). The purpose of Patent Local Rule 3-1 is to "require a plaintiff to crystalize its theory of the case and patent claims." *Bender*, 2010 U.S. Dist. LEXIS 32115, at *7 (citation omitted). Patent L.R. 3-1 "mandates that a plaintiff's infringement contentions 'must be sufficient ... to raise a reasonable inference that all accused products infringe.'" *Infineon Technologies v. Volterra Semiconductor*, No. C 11-06239 MMC (DMR), 2013 WL 322570, at *3 (N.D. Cal. Jan. 28, 2013) (citation omitted). This standard "necessitates a level of detail that **reverse engineering or its equivalent** would provide." *Id.* at *4 (emphasis added) (citation omitted); *see also Network Caching Tech., LLC v. Novell, Inc.,* No. C-01-2079-VRW, 2002 WL 32126128, at *4-5 (N.D. Cal. Aug. 13, 2002) ("reverse engineering or its equivalent is required"); *Tessenderlo Kerley, Inc. v. OR-Cal, Inc.,*

4

No. C 11-04100 WHA, 2012 WL 1253178, at *2 (N.D. Cal. Apr. 13, 2012) ("To satisfy Rule 3-1 ... reverse engineering or its equivalent are required") (citation omitted).

The Infringement Contentions lack the requisite specificity to put Defendants on notice of Netlist's infringement theories, and fail to make the "reverse engineering or equivalent" showing that is necessary to meet that standard. Indeed Netlist could not have met this standard since the accused ULLtraDIMM was not commercially available in the marketplace.

        **1.**     **Netlist Fails to Compare the Asserted Patent Claims to the Accused ULLtraDIMM**

Netlist accuses ULLtraDIMM of infringement, but fails to compare the asserted claims to the accused product as required by Patent L.R. 3-1. Netlist failed its obligations in multiple ways. For example, (a) Netlist fails to locate the asserted claim elements on the integrated circuit of the accused ULLtraDIMM; (b) Netlist improperly compares its asserted claims to unrelated patent applications from Smart Storage and Diablo; (c) Netlist improperly compares the patent claims to self-serving diagrams drafted by Netlist that have no connection to the accused product; and (d) the accused ULLtraDIMM was not commercially available when Netlist prepared its Infringement Contentions.

        **a.**     **Netlist Fails to Identify the Integrated Circuit in the Accused ULLtraDIMM that Specifically Applies to Each Asserted Claim Element**

In the context of semiconductor chips, infringement contentions must identify where the asserted claim elements are located on the integrated circuit of the accused product to comply with Patent L.R. 3-1. *Bender*, 2010 U.S. Dist. LEXIS 32115, at *5-6. In *Bender*, the court found that plaintiff's infringement contentions were based on assumption, and held that Plaintiff's infringement contentions did not comply with Patent L.R. 3-1 because the claim charts did not actually specify the location of each element within the accused product. *Id*. As an example from *Bender*, one improper element in the claim chart asserted:

    This element is located on the integrated circuit contained in the
product. They are not shown; however, in this case, the current
rails are necessary for buffers to perform their function. The
element is connected to the Vin and Vout connection pins.
Therefore, they are required and inherent in the design.

  Netlist's Infringement Contentions suffer from the same defects.  A review of the Infringement Contentions confirms that Netlist does not identify the circuit in the accused ULLtraDIMM that specifically applies to each of the claim elements. Dutta Decl., Ex. A-1 – A-7.  By not identifying the circuit in the accused ULLtraDIMM that specifically applies to each claim element, Netlist did not meet its obligations under Patent L.R. 3-1.

