Thomas J. Wimbiscus (*Pro Hac Vice*)
twimbiscus@mcandrews-ip.com
Gregory C. Schodde (*Pro Hac Vice*)
gschodde@mcandrews-ip.com
Wayne H. Bradley (*Pro Hac Vice*)
wbradley@mcandrews-ip.com
**McANDREWS, HELD & MALLOY, LTD.**
500 West Madison Street, 34th Floor
Chicago, Illinois 60661
312-775-8000
312-775-8100 - Facsimile

Benjamin K. Riley (CA Bar No. 112007)
briley@bzbm.com
Robert N. Bunzel (CA Bar No. 99395)
rbunzel@bzbm.com
W. Paul Schuck (CA Bar No. 203717)
pschuck@bzbm.com
Sony B. Barari (CA Bar No. 243379)
sbarari@bzbm.com
Simon R. Goodfellow (CA Bar No. 246085)
sgoodfellow@bzbm.com
**BARTKO, ZANKEL, BUNZEL & MILLER**
One Embarcadero Center, Suite 800
San Francisco, California 94111
(415) 956-1900
(415) 956-1152 - Facsimile

Sean C. Cunningham (CA Bar No. 174931)
sean.cunningham@dlapiper.com
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, California 92101-4297
619-699-2700
619-699-2701 - Facsimile

Attorneys for Plaintiff
NETLIST, INC.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| NETLIST, INC., <br><br> Plaintiff, <br><br> v. <br><br> SMART STORAGE SYSTEMS, INC., SMART WORLDWIDE HOLDINGS, INC. and DIABLO TECHNOLOGIES, INC., <br><br> Defendants. | CASE NO. 4:13-CV-05889-YGR <br><br> **NETLIST, INC.'S OPPOSITION TO DIABLO TECHNOLOGIES, INC.'S MOTION TO STRIKE** <br><br> Date:      April 8, 2014 <br> Time:      2:00 p.m. <br> Ctrm:      5, 2nd Floor <br> Judge:      Hon. Yvonne Gonzalez Rogers |

1

## **TABLE OF CONTENTS**

2

3    I.      INTRODUCTION ......................................................................................... 1

4    II.     FACTS ......................................................................................................... 1

5    III.    ARGUMENT ............................................................................................... 3

6            A.     Netlist's Well-Reasoned And Detailed ICs Satisfy Patent Local Rule 3-1
                    Because They Are Objectively Reasonable And Based On The Information
7                   Available To Netlist ......................................................................... 3

8            B.     Diablo's Authority Is Distinguishable From The Present Case Because, At
                    A Minimum, Netlist's ICs Were Sufficiently Detailed And Netlist Did Not
9                   Have Access To ULLtraDIMM ......................................................... 5

10           C.     Diablo Continues To Hold Up The Discovery Process By Refusing To
                    Comply With Established Procedure ................................................. 7

11
             D.     Diablo's Rule 11 Argument Is Both Misplaced and Premature............................ 8

12
     IV.    CONCLUSION ......................................................................................... 10
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

**Cases**

*Antonious v. Spalding & Evenflo Cos., Inc.,*
  275 F.3d 1066 (Fed. Cir. 2002)...................................................................................... 9

*Bender v. Maxim Integrated Products,*
  No. C 09-01152 SI, 2010 U.S. Dist. LEXIS 32115 (N.D. Cal. Mar. 22, 2010) .................... 6, 7

*Creagri, Inc. v. Pinnaclife Inc., LLC,*
  No. 11-CV-06635, 2012 WL 5389775 (N.D. Cal. Nov. 2, 2012)......................................... 3, 4

*France Telecom, S.A. v. Marvell Semiconductor, Inc.,*
  No. 12-CV-04967, 2013 WL 1878912 (N.D. Cal. May 3, 2013) ............................................. 4

*FusionArc, Inc. v. Solidus Networks, Inc.,*
  No. C 06-06760, 2007 WL 1052900 (N.D. Cal. Apr. 5, 2007) ............................................. 5, 8

