1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    NETLIST, INC.,                          Case No.  13-cv-05889-YGR (JSC)

              Plaintiff,
8
                                             ORDER DENYING DEFENDANT
9         v.                                 DIABLO TECHNOLOGIES, INC.'S
                                             MOTION TO STRIKE INFRINGEMENT
10   SMART STORAGE SYSTEMS INC, et al.,       CONTENTIONS

              Defendants.                    Re: Dkt. No. 149
11

12

13        Plaintiff Netlist, Inc. ("Netlist") sues Defendant Diablo Technologies, Inc. ("Diablo"),

14   among others, for infringement of seven patents.  Diablo now moves to strike Netlist's

15   infringement contentions ("contentions") on the ground that they are insufficient under Patent

16   Local Rule 3-1.  (Dkt. No. 149.)  The Diablo product at issue is the ULLtraDIMM, which Diablo

17   contends does not exist beyond a prototype.  The ULLtraDIMM is a module for increasing

18   memory in computer servers.

19        After carefully considering the filings in this case, and having had the benefit of oral

20   argument on March 27, 2014, the Court DENIES the motion.  Netlist has satisfied Rule 3-1's

21   requirement to give Diablo notice of its infringement allegations and why it believes it has a

22   reasonable chance to prove infringement; whether Diablo has actually offered to sell an allegedly

23   infringing device is not at issue in connection with Rule 3-1.

24                                  **LEGAL STANDARD**

25   Local Rule 3–1 requires, in pertinent part:

26             [A] party claiming patent infringement shall serve on all parties a
               'Disclosure of Asserted Claims and Infringement Contentions' . . .
27             [which] shall contain the following information:

28             (a) Each claim of each patent in suit that is allegedly infringed by

each opposing party, including for each claim the applicable statutory subsections of 35 U.S.C. § 271 asserted;

(b) Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. This identification shall be as specific as possible. Each product, device, and apparatus shall be identified by name or model number, if known. Each method or process shall be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process;

(c) A chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function.

(d) For each claim which is alleged to have been indirectly infringed, an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement. Insofar as alleged direct infringement is based on joint acts of multiple parties, the role of each such party in the direct infringement must be described.

(e) Whether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality

"The overriding principle of the Patent Local Rules is that they are designed [to] make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims." *Bender v. Maxim Integrated Prods., Inc.*, 2010 WL 1135762, at *2 (N.D. Cal. Mar. 22, 2010) (alteration in original) (internal citation omitted). Patent L.R. 3-1 is a discovery device that "takes the place of a series of interrogatories that defendants would likely have propounded had the patent local rules not provided for streamlined discovery." *Network Caching Tech., LLC v. Novell, Inc.*, 2002 WL 32126128, at *4 (N.D. Cal. Aug. 13, 2002); *see Bender*, 2010 WL 1135762, at *2. The rule is also intended to require the party claiming infringement "to crystallize its theories of the case early in the litigation and to adhere to those theories once disclosed." *Bender v. Advanced Micro Devices, Inc.*, 2010 WL 363341, at *1 (N.D. Cal. Feb. 1, 2010). That party is required to include in its infringement contentions all facts known to it, including those discovered in its pre-filing inquiry. *See*

1    *Renesas Tech. Corp. v. Nanya Tech. Corp.*, 2004 WL 2600466, at *2 (N.D. Cal. Nov. 10, 2004).

2    "[A]ll courts agree that the degree of specificity under Local Rule 3–1 must be sufficient

3    to provide reasonable notice to the defendant why the plaintiff believes it has a 'reasonable

4    chance of proving infringement.'"  *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d

5    1022, 1025 (N.D. Cal. 2010) (quoting *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d

6    981, 986 (Fed. Cir. 2000)).  While the patent rules do not "require the disclosure of specific

7    evidence nor do they require a plaintiff to prove its infringement case, . . . a patentee must

8    nevertheless disclose what in each accused instrumentality it contends practices each and every

9    limitation of each asserted claim to the extent appropriate information is reasonably available to

10   it." *DCG Sys. v. Checkpoint Techs., LLC*, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012)

11   (internal quotation marks omitted); *see also Shared Memory*, 812 F. Supp. 2d at 1025 (stating

12   that patent holder "must map specific elements of Defendants' alleged infringing products onto

13   the Plaintiff's claim construction").