### b.   Netlist Improperly Compares the Asserted Claims to Unrelated Patent Applications

  Netlist improperly bases its Infringement Contentions on disclosures in patent applications by Smart Storage and Diablo, but does not explain how these patent applications are connected to the accused product.  For example, for element 1 of the asserted '434 patent, Netlist improperly compares the asserted claim element to a Smart Storage patent application, without establishing that the patent application is related to the accused ULLtraDIMM: "[a]spects, including self-testing, of the "Guardian Technology" are described in Smart's US2013/0061101, of which FIG. 1 is shown below. This publication makes clear that self-testing takes place on the ULLtraDIMM."  Dutta Decl., Ex. A-1 (element 1.0 of the '434 patent).[1] Similarly, for element 18.0 of the asserted '187 Patent,  Netlist improperly compares the asserted claim element to a Diablo patent application, without establishing that the patent application is related to the accused ULLtraDIMM product:  "Diablo's US2012/0204079 patent application describes

---

[1] *See also*, Dutta Decl., Ex. B (elements 1.0, 1.3, 1.5 of the '434 patent); and (elements 1.0, 1.2, 1.4, 2.0, 14.0, 15.0 of the '501 patent).

1  performing ECC detection/correction on each data word transferred from the buffer into the non-
2  volatile memory subsystem." *Id.*, Ex. A-5, (element 18.0 of the '187 patent).[2]
3         Netlist provides no reason why the Smart Storage and Diablo patent applications
4  identified in its Infringement Contentions are related to the accused product and even states in
5  the Joint Discovery Letter No. 1 that its Infringement Contentions "are based on … information
6  in patent applications that Netlist **believes** relate to the accused product." (Emphasis added). See
7  Dkt. 146-4 at 1. In addition, the Infringement Contentions state "[r]easonable opportunity for
8  discovery is likely to show that aspects of the ULLtraDIMM are described in Diablo's
9  US2012/0204079 patent application." Dutta Decl., A-5 (element 10.0 of the '187 patent).
10        There is no presumption that the relied upon Smart Storage and Diablo patent
11 applications must describe the accused ULLtraDIMM.  This is why it is improper for Netlist to
12 compare the asserted claims to unrelated patent applications in its Infringement Contentions.
13 Similarly, since there is no presumption that a patent application or patent must describe the
14 applicant's or patentee's product, the Federal Circuit has stated that it is improper to compare an
15 alleged infringer's accused product with the patentee's commercial embodiment, instead of the
16 claims of the asserted patent, when analyzing infringement.  *Zenith Laboratories, Inc. v.*
17 *Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994) ("[I]t is error for a court to
18 compare in its infringement analysis the accused product or process with the patentee's
19 commercial embodiment or other version of the product or process….")  It is only proper to
20 compare the claims of the asserted patent with the accused product.  *Id*.  Therefore, Netlist's
21 reliance on the disclosures in the patent applications of Smart Storage and Diablo is improper.

    c.  **Netlist Improperly Compares the Asserted Claims to Self-Serving Diagrams that have no Connection to the Accused ULLtraDIMM**

---

[2] *See also*, Dutta Decl., Ex. B (elements 1.0 of the '434 patent); (element 1.1 of the '833 patent); (element 1.0 of the '501 patent); (element 13.0 of the '185 patent); (elements 10.0, 10.1, 18.0 of the '187 patent); (elements 1.0, 1.1, 1.2, 1.3, 1.4, 16.0, 17.0 of the '536 patent); (elements 1.0, 1.1, 1.2, 1.3, 1.4, 1.6, 2.0, 4.0, 5.0, 15.4, 17.0 of the '150 patent).

1       Netlist also drafted self-serving diagrams (an example is shown below) in its
2  Infringement Contentions that have no connection to the accused product. Dutta Decl., Ex. A-1
3  (element 1.0 of the '434 patent).