*In Theranos, Inc. v. Fuisz Pharma LLC,*
  No. 11-CV-05236-YGR, 2012 WL 6000798 (N.D. Cal. Nov. 30, 2012)................................. 6

*Infineon Technologies v. Volterra Semiconductor,*
  No. C 11-06239 MMC (DMR), 2013 WL 322570 (N.D. Cal. Jan. 28, 2013)....................... 6, 7

*Micro Motion, Inc. v. Kane Steel Co..,*
  894 F.2d 1318 (Fed. Cir. 1990)........................................................................................ 9

*Network Caching Tech., LLC v. Novell, Inc.,*
  No. C-01-2079-VRW, 2002 WL 32126128 (N.D. Cal. Aug. 13, 2002)................................. 6, 8

*Q-Pharma, Inc. v. Andrew Jergens Co.,*
  360 F.3d 1295 (Fed. Cir. 2004)........................................................................................ 9

*SAGE Electrochromics Inc. v. View Inc.,*
  No. C-12-06441, 2013 WL 4777164 (N.D. Cal. Sept. 6, 2013) .................................. 1, 4, 5, 8

*Shared Memory Graphics LLC v. Apple, Inc.,*
  812 F. Supp. 2d 1022 (N.D. Cal. 2010) ........................................................................... 5

*Tessenderlo Kerley, Inc. v. OR-Cal, Inc.,*
  No. C 11-04100 WHA, 2012 WL 1253178 (N.D. Cal. Apr. 13, 2012)................................. 6, 7

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.,*

    208 F.3d 981 (Fed. Cir. 2000) ................................................................................... 9

*Zenith Laboratories, Inc. v. Bristol-Myers Squibb Co.,*

    19 F.3d 1418 (Fed. Cir. 1994) .................................................................................. 5

**Rules**

*Fed. R. Civ. P. 11(b)* ........................................................................................................... 8

*Fed. R. Civ. P. 72(a)* ........................................................................................................... 8

1

**STATEMENT OF THE ISSUES**

2      (1) Whether Netlist's Disclosure of Asserted Claims and Infringement Contentions

3   ("ICs") satisfy the requirements of Patent Local Rule 3-1, where (a) Netlist's ICs are based on the

4   information available to Netlist at the time it filed its ICs, (b) the accused product was not

5   available to Netlist, and (c) the factual bases for Netlist's ICs are disclosed.

6      (2) Whether infringement-related discovery should proceed as scheduled.

7   **I.      INTRODUCTION**

8      Netlist's ICs satisfy Patent Local Rule 3-1.  The accused ULLtraDIMM product was

9   impossible to obtain when the ICs were served, and the accused product continues to be

10  unavailable to Netlist.  Indeed, Diablo continues to refuse to provide either a physical sample or

11  documents sufficient to describe the accused product.  Where a patentee's preparation of its

12  infringement contentions is limited because it does not have access to the accused products, a

13  patentee may "**appropriately rel[y] on the information known to it through publicly available**

14  **materials in formulating its ICs**." *See SAGE Electrochromics Inc. v. View Inc.*, No. C-12-

15  06441, 2013 WL 4777164, at *3 (N.D. Cal. Sept. 6, 2013) (emphasis added).  Netlist provided

16  237 pages of well-reasoned ICs with extensive charts, including 71 pages of charts that point out

17  in graphic detail where in ULLtraDIMM each limitation of each asserted claim is found or will

18  likely be found.  Netlist has adequately put the defendants on notice of how and why it believes

19  the ULLtraDIMM infringes.  The law does not "reverse engineering or its equivalent" for ICs,

20  especially when the accused product is not available to be reverse engineered.  Cases that suggest

21  otherwise are distinguishable on their facts.  A bright line rule requiring reverse engineering

22  would negate the statutory remedy for "offer for sale" of infringing articles without even making

23  them, 35 U.S.C. § 271.  It would also allow the sale of infringing products with impunity as long

24  as the customers are contractually bound to secrecy.  Patent Local Rule 3-1 does not support such

25  a result.