14                              **DISCUSSION**

15          Diablo asserts that Netlist's contentions fail to map each asserted claim element to the

16   accused product because "(1) Netlist fails to locate each asserted claim element on the integrated

17   circuit of the accused ULLtraDIMM; (2) Netlist improperly compares its asserted claims to

18   unrelated patent applications and self-created (and serving) diagrams drafted by Netlist that have

19   no connection to the accused product; (3) the accused ULLtraDIMM was not commercially

20   available when Netlist prepared its Infringement Contentions; and (4) Netlist relies improperly on

21   conclusory allegations that 'discovery is likely to show' for over 50 claim elements of the asserted

22   patent claims."  (Dkt. No. 166 at 2.)  Diablo further asserts that the contentions should be stricken

23   because Netlist did not make a reasonable pre-filing inquiry, as required by Federal Rule of Civil

24   Procedure 11.

25          Diablo's briefs, and assertions at the motion hearing, focus on Diablo's representation that

26   the accused product does not actually exist; there is only a prototype.  Diablo argues that Netlist's

27   contentions thus cannot meet Rule 3-1's requirements because the non-existent ULLtraDIMM is

28   not on the market.  The Court is not persuaded.  Diablo's argument is premised, at least in part, on

the belief that reverse engineering of the accused product is required to make an adequate comparison under Rule 3-1 of the product and the patent claims.  (*See* Dkt. No. 166 at 4 (citing *Bender*, 2010 WL 1135762, at *2).)  Not so.  Rule 3-1 "does *not* require Plaintiff to reverse engineer every product it has accused, especially where the products are not reasonably available to the public." *SAGE Electrochromics Inc. v. View Inc.*, 2013 WL 4777164, at *2 (N.D. Cal. Sept. 6, 2013) (emphasis added); *see also France Telecom, S.A. v. Marvell Semiconductor, Inc.*, 2013 WL 1878912, at *3 (N.D. Cal. May 3, 2013) ("Rule [3-1] does not require France Telecom to reverse engineer every product it has accused."); *Bender v. Maxim Integrated Prods., Inc.*, 2010 WL 2991257, at *5 (N.D. Cal. July 29, 2010) ("Cases in which reverse engineering was not required, [] have tended to involve situations in which analyzing the accused product was either impracticable or unnecessary to create a basis for adequate ICs.").  Diablo does not contend that the ULLtraDIMM is "reasonably available" to Netlist; in fact, Diablo asserts just the opposite. Thus, Netlist was not required to do the impossible and reverse engineer the ULLtraDIMM.  *See SAGE Electrochromics*, 2013 WL 4777164, at *3 (rejecting defendant's contention that reverse engineering was required of an unavailable product, stating, "as SAGE's preparation of its ICs was restricted by the fact that it did not have reasonable access to View's products, SAGE appropriately relied on the information known to it through publicly available materials in formulating its ICs").

Further, Diablo's proposed rule regarding reverse engineering is contrary to 35 U.S.C. § 271, which does not require that the infringing product be "commercially available."  *See* 35 U.S.C. § 271(a) ("[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.").  If Diablo believes that it has not violated Section 271(a) because the product does not exist and therefore has not been offered for sale (a belief Netlist contests), the proper vehicle for disposition is a motion to dismiss or a motion for summary judgment, not a discovery motion under Rule 3-1.

Diablo emphasized at the hearing that, even if reverse engineering is not required, Netlist cannot simply "guess" that there is infringement; rather, to satisfy Rule 3-1, Netlist would need to

United States District Court
Northern District of California

obtain some source of information that effectively replaces the product itself in terms of providing a reasonable basis for the contentions.  While Diablo acknowledges that Netlist has provided some sources of information—namely, patent applications and diagrams—Diablo asserts that these sources are improper because Netlist has not "establish[ed]" that the patent applications and diagrams are related to the accused ULLtraDIMM.  (Dkt. No. 149 at 6-9.)