15      Netlist's diagrams are based on information unrelated to the accused product: patent
16  applications, research into memory systems in general (product datasheets, etc.), and industry
17  knowledge.  *Id*.  Netlist also states that the diagrams it drafted are based on photographs of the
18  ULLtraDIMM module. *Id*. at Ex. A-2 (element 1.1 of the '833 Patent).  A photograph, however,
19  cannot be used to identify specific functional requirements and circuitry that is claimed in the
20  asserted patents.  Reverse engineering, testing, or its equivalent is required to determine the
21  detailed technical functionality of the memory module and the circuits contained therein as
22  required by the asserted claims.[3]  *See Bender*, 2010 U.S. Dist. LEXIS 32115, at *4.  Netlist
23  performed no such reverse engineering, testing or its equivalent, and as such, its reliance on a

---

[3] For example, asserted independent claim 15 of the '833 patent recites "operating the volatile memory subsystem at a first clock frequency when the memory system is in a first mode of operation," and "operating the non-volatile memory subsystem at a second clock frequency when the memory system is in a second mode of operation."  Reverse engineering and testing of the memory module would be required to determine the functionality of these limitations recited in claim 15 of the '833 patent.

8

1  photograph without further investigation is not sufficient to specify the location of each asserted
2  claim element on the accused ULLtraDIMM.
3        The photographs of the ULLtraDIMM module used by Netlist in its Infringement
4  Contentions are not of a commercial product.  Dutta Decl., Ex. A-1 – A-7.  Instead, these
5  photographs are of a prototype.  *Id.*  This is evident, for example, because the photograph of the
6  ULLtraDIMM module (shown below) contains a testing port (circled in yellow) which will not
7  be included in the full production ULLtraDIMM module.  *Id*.



15            **d.    The Accused ULLtraDIMM Was Not Commercially Available**
16        Netlist admits that its Infringement Contentions are not based on the accused
17  ULLtraDIMM by stating that "ULLtraDIMM had not shipped when the PICs were served."  *See*
18  Joint Discovery Letter No. 1 (Dkt. 146-4 at 1).  The accused ULLtraDIMM was not available
19  when the infringement claims were filed or when the Infringement Contentions were prepared.
20  Dutta Decl., ¶ 13.  Thus, Netlist cannot satisfy Patent L.R. 3-1 because it could not have
21  analyzed the accused ULLtraDIMM prior to filing its Infringement Contentions.  This is
22  consistent with the Court's findings in *Bender*, which stated that "for infringement contentions to
23  satisfy Patent L.R. 3-1, 'plaintiff [must] compare an accused product to its patents on a claim by
24  claim, element by element basis. . . reverse engineering or its equivalent are required." *Bender,*
25  2010 U.S. Dist. LEXIS 32115, at *4 (citation omitted).  Netlist's Infringement Contentions
26  should be struck because there was no accused product for Netlist to compare with the asserted
27  claims when preparing the Infringement Contentions.
28

1  Thus, for these above-reasons, Netlist's Infringement Contentions do not disclose the
2  specificity required by Patent L.R. 3-1 because they fail to compare the accused product with the
3  asserted claims.

### 2. Netlist's Infringement Contentions Contain Inadequate Vague and Conclusory Allegations

Netlist's Infringement Contentions repeat the phrase "discovery is likely to show" for more than 50 claim elements, and is recited for at least one claim element of each asserted independent claim. For example, for element 1.3 of the asserted '434 patent, Netlist recites the following conclusory allegation: "[r]easonable opportunity for discovery is likely to show that Diablo Bolt devices comprise data handlers that operate independently." Dutta Decl., Ex. A-1 (element 1.3 of the '434 patent).[4]

By relying on future discovery to show asserted claim elements, Netlist has not identified all asserted claim elements in the accused ULLtraDIMM product, as it is required under Patent L.R. 3-1. Instead, Netlist is essentially asking Defendants and the Court to assume the presence of these claim elements, a strategy that Courts in this district have specifically rejected. *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1026 (N.D. Cal. 2010). In *Shared Memory Graphics*, the court found that infringement contentions were insufficient because they contained "vague contentions and conclusory statements [that] invite Defendants and the Court merely to *assume* the presence of a [claim element]." *Id*. Similarly, Netlist's repeated vague and conclusory assertions that "reasonable opportunity for discovery is likely to show" over 50 claim elements are insufficient. By relying on future discovery to identify these elements, Netlist is