26  /////

27  /////

28  /////

## II.    FACTS

On January 21, 2014, Netlist submitted its ICs pursuant to the Court's scheduling order and Patent Local Rules 3-1 and 3-2.  In the ICs, Netlist mapped every asserted claim element onto the accused product based on the information available to it.  Because Netlist was unable to obtain a sample of the accused ULLtraDIMM product—"[t]he ULLtraDIMM was not publicly or commercially available on January 21, 2014, the date Netlist served its Infringement Contentions" (Dkt. No. 150, Dutta Decl. ¶ 13)—Netlist relied on the information known to Netlist as of January 21, 2014, which includes (a) public statements and photographs found in the public domain about ULLtraDIMM; (b) information in patent applications that Netlist believes relate to the accused product; and (c) information Netlist believes to be true based on Netlist's own familiarity with the technology and Netlist's prior association with Diablo.  Netlist's contentions are further supported by the unsolicited receipt of a "whistleblower" letter stating that Diablo had in fact stolen Netlist's technology to develop the ULLtraDIMM.  (Dkt. No. 113, Exhibit A; Dkt. No. 117-5, Exhibit D, Page 9 of 23 ("I notice that Netlist is suing Diablo Technologies and SMART storage systems for Patent Infringements.  In my opinion, Diablo did not just infringe the patents but also stole Netlist's detailed architecture and design.").)

Absent from Diablo's motion is a single drawing, diagram, affidavit, specification, or other evidentiary support for the proposition that ULLtraDIMM is anything other than what Netlist has alleged that it is.[1]  Diablo does not assert that Netlist has failed to accurately map the asserted claims onto ULLtraDIMM or that its product does not practice the asserted claims.  Instead, Diablo simply refuses to engage in any infringement related discovery, claiming that Netlist's ICs are deficient under Patent Local Rule 3-1.  Diablo claims the ICs must be stricken because Netlist has not provided contentions based on teardown or reverse engineering of ULLtraDIMM.  Diablo does not explain how Netlist could do this given Diablo's argument, /////

---

[1] Diablo's identification of the pictured ULLtraDIMM as a test article is not connected to any deficiency in Netlist's analysis.

1    supported by a sworn affidavit, that ULLtraDIMM is not just difficult to obtain, it is totally
2    unavailable to Netlist.

3        On January 21, 2014, Netlist served its ICs and thereafter began pursuing discovery from
4    the defendants.  (Schodde Decl., Exhibit 1.)  Defendants resisted and, in response to a threatened
5    motion to compel, threatened to move to strike the ICs.  (Dkt. No. 150, Exhibit F.)  On February
6    21, 2014, Netlist and Diablo submitted a joint discovery letter brief on two issues: Netlist's
7    motion to compel discovery and Diablo's cross-motion to strike Netlist's infringement
8    contentions.  (Dkt. No. 146.)  Netlist agreed to remove a request for inter- and intra-corporate
9    organization charts and retention policies from its motion to compel in exchange for Smart
10   Storage and Diablo's representation that they would provide them, which they ultimately did the
11   evening prior to the due date for this brief.

12       The second sentence of Diablo's portion of the February 21 joint letter brief reads "[a]n
13   order striking the ICs and staying further related discovery . . . is the appropriate remedy."  (Dkt.
14   No. 146-4 at p. 3.)  On February 26, 2014, Judge Gonzalez Rogers referred all discovery matters
15   including the joint letter to Magistrate Judge Corley.  Infringement contentions are a discovery
16   device.  *See* Patent Local Rule 2-5.  On February 27, 2014, Judge Corley set the matter for
17   Hearing on March 6, 2014.  The next day, February 28, 2014, Diablo filed the motion to strike
18   this paper, repeating the arguments and citing much of the same authority already set forth in Dkt.
19   No. 146, but with a hearing date of April 8, 2014 before Judge Gonzalez Rogers.  (Dkt. No. 149.)
20   On March 3, 2014, Judge Corley responded by vacating the original March 6, 2014 hearing and
21   resetting it for March 27, 2014.  Smart Storage later joined the motion.