Rule 3-1 does not, "as is sometimes misunderstood, require the disclosure of specific evidence nor do[es it] require a plaintiff to prove its infringement case." *DCG Sys.*, 2012 WL 1309161, at *2 (internal quotation marks omitted).  Netlist need not disclose specific evidence, let alone "establish" that the patent applications and diagrams are representative of the ULLtraDIMM, to satisfy Rule 3-1.  To be sure, there may be implicit in Rule 3-1 a requirement that the contentions be reasonable (otherwise a plaintiff could obtain discovery of a competitor's product by making wholly frivolous allegations).  *See Shared Memory*, 812 F. Supp. 2d at 1025 (noting that the patentee must reveal its theory of infringement and "provide reasonable notice" to the alleged infringer why the patentee believes it has a "reasonable chance of proving infringement" (internal quotation marks omitted)).  Netlist's contentions, however, satisfy such a requirement.  In support of its contentions, Netlist uses public statements and photographs found in the public domain about ULLtraDIMM; patent applications that Netlist alleges relate to the accused product; and information Netlist believes to be true based on Netlist's own familiarity with the technology and Netlist's prior associations with Diablo.  Diablo provides no non-conclusory argument as to why the above sources do not support the reasonableness of the contentions.[1]  Diablo does not contend that it is unaware of Netlist's theory of infringement.  Its insistence that Netlist must "establish" the sufficiency of the evidence underlying its contentions imposes a requirement of proof that is absent from Rule 3-1.

Along those same lines, Diablo also argues that the contentions are merely guesswork, and

---

[1] Diablo's citation to *Zenith Labs., Inc. v. Bristol-Myers Squibb Co.* is inapposite since Netlist is not substituting its product for the claims in the patents.  19 F.3d 1418, 1423 (Fed. Cir. 1994) (reviewing the district court's grant of summary judgment and holding that "it is error for a court to compare in its infringement analysis the accused product or process with the patentee's commercial embodiment or other version of the product or process; the only proper comparison is with the claims of the patent").

1   thus violate Rule 3-1, because for dozens of the claims Netlist alleges that "discovery will likely

2   show" that the ULLtraDIMM infringes the patents, without identifying "specifically where each

3   limitation of each asserted claim is found within each Accused Instrumentality."  N.D. Cal. Patent

4   L.R. 3-1(c).  Again, the Court is not persuaded.  As noted above, the degree of specificity required

5   under Rule 3-1 depends on the information reasonably available to the patentee.  *See DCG Sys.*,

6   2012 WL 1309161, at *2 ("[A] patentee must [] disclose what in each accused instrumentality it

7   contends practices each and every limitation of each asserted claim *to the extent appropriate*

8   *information is reasonably available to it*.") (emphasis added).  Contrary to Diablo's assertion,

9   there is no *per se* rule that prohibits a patentee from using phrases such as "discovery will likely

10  show," especially where detailed product information, and the accused product itself, are not

11  reasonably available to the patentee.  Diablo does not contend that information is reasonably

12  available to Netlist such that Netlist's use of the phrase "discovery will likely show" is rendered

13  insufficiently specific.  Thus, the Court cannot conclude that the use of the phrase "discovery will

14  likely show" for some of the claim limitations violates Rule 3-1.  In other words, while certain

15  aspects of the contentions may be based on speculation (because the information that would make

16  them non-speculative is unavailable), that speculation is not unreasonable in light of the

17  information available to Netlist.