---

[4] *See also*, Dutta Decl., Ex. C (elements 1.3, 1.4, 2.0, 3.0, 7.0, 15.0, 16.0, 20.3, 20.4, 20.5, 21.0, 27.0, 29.4, 29.5, 29.6, 30.0 of the '434 patent); (elements 1.2, 1.4, 2.0, 15.1, 15.3, 16.0, 18.0 of the '833 patent); Ex. A-3 (elements 1.2, 4.0, 16.1 of the '501 patent); (elements 13.0, 13.1, 13.2, 13.3, 13.4 of the '185 patent); (elements 10.0, 10.1, 26.0, 26.2 of the '187 patent); (elements 1.0, 1.1, 1.2, 1.3, 16.0, 24.0, 24.1, 24.2, 24.3, 30.0 of the '536 patent); (elements 1.0, 1.1, 1.4, 1.6, 3.0, 6.0, 10.0, 15.0, 15.1, 22.0, 22.1, 22.4, 26.0, 31, 31.1 of the '150 patent).

improperly asking Diablo and this Court to assume the existence of these claim elements in the Infringement Contentions.

Accordingly, Diablo is severely prejudiced by Netlist's Infringement Contentions, which neither explain Netlist's current theory of infringement nor prevent Netlist from bringing whatever theories it wants later in the litigation.

### 3. Netlist's Infringement Contentions Fail to Identify Any Netlist Confidential Information

To the extent Netlist attempts to argue that its Infringement Contentions are sufficient based on its prior relationship with Diablo and its associated knowledge of the technology, *see e.g.*, Netlist First Amended Complaint at ¶ 10(f) in 13-cv-05889 (Dkt.5); Joint Discovery Letter at 1 ("Netlist's PICs are based on … information Netlist believes to be true based on Netlist's own familiarity with the technology and Netlist's prior association with Defendant Diablo."), there is no such connection. Netlist's Infringement Contentions do not cite to any confidential information that Netlist provided to Diablo when mapping elements of the asserted claims to the accused product. Dutta Decl., A-1 – A-7. Additionally, Netlist's Infringement Contentions do not cite to the anonymous letter, which also is potentially defamatory, constitutes hearsay, and is not authenticated. Netlist admitted this in its Response to Order to Show Cause (Dkt. 109 at 4) stating that it "will establish authenticity and admissibility of the letter after Netlist has the opportunity to conduct discovery."

## B. Netlist Has Failed to Make a Reasonable Pre-Filing Inquiry, as Required by Rule 11

Netlist admits that it did not analyze the accused ULLtraDIMM module before filing its Infringement Contentions because the accused product was not commercially available. *See* Joint Discovery Letter No. 1 (Dkt. 146-4 at 1). This clearly violates Rule 11 of the Federal Rules of Civil Procedure, which "require[s] that an attorney interpret the pertinent claims of the patent in issue before filing a complaint alleging patent infringement." *Antonious v. Spalding & Evenflo Cos.*, Inc., 275 F.3d 1066, 1072 (Fed. Cir. 2002). This entails, "at a bare minimum, apply[ing]

the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least one claim of each patent so asserted." *View Eng'g Inc v. Robotic Vision Systems, Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000). *See also*, *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1301 (Fed. Cir. 2004) ("[W]e have interpreted Rule 11 to require, at a minimum, that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement.").

The requirements of Rule 11 are the reason Netlist is not excused from providing adequate Infringement Contentions before receiving a sample of the accused ULLtraDIMM from the Defendants through discovery. "The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery*, not to find out if it has any basis for a claim." *Micro Motion, Inc. v. Kane Steel Co.*, 894 F. 2d 1318, 1327 (Fed. Cir. 1990) (emphasis added). Further, a lack of publicly available information relating to the accused product does not excuse a patentee from conducting a reasonable inquiry prior to filing suit, as is required by Rule 11. *See Theranos, Inc.*, 2012 WL 6000798, at *7.