22   **III.    ARGUMENT**

23           **A.    Netlist's Well-Reasoned And Detailed ICs Satisfy Patent Local Rule 3-1**
             **Because They Are Objectively Reasonable And Based On The Information**
24           **Available To Netlist**

25       In its ICs, Netlist provided a clear mapping of each claim element onto the accused
26   ULLtraDIMM product, to the best of Netlist's knowledge based on the information available at
27   the time.  Patent Local Rule 3-1 does not "require the disclosure of specific evidence [or] require
28   a plaintiff to prove its infringement case."  *Creagri, Inc. v. Pinnaclife Inc., LLC*, No. 11-CV-

06635, 2012 WL 5389775, at *2 (N.D. Cal. Nov. 2, 2012). "But to the extent appropriate information is reasonably available to it, a patentee must nevertheless disclose the elements in each accused instrumentality that it contends practices each and every limitation of each asserted claim." *Id.* ICs need not be based on a commercially available product. Where a patentee's preparation of its infringement contentions is limited because it does not have reasonable access to the accused products, a patentee may "appropriately rel[y] on the information known to it through publicly available materials in formulating its ICs." *See SAGE Electrochromics Inc. v. View Inc.*, No. C-12-06441, 2013 WL 4777164, at *3 (N.D. Cal. Sept. 6, 2013). Netlist's ICs satisfy Rule 3-1.

In *SAGE*, the patentee's infringement contentions were based on information on defendant's website, one of defendant's patents, and three third-party publications. *Id.* at *1. The patentee could not obtain a sample of the accused product because the products were "custom-made and not available for purchase in store or online" and the defendant repeatedly "refused to provide samples" of its products to the patentee. *Id.* at *2. The court held that the patentee's infringement contentions satisfied Patent Local Rule 3-1 because, "upon review of [patentee's] ICs and accompanying charts, the court concludes that at this point, [patentee] has disclosed its theories of infringement at a level of specificity that matches the information currently available to it. [Patentee] has adequately put [defendant] on notice of its theories of infringement." *Id.* at *3.

In *France Telecom, S.A. v. Marvell Semiconductor, Inc.*, No. 12-CV-04967 WHA(NC), 2013 WL 1878912 (N.D. Cal. May 3, 2013), the court held that patentee's infringement contentions satisfied Patent Local Rule 3-1 where the standards were based on compliance with industry standards as the basis for infringement. *Id.* at *4. The patentee had to rely on the standards because the defendant had unusually restrictive non-disclosure agreements and refused to provide a sample product, specification, or other information. *Id.*

In *Creagri*, the patentee "relie[d] exclusively on [defendant's] publicly available advertisements and marketing materials for its direct infringement contentions. *Creagri*, 2012 WL 5389775, at *3. Because the defendant "ha[d] sufficient notice of [patentee's] infringement

theory for each product," the court found that such infringement contentions satisfied Patent Local Rule 3-1. *Id.*

Likewise, in *FusionArc, Inc. v. Solidus Networks, Inc.*, No. C 06-06760, 2007 WL 1052900 (N.D. Cal. Apr. 5, 2007), the court denied a motion to compel amendment of the ICs because "[patentee] has adequately established it has provided all of the information in its posses[s]ion as to how and why it believes [defendant's] services infringe the [patent-in-suit]." *Id.* at *2. In *FusionArc*, the patentee's ICs were "based primarily on an analysis of [defendant's] marketing materials and similar descriptions of how its systems operate and *not* on any process of 'reverse engineering' or similar process . . . ." *Id.* at *1. The court found that the patentee "disclosed, to the extent of its present knowledge, where it believes the infringement lies." *Id.* at *2.