18          Diablo's cited authority is not to the contrary.  The court in *Shared Memory* concluded that

19  some of the patentee's contentions were insufficient under Rule 3-1 because they were vague and

20  conclusory, and therefore "f[ell] short of the level of specificity required by Local Rule 3–1." 812

21  F. Supp. 2d at 1026 ("Rather than provide a meaningful description of its theories, SMG's vague

22  contentions and conclusory statements invite Defendants and the Court merely to *assume* the

23  presence of a data distribution bus.").  However, the patentee in *Shared Memory* possessed the

24  accused products and had even reverse engineered them.  The same is true in *Bender*, where the

25  court concluded that the patentee's contentions regarding publicly available accused products did

26  not satisfy Rule 3-1 because, "[w]hile plaintiff's [contentions] may not be untrue, they are based

27  on assumptions." 2010 WL 1135762, at *2.  Given the information available to the patentees in

28  *Shared Memory* and *Bender*, it was possible for them to provide more specific contentions.  As

already discussed above, the same cannot be said here where it is undisputed that the accused product is not available to the plaintiff (at least as of the time of the motion hearing).  In addition, while the court in *Theranos, Inc. v. Fuisz Pharma LLC* concluded that contentions based on "information and belief" were not "as specific as possible"—even though only minimal information about the accused products was available—the *Theranos* court did not identify what more was possible.  2012 WL 6000798, at *5 (N.D. Cal. Nov. 30, 2012).  Thus, *Theranos* is of little help in determining what more Netlist should be expected to do in this case given the unavailability of the accused product itself, as well as the undisputedly minimal publicly available information about the product.

Diablo's additional basis for striking the contentions—that they fail to identify "the circuit" in the ULLtraDIMM that applies to each claim element—is likewise unpersuasive.  (Dkt. No. 149 at 5-6.)  Rather than cite to a particular claim element that it believes is insufficiently linked to the accused product, Diablo merely cites to the entire contentions and asserts that "[a] review" of the contentions "confirms" that not every claim element is mapped on to the accused product.  (*Id.* at 6.)  Because Diablo fails to identify the particular contentions it asserts are inadequate, the Court denies the motion on this basis.

Finally, Diablo's arguments regarding Netlist's failure to comply with Rule 11 are irrelevant as "a plaintiff may satisfy its obligations under Rule 3-1 whether or not it conducted a[] pre-filing investigation sufficient to comply with Rule 11."  *FusionArc, Inc. v. Solidus Networks, Inc.*, 2007 WL 1052900, at *2 (N.D. Cal. April 5, 2007); *see also SAGE Electrochromics*, 2013 WL 4777164, at *3 ("[T]he merits of [a Rule 11] argument are not properly before the court at the discovery stage of the proceedings.").  While some courts have blended Rule 3-1's and Rule 11's requirements, *see, e.g.*, *Network Caching*, 2002 WL 32126128, at *4, the Court agrees with the reasoning in *Shared Memory* for avoiding such an analysis:

> This Court is reluctant to assign a more substantive role to Rule 3–1 at least where, as here, discovery has been assigned to a Magistrate Judge and bifurcated from substantive rulings of the assigned District Judge.  Under these circumstances, application of Rule 11 should be left to the assigned judge and not handle *sub rosa* via the instant motion under Local Rule 3–1.  Importantly, treating the instant motion as a discovery dispute is consistent not only with

1    Judge Seeborg's ruling in *FusionArc*, it preserves the important
     function of ICs discussed above, thereby facilitating *inter alia* the
2    maturation of substantive motions which might ensue.  For instance,
     by compelling the plaintiff to crystallize its theory of infringement
3    and flesh out all the facts that it has to supports its theories, ICs can
     lay the groundwork for a subsequent Rule 11 by exposing early on
4    an inadequate pre-filing inquiry.  Furthermore, by specifically
     identifying components and aspects of circuitry purporting to
5    perform certain elements and limitations of the patent claims at
     issue, the ICs may lay the groundwork for an early motion for
6    summary judgment and or claims construction as to a few select
     claims.

7    812 F. Supp. 2d at 1025.

8                              **CONCLUSION**

9        For the reasons stated above, Diablo's motion is DENIED.

10       This Order disposes of Docket No. 149.

11       **IT IS SO ORDERED.**

12   Dated: April 1, 2014

13                                    _____
                                      *Jacqueline S. Corley*
14                                    JACQUELINE SCOTT CORLEY
                                      United States Magistrate Judge
15

16

17

18

19

20

21

22

23

24

25

26

27

28

*United States District Court*
*Northern District of California*