Netlist's deficient Infringement Contentions result from an inadequate pre-filing investigation, which is a violation of Rule 11. This Court has recognized that "Rule 11's 'prefiling inquiry establishes a minimum level of detail that Patent [L.R.] 3-1 [also] requires.'" *Theranos, Inc.*, 2012 WL 6000798, at *6 (citation omitted). By not performing an adequate pre-filing investigation pursuant to Rule 11, Netlist has failed to provide the minimum level of detail in its Infringement Contentions that Patent L.R. 3-1 requires.

Netlist's use of conclusory statements throughout its Infringement Contentions is further evidence that Netlist has not made a reasonable inquiry into applicable facts prior to filing its infringement claims. By relying on a suspicion that the accused ULLtraDIMM may infringe its patents and waiting for discovery to determine if it has any basis for its infringement claims, Netlist is in clear violation of Rule 11. Such a strategy is an extraordinary waste of both judicial and the parties' resources because it does not provide Defendants with reasonable notice of why

Netlist believes it has a "reasonable chance of proving infringement." See *Theranos, Inc.,* 2012 WL 6000798, at *3, *6 (citations omitted).

### C. Netlist's Infringement Contentions Should be Struck and Infringement Related Discovery Should be Stayed

The Court has the inherent power to enforce its scheduling orders and rules. *See, e.g.*, *Nike, Inc. v. Adidas America Inc.*, 479 F. Supp. 2d 664, 668 (E.D. Tex. 2007); *O2 Micro Int'l Ltd. v. Monolithic Power Systems, Inc.*, 467 F.3d 1355, 1363. This Court recently found that it was appropriate to strike infringement contentions and stay infringement related discovery when a patentee served deficient infringement contentions. *See Theranos, Inc.*, 2012 WL 6000798 at *7. In *Theranos*, the patentee's (Fuisz's) infringement contentions failed to compare the asserted claims to the actual accused product and instead relied on conclusory responses, such as "on information and belief." *Id*. at *5. Even though Fuisz conceded that it did not have enough information on the accused product to provide more detailed responses in accordance with Patent L.R. 3-1, this Court found that "[e]ven if little publicly-known information about Theranos' technologies is available, Fuisz's obligations under the Local Rules, Fed. R. Civ. P. 11, or other Federal Circuit authority are not obviated." *Id*. at *6. This Court also found that Fuisz was improperly trying to shift the burden to the accused infringer (Theranos) by only offering to amend its infringement contentions after Fuisz had received discovery from Theranos. *Id*.

Similarly, Netlist's obligations under the Local Rules and Rule 11 are not obviated by a lack of publicly-known information about the accused ULLtraDIMM. Netlist did not attempt to obtain the accused ULLtraDIMM prior to filing suit, which did not exist as a commercial product at the time Netlist filed suit, and still did not exist when Netlist served its Infringement Contentions. Netlist should not be allowed to improperly shift the burden to the Defendants by seeking to compel Defendants to produce infringement-related discovery before Netlist provides infringement contentions that comply with the Patent Local Rules and specifically identify a sufficient determination of infringement.

Accordingly, not only should Netlist's Infringement Contentions be struck, but all infringement related discovery should be stayed because Netlist's Infringement Contention are

deficient for all of the reasons discussed above.  Netlist should not be allowed to later amend its Infringement Contentions after receiving discovery from the Defendants.

**IV.     CONCLUSION**

      For all of the foregoing reasons, Diablo request that the Court strike Netlist's Infringement Contentions and stay all infringement related discovery.

Dated:  February 28, 2014                    STEPTOE & JOHNSON LLP


                                                                   By:     /s/ Douglas R. Peterson

                                                       WILLIAM F. ABRAMS
                                                       SANJEET K. DUTTA
                                                     DOUGLAS R. PETERSON
                                                     Attorneys for Defendant DIABLO TECHNOLOGIES, INC.