*Zenith Laboratories, Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994) (cited by Diablo) is inapplicable to the present case. In contrast to the patentee in *Zenith*, Netlist is not comparing its own product to ULLtraDIMM. Instead, Netlist is comparing its asserted claims against the best available evidence, a position that this Court has found complies with Patent Local Rule 3-1. *See SAGE*, 2013 WL 4777164, at *3 (in which patentee's infringement contentions relied on, *inter alia*, one of the defendant's patents).

Diablo asserts that Netlist's ICs are deficient because Netlist has not reverse engineered the accused product (despite the fact that the ULLtraDIMM is not currently available). Diablo **does not** assert that Netlist's ICs fail to compare the accused ULLtraDIMM to Netlist's patents on a claim-by-claim, element-by-element basis. The present case is not analogous to the situation in *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022 (N.D. Cal. 2010), where the plaintiff had access to the defendants' products and performed a reverse engineering analysis on them, but then "improperly failed to include information from its reverse engineering analysis in its ICs . . . ." *Id.* at 1026, n.4. Here, despite not having access to the accused product, Netlist has provided sufficient detail about how ULLtraDIMM practices the asserted claims. Diablo makes no effort to show that ULLtraDIMM is different than what Netlist alleges it to be.

/////

**B.   Diablo's Authority Is Distinguishable From The Present Case Because, At A Minimum, Netlist's ICs Were Sufficiently Detailed And Netlist Did Not Have Access To ULLtraDIMM**

Diablo relies on authority that is readily distinguishable from the present case.   In *Theranos, Inc. v. Fuisz Pharma LLC*, No. 11-CV-05236-YGR, 2012 WL 6000798 (N.D. Cal. Nov. 30, 2012), the patentee's infringement contentions accused every limitation of every claim "on information and belief" and contained no pictures or diagrams; it was unclear whether the *Theranos* product was unavailable or merely difficult to obtain; and the entire infringement contentions, including introductory material, totaled 12 pages.  (Schodde Decl., Exhibit 2.)   Here, Netlist could not—and still cannot—obtain the ULLtraDIMM product, because it is not publicly available and Defendants refuse to provide samples.   The extensive charts and disclosures provided by Netlist cover 237 pages, including 71 pages of claim charts that point out in graphic detail where in ULLtraDIMM each limitation of each asserted claim is found or will likely be found.

Diablo relies on several cases—*Bender v. Maxim Integrated Products*, No. C 09-01152 SI, 2010 U.S. Dist. LEXIS 32115 (N.D. Cal. Mar. 22, 2010), *Network Caching Tech., LLC v. Novell, Inc.*, No. C-01-2079-VRW, 2002 WL 32126128 (N.D. Cal. Aug. 13, 2002), *Infineon Technologies v. Volterra Semiconductor*, No. C 11-06239 MMC (DMR), 2013 WL 322570 (N.D. Cal. Jan. 28, 2013), and *Tessenderlo Kerley, Inc. v. OR-Cal, Inc.*, No. C 11-04100 WHA, 2012 WL 1253178, at *2 (N.D. Cal. Apr. 13, 2012)—for the inaccurate assertion that reverse engineering is required under Patent Local Rule 3-1.   Although both *Bender* and *Tessenderlo* appear to support this proposition, both cases rely on a quote from *Network Caching* in which key language was omitted.   Specifically, the *Network Caching* court stated that "[w]hile [it] is **reluctant to hold that in all cases such a comparison requires reverse engineering** of the defendant's products, the court finds that reverse engineering or its equivalent is required." *Network Caching*, 2002 WL 32126128, at *5 (emphasis added).  From this sentence, the *Bender* and *Tessenderlo* opinions fail to quote the entire excerpt, and instead quote only the final clause. *See Bender*, 2010 U.S. Dist. LEXIS 32115, at *4; *Tessenderlo*, 2012 WL 1253178, at *2.   Yet, even despite its incomplete citation to *Network Caching*, the *Tessenderlo* court recognized "that

under certain circumstances marketing and packaging materials may suffice to identify the presence of claim elements . . . ." *Tessenderlo*, 2012 WL 1253178, at *5.

The *Bender* infringement contentions were problematic because they listed over 200 accused products and did not provide sufficient specificity for representative products. The plaintiff was "concern[ed] about the expense of reverse engineering over 200 products . . . ." *Bender*, 2010 U.S. Dist. LEXIS 32115, at *6. The *Bender* plaintiff also "failed to place all of the accused products into a representative category" in its claim charts. *Id.* at *7. Here, only ULLtraDIMM is accused; it is unavailable, and each asserted claim applies to that product.

The *Tessenderlo* infringement contentions were problematic because "[p]laintiff's Rule 3–1(c) chart failed to identify where each limitation of each asserted claim is found . . . . Instead, for several of the asserted claims, plaintiff's chart simply stated that the accused products meet that limitation. To support these assertions, the chart repeatedly cited to the patent itself." *Tessenderlo*, 2012 WL 1253178, at *2. Unlike the present case, in *Tessenderlo* the patentee could have tested the accused product—a sun protectant for crops. *See id.* at *3 (plaintiff opposed defendant's request for its testing results relating to the accused products).

In *Infineon Technologies*, where the product was available to the patentee, the court stated that Patent Local Rule 3-1 required "a level of detail that reverse engineering or its equivalent would provide." *Infineon Techs.*, 2013 WL 322570, at *3 (citation omitted). Although "Plaintiff reverse-engineered the [accused product]," the court granted the plaintiff leave to amend its infringement contentions, stating that "Plaintiff knows more than it is showing." *Id .* at *4. Here, Netlist has based its infringement contentions on the information reasonably available to it. Reverse engineering is not possible because, as Diablo's counsel concedes, "[t]he ULLtraDIMM was not publicly or commercially available on January 21, 2014, the date Netlist served its Infringement Contentions." (Dkt. 150, Sanjeet K. Dutta Decl. ¶ 13.)

**C.     Diablo Continues To Hold Up The Discovery Process By Refusing To Comply With Established Procedure**

Motions to strike infringement contentions are routinely considered and decided as discovery matters in the Northern District of California, and Diablo did not disagree when it

1  submitted the matter by joint letter on February 21, 2014.  The joint letter explicitly requested the

2  very same relief (in the second sentence of its portion of the joint letter brief followed by two

3  single spaced pages of argument and authorities) as Diablo now seeks with this redundant motion.

4        Diablo's submissions at Docket Nos. 149-151 are an end-run around the briefing limits in

5  joint letter briefs, the referral order, and Diablo's prior decision to submit this issue as a discovery

6  dispute after waiting until Netlist initiated Rule 37 practice.  *See also* Fed. R. Civ. P. 72(a).

7  "**<u>Patent Local Rule 3–1 is a discovery device</u>** that sets forth the standards for disclosing asserted

8  claims and infringement contentions." *SAGE*, 2013 WL 4777164, at *1.  This violation of the

9  Court's discovery procedures should not be countenanced.

10        **D.        Diablo's Rule 11 Argument Is Both Misplaced and Premature**

11        A court cannot determine whether a filing was baseless for purposes of Rule 11 at the

12  pleading stage, without further proceedings, such as claim construction or summary judgment

13  hearing.  *See SAGE*, 2013 WL 4777164, at *3 ("[Defendant's] motion to strike veers closely to

14  making a Rule 11 argument about the adequacy of [patentee's] pre-suit investigation, and the

15  court notes that the merits of such an argument are not properly before the court at the discovery

16  stage of the proceedings." (internal citation omitted)); *FusionArc*, 2007 WL 1052900, at *2 ("As

17  [defendant] acknowledges . . . the merits of that [Rule 11] argument are not properly before the

18  Court at this juncture.").  As noted in *FusionArc*, "a plaintiff may satisfy its obligations under

19  Rule 3-1 whether or not it conducted an pre-filing investigation sufficient to comply with Rule

20  11." *FusionArc*, 2007 WL 1052900, at *2.

21        Netlist has complied with Rule 11 by providing well-reasoned ICs that were formed after

22  a reasonable inquiry consistent with Rule 11(b).  Rule 11 explicitly permits what Netlist has done.

23  *See* Fed. R. Civ. P. 11(b) ("[T]o the best of the person's knowledge, information, and belief,

24  formed after an inquiry reasonable under the circumstances . . . the factual contentions have

25  evidentiary support or, if specifically so identified, will likely have evidentiary support after a

26  reasonable opportunity for further investigation or discovery . . . .").  Patent Local Rule 3-1 does

27  not create a  higher substantive hurdle for bringing a case in the Northern District of California

28  than Rule 11.  Here, Netlist provided ICs that were sufficiently detailed, particularly considering

1    that the accused product was unavailable to Netlist.  *See Network Caching*, 2002 WL 32126128,

2    at *7 ("The only way to pinpoint the specific routine is to analyze the source code, which is solely

3    in the defendants' possession. This is the quintessential case allowing amendment of ICs based on

4    information received in discovery.").

5         There is no authority for the proposition that Rule 11 forbids a patentee from asserting

6    patent infringement against a product that is not commercially available to it.  The cases Diablo

7    relies on each involved commercially available products, and in three out of four of those cases,

8    Rule 11 sanctions were denied.  *See Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295,

9    1302-03 (Fed. Cir. 2004) (affirming denial of Rule 11 sanctions where patentee's attorneys

10   performed a claim construction analysis of defendant's body lotion and relied on defendant's

11   advertising statements); *Antonious v. Spalding & Evenflo Cos., Inc.*, 275 F.3d 1066, 1077 (Fed.

12   Cir. 2002) (vacating and remanding for the district court to determine whether patentee's

13   attorneys conducted a sufficiently thorough pre-filing investigation into defendant's golf clubs);

14   *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990) (Rule 11 sanctions

15   not at issue); *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 985 n.5 (Fed. Cir. 2000)

16   (Rule 11 sanctions upheld where patentee's attorneys relied solely on client's belief, based on

17   defendant's advertising statements, that defendant's commercially available machines were

18   infringing).

19        In *Q-Pharma*, the Federal Circuit explained that "[the patentee in *Q–Pharma*] did not file

20   suit based solely on [defendant's] advertising [in contrast to the patentee in *View Engineering*];

21   critically, it also relied on its own comparison of the asserted claims with the accused product."

22   *Q-Pharma*, 360 F.3d at 1303.  In the present case, and consistent with Rule 11(b), Netlist has

23   compared its claims with the product information available and technical knowledge to form a

24   belief about the accused ULLtraDIMM product.

25        The Court will recall that Diablo attempted to prevent Netlist's use of the anonymous

26   "whistleblower" confession sent to Netlist.  That correspondence supports Diablo's copying of

27   Netlist's technology.  The First Amended Complaint in case number 13-cv-05889 describes the

28   history between the companies and how Diablo stole Netlist's technology.  The undisputed

1    relationship between Netlist and Diablo strongly supports the reasonableness of Netlist's ICs,

2    which are also supported by patent filings and other available information about the

3    ULLtraDIMM product.

4    **IV.**    **CONCLUSION**

5        For the reasons set forth above, the ICs should be upheld, and the discovery sought

6    ordered.

7

8                                **McANDREWS, HELD & MALLOY, LTD.**

9

10   Dated:  March 14, 2014                /s/ Gregory C. Schodde

                                      THOMAS J. WIMBISCUS

11                               GREGORY C. SCHODDE

                              WAYNE H. BRADLEY

12

13                               **BARTKO, ZANKEL, BUNZEL & MILLER**

                              BENJAMIN K. RILEY

14                               ROBERT N. BUNZEL

                              W. PAUL SCHUCK

15                               SONY B. BARARI

                              SIMON R. GOODFELLOW

16

17                               **DLA PIPER LLP (US)**

                              SEAN C. CUNNINGHAM

18

                              Attorneys for Plaintiff NETLIST, INC.

19

20

21

22

23

24

25

26

27

28