1 | Gregory L. Lippetz (State Bar No. 154228)
glippetz@JonesDay.com
2 | Kathleen D. Lynott (State Bar No. 268387)
kdlynott@JonesDay.com
3 | JONES DAY
1755 Embarcadero Road
4 | Palo Alto, CA 94303
Telephone: 1.650.739.3939
5 | Facsimile: 1.650.739.3900

6 | Steven J. Corr (State Bar No. 216243)
sjcorr@JonesDay.com
7 | JONES DAY
555 South Flower Street
8 | Los Angeles, CA 90071
Telephone: 1.213.243.2327
9 | Facsimile: 1.213.243.2539

10 | Attorneys for Defendant/Counterclaimant
SMART STORAGE SYSTEMS, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

| | |
|---|---|
| **NETLIST, INC.,** | **Case No. 4:13-cv-05889-YGR** |
| **Plaintiff,** | JURY TRIAL DEMANDED |
| vs. | |
| **SMART STORAGE SYSTEMS, INC., AND DIABLO TECHNOLOGIES, INC.,** | Judge: Hon. Yvonne G. Rogers
Trial Date: None Set
Date: July 29, 2014
Hearing time: 2:00 p.m. |
| **Defendants.** | |

**SMART STORAGE SYSTEMS, INC.'S MOTION TO STAY PENDING *INTER PARTES* REVIEW AT THE U.S. PATENT & TRADEMARK OFFICE**

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED ............................................................................. 2

BACKGROUND ............................................................................................................................. 2

I.     Defendants Have Filed For *Inter Partes* Review Of All Asserted Claims Of The Patents-in-Suit With The PTO ............................................................................................. 2

II.    This Case Is At An Early Stage And Defendants Expeditiously Filed The IPRs In Response To Netlist Finalizing Its Claims In This Case ....................................................... 3

III.   Congress Created The IPR Procedure To Provide An Expedited Review Of Patent Validity In The PTO, As An Alternative To District Court Litigation ............................... 3

ARGUMENT .................................................................................................................................. 5

I.     The Court Has Discretion To Enter A Stay Pending The *Inter Partes* Review .................. 5

II.    Numerous Courts Have Entered Stays Pending PTO *Inter Partes* Review ........................ 5

III.   All Three Factors Considered In This District Weigh In Favor Of A Stay ........................ 7

    A.    A Stay Will Not Unduly Prejudice Or Tactically Disadvantage Netlist ................. 7

    B.    A Stay Will Simplify The Issues ........................................................................... 10

    C.    Discovery Has Just Begun And No Trial Date Has Been Set ............................... 14

CONCLUSION ............................................................................................................................. 14

# TABLE OF AUTHORITIES

Page

**CASES**

*American Piledriving Equip., Inc. v. Geoquip, Inc.*,
 637 F.3d 1324 (Fed. Cir. 2011) ................................................................................................ 13

*Brixham Solutions Ltd. v. Juniper Networks, Inc.*,
 No. 13-cv-00616, 2014 U.S. Dist. Lexis 58770 (N.D. Cal. Apr. 28, 2014) .................... 6, 8, 12

*Capriola Corp., et. al., v. LaRose Indus. LLC*,
 No. 8-12-cv-02346, 2013 U.S. Dist. Lexis 65754 (M.D. Fla. Mar. 11, 2013) ....................... 6, 7

*Datatreasury Corp. v. Wells Fargo & Co.*,
 490 F. Supp. 2d 749 (E.D. Tex. 2006) ...................................................................................... 9

*Ethicon, Inc. v. Quigg*,
 849 F.2d 1422 (Fed. Cir. 1998) ................................................................................................. 5

*Evolutionary Intelligence, LLC v. LivingSocial, Inc.*,
 No. 13-cv-04205-WHO, 2014 U.S. Dist. Lexis 6804 (N.D. Cal. Jan. 17, 2014) ................ 8, 10

*Evolutionary Intelligence, LLC v. Twitter, Inc.*,
 No. 13-cv-04207, 2013 U.S. Dist. Lexis 28726 (N.D. Cal. Feb. 25, 2014) .................. 6, 12, 13

*Evolutionary Intelligence LLC v. Yelp Inc.*,
 No. 13-cv-03587 (N.D. Cal. Dec. 18, 2013) ............................................................... 6, 11, 13, 14

*Gould v. Control Laser Corp.*,
 705 F.2d 1340 (Fed. Cir. 1983) ........................................................................................... 5, 12

*Ho Keung Tse v. Apple Inc.*,
 No. C 06-06573 SBA, 2007 WL 2904279 (N.D. Cal. Oct. 4, 2007) .................................... 8, 9

*Ignite USA, LLC v. Pacific Market Int'l, LLC*,
 No. 14 C 856, Docket No. 39, slip op. at 6 (E.D. Ill. May 29, 2014) ....................................... 9

*Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.*,
 No. C 06-2252 SBA, 2007 WL 627920 (N.D. Cal. Feb. 26, 2007) .......................................... 8

*PersonalWeb Techs. LLC v. Facebook, Inc.*,
 No. 13-cv-01356, 2014 U.S. Dist. Lexis 4095 (N.D. Cal. Jan. 13, 2014) .......................... 8, 11

*Phillips v. AWH Corp.*,
 415 F. 3d 1303 (Fed. Cir. 2005) .............................................................................................. 13

*Pi-Net Int'l, Inc. v. Focus Bus. Bank*,
 C-12-4958-PSG, 2013 WL 4475940 (N.D. Cal. Aug. 16, 2013) ........................................ 4, 14

*Semiconductor Energy Lab. Co. Ltd. v. Chimei Innolux Corp.*,
 No. 12-cv-00021, 2012 WL 7170593 (C.D. Cal. Dec. 19, 2012) ......................................... 7, 9

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Slip Track Sys., Inc. v. Metal Lite, Inc.*,
 159 F.3d 1337 (Fed. Cir. 1998) .................................................................................................. 6

*Software Rights Archive, LLC v. Facebook, Inc.*,
 No. 12-cv-03970, 2013 U.S. Dist. Lexis 133707 (N.D. Cal. Sept. 17, 2013) ........................... 7

*VDF Futureceuticals, Inc. v. Sandwich Isles Trading Co. Inc.*,
 No. 11-cv-288-ACK-RLP, 2011 U.S. Dist. Lexis 148766 (D. Haw. Dec. 27, 2011) ............. 13

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Tuesday, July 29, 2014 at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable Yvonne G. Rogers, whose Courtroom is located at 1301 Clay Street, Oakland, CA 94612, Courtroom 5, 2nd Floor, Defendant Smart Storage Systems, Inc. ("Smart Storage"), pursuant to Civil L.R. 7-1 and 7-2, will and hereby does move the Court for an order staying this action pending the completion of the United States Patent and Trademark Office's *inter partes* reviews of the validity of all of the Patents-in-Suit. This motion is based on this Notice of Motion and Motion and the Memorandum of Points and Authorities incorporated herein, and on the declarations submitted in support of the Motion to Stay filed herewith.

**INTRODUCTION**

Smart Storage asks the Court to stay this infringement litigation while the U.S. Patent and Trademark Office ("PTO") completes an *inter partes* review of the validity of all of the Patents-in-Suit. Smart Storage has filed *inter partes* review petitions as to five of the Patents-in-Suit (U.S. Patent Nos. 8,001,434; 8,301,833; 8,359,501; 8,516,185; and 8,516,187), while co-defendant Diablo Technologies, Inc. ("Diablo) has filed petitions for *inter partes* review of the remaining two Patents-in-Suit: U.S. Patent No. 7,881,150 and U.S. Patent No. 8,081,536.

Defendants have acted quickly in filing their petitions for IPR, preparing and filing them shortly after Netlist (1) finalized the patents it was asserting and (2) set forth the asserted claims. This case is at an early stage: there is no deadline for the close of fact discovery and no trial date has been set. A stay while the PTO makes an expedited review of the Patents-in-Suit will avoid costly duplication of efforts. Each of the three factors considered by courts in this District weigh in favor of a stay. Moreover, Netlist may continue to assert its rights in a parallel trade secret action against co-defendant, Diablo, should the Court stay this case until the completion of the *inter partes* reviews.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the Court should stay this action pending the PTO's *inter partes* review of the Patents-in-Suit.

**BACKGROUND**

**I.     Defendants Have Filed For *Inter Partes* Review Of All Asserted Claims Of The Patents-in-Suit With The PTO.**

On June 24, 2014, Smart Storage completed the filing of its petitions for *inter partes* review ("IPR") of U.S. Patent Nos. 8,001,434; 8,301,833; 8,359,501; 8,516,185; and 8,516,187. Corr Decl., Exs. A-E.[1] Smart Storage's petitions seek PTO review of the validity of each and every claim of each of these patents. *Id*. The IPR petitions are based on a number of invalidating prior art references, including various prior art patents and publications never considered by the PTO during the initial examination of these patents.[2] *See id.*

In support of the IPR petitions, Smart Storage also submitted supporting declarations from Dr. Charles Neuhauser, a technical expert with 45 years of experience in the field of microprocessor design, memory systems, and bus architecture interconnects; Paul Min, a technical expert with 32 years of experience in the field of communications, computing, and related electronic hardware and software; and Dr. Donald Alpert, a technical expert with 38 years of experience in applying, designing, studying, teaching, and writing about microprocessors and computer systems. Dr. Neuhauser has a B.S.E.E. degree from the University of Notre Dame, an M.S.E.E. degree from Northwestern University, and a Ph.D.E.E. degree from The Johns Hopkins University and is currently working as a consultant for Neuhauser Associates, Inc. Dr. Min has B.S.E.E., M.S.E.E., and Ph.D.E.E. degrees from the University of Michigan and is currently working as an Associate Professor and Chair of the Undergraduate Curriculum for the Department of Electrical and Systems Engineering at Washington University in St. Louis. Dr.

---

[1] Smart Storage attaches proof of filing rather than the petitions themselves, which are voluminous. Smart Storage will provide the petitions to the Court upon request.

[2] None of the prior art references, with the exception of one reference, were considered by the PTO during the prosecution of these patents.

Alpert has a B.S.E.E. from the Massachusetts Institute of Technology, an M.S.E.E. Degree from Stanford University, and a Ph.D.E.E. Degree from Stanford. He is currently working as a consultant for Camelback Computer Architecture, LLC.

Diablo filed petitions for *inter partes* review of U.S. Patent Nos. 8,081,536 ("the '536 patent") and 7,881,150 ("the '150 patent") on June 21 and 22, 2014, respectively. *See id.*, Exs. F-H. Diablo challenges Claims 1, 16, 17, 24, 30, and 31 of the '536 patent and Claims 15-17, 22, 24, 26, and 31-33 of the '150 patent. These represent all of the claims asserted by Netlist in this case for the '536 and '150 patents.

**II.  This Case Is At An Early Stage And Defendants Expeditiously Filed The IPRs In Response To Netlist Finalizing Its Claims In This Case.**

On April 7, 2014, Netlist finalized the Patents-in-Suit by adding the final two new patents to the case in its second amended complaint. (*See* ECF No. 181.) On May 20, after seeking additional time to amend its infringement contentions, Netlist served its operative, amended infringement contentions. The amended infringement contentions modified the list of asserted claims, and finally spelled out exactly what patent infringement allegations Netlist is asserting in this action. Corr Decl., Exs. I (Infringement Contentions), J (Amended Infringement Contentions). Defendants then served their invalidity contentions on June 6, 2014 (*see* ECF No. 209) and filed the IPRs shortly thereafter.

Netlist is also pursuing a separate action involving trade secret misappropriation against Diablo: Case No. 4:13-CV-05962-YGR (the "Trade Secret Case"). Netlist does not assert any claims of trade secret misappropriation against Smart Storage (ECF No. 181) and this Court recently denied a request to consolidate this action with the Trade Secret Case (ECF No. 190).

**III.  Congress Created The IPR Procedure To Provide An Expedited Review Of Patent Validity In The PTO, As An Alternative To District Court Litigation.**

*Inter partes* review is a new PTO procedure created by Congress that serves as an alternative to district court litigation to resolve patent validity challenges. Congress specifically implemented this procedure to mitigate the burden of potential redundancies born by the courts, the taxpayers, and the parties, when identical patent issues are litigated in multiple forums. *See*

*Pi-Net Int'l, Inc. v. Focus Bus. Bank*, C-12-4958-PSG, 2013 WL 4475940, at *1 (N.D. Cal. Aug. 16, 2013). An IPR is conducted on an accelerated schedule in the PTO before a panel of three technically-trained Administrative Patent Judges. The IPR procedure first became available on September 16, 2012 under the Leahy-Smith America Invents Act ("AIA"), and replaces the predecessor *inter partes* reexamination procedure.

The IPR procedure is tailor-made for the present situation, where the PTO was not aware of certain invalidating prior art patents and publications during the initial examinations of the Patents-in-Suit. A party starts the IPR process by filing a petition requesting PTO review. *See generally* Office Patent Trial Practice Guide, 77 Fed. Reg. 48756 (Aug. 14, 2012) (Corr Decl., Ex. K). The patent owner may file a preliminary response within 3 months of receiving notice of the petition filing date (35 U.S.C. § 313; 37 CFR § 42.107(b)), and the PTO is required by statute to decide whether to grant the petition within 3 months from the patent owner's response (or sooner if no response is submitted (35 U.S.C. § 314(b))). So, here, the PTO must decide whether or not to institute the *inter partes* review of the Patents-in-Suit within the next 6 months.

The PTAB will institute an IPR upon a showing that "there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a). According to the most recent statistics released by the PTO, the PTO has granted about 83% of petitions for *inter partes* review. Corr Decl., Ex. L. The patent owner and petitioner are both given an opportunity to take discovery and to respond to each other's arguments. 35 U.S.C. § 316(a)(5). The statute requires that "the final determination in an *inter partes* review be issued not later than 1 year after the date on which the Director notices the institution of a review," extendible by no more than 6 months for good cause. 35 U.S.C. § 316(a)(11).[3] Once the PTAB issues a final written decision, the IPR petitioner is estopped in litigation from asserting that the claims, subject to the written decision, are invalid on any ground that the petitioner raised or reasonably could have raised during the *inter partes* review. 35 U.S.C.

---

[3] According to the PTO, "Extensions of the one-year period are anticipated to be rare." Changes to Implement *Inter Partes* Review Proceedings, 77 Fed. Reg. 48680, 48695 (Aug. 14, 2012) (Ex. M).

§ 315(e)(2).  Of the patents reviewed during the IPR process, **84%** of final decisions have found at least one claim of the challenged patent(s) unpatentable.  Corr Decl., Ex. N at 16.

As explained by the PTO, "[t]he purpose of the Leahy-Smith America Invents Act and [the PTO's IPR] regulations is to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs."  Corr Decl., Ex. O (Changes to Implement *Inter Partes* Review Proceedings, 77 Fed. Reg. 7041 (Feb. 10, 2012)).  The PTO's express intent in formulating the IPR rules and procedures was "to create a timely, cost-effective alternative to litigation." *Id.*

The statutory scheme for the new IPR procedure minimizes duplicative efforts in several ways.  First, a party must seek review within 1 year after it is served with a patent infringement complaint, ensuring that an IPR will not be tactically timed (or repeated) in an effort to delay or disrupt district court litigation that has progressed significantly towards trial.  35 U.S.C. § 315(b).  Second, the PTO is subject to fixed, statutory deadlines requiring resolution of invalidity questions much faster than through the predecessor *inter partes* reexamination procedure.  35 U.S.C. § 316(a)(11).  Third, the estoppel provision that takes effect when the PTAB issues its decision ensures there will be no re-litigation of arguments that the petitioner raised or reasonably could have raised during the IPR.  35 U.S.C. § 315(e)(2).  The new IPR procedure in the PTO resolves patent validity challenges quickly, and with meaningful estoppel consequences.

## ARGUMENT

**I.      The Court Has Discretion To Enter A Stay Pending The *Inter Partes* Review.**

This Court has inherent authority to stay this litigation pending PTO review of the validity of the Patents-in-Suit.  *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1998).  Whether to stay a case during a parallel PTO proceeding regarding the asserted patent(s) is entrusted to the Court's sound discretion.  *See Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983) ("[B]ecause district courts have broad discretionary powers to control their dockets, stays will not be vacated unless they are immoderate or of an indefinite duration").

**II.     Numerous Courts Have Entered Stays Pending PTO *Inter Partes* Review.**

In the less than two years since the new IPR procedure has been available, numerous

district courts have stayed litigation pending the PTO's review of the Patents-in-Suit. In this District alone, at least twenty-one cases have been stayed pending IPR proceedings. Corr Decl., Ex. P. The courts in these cases found that a stay pending IPR proceedings would simplify cases that were still in the early stage of discovery, and would not unduly prejudice the non-moving party given the particular parameters of the IPR procedure. *See, e.g., Brixham Solutions Ltd. v. Juniper Networks, Inc.*, No. 13-cv-00616, 2014 U.S. Dist. Lexis 58770, at *3-4 (N.D. Cal. Apr. 28, 2014) ("[I]t is likely that a stay will simplify the issues in this case because the vast majority of requests for *inter partes* review are accepted and in virtually all of the cases in which final written decisions have been issued, the PTO has cancelled some or all of the challenged claims."); *Evolutionary Intelligence LLC v. Yelp Inc.*, No. 13-cv-03587 (N.D. Cal. Dec. 18, 2013) ("If the PTAB finds that some or all of the asserted claims of the Asserted Patents are invalid or subject to modification, the Court will have wasted resources and the parties will have expended funds addressing invalid claims or claims subsequently modified during reexamination."); *Evolutionary Intelligence, LLC v. Twitter, Inc.*, No. 13-cv-04207, 2013 U.S. Dist. Lexis 28726, at *7 (N.D. Cal. Feb. 25, 2014) ("A stay pending reexamination is justified where 'the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try infringement issues.'" (quoting *Slip Track Sys., Inc. v. Metal Lite, Inc.,* 159 F.3d 1337, 1341 (Fed. Cir. 1998))).

Courts in other districts have similarly entered litigation stays pending IPR proceedings, recognizing the benefits of a stay while the asserted patent undergoes accelerated PTO review. In *Capriola Corp., et. al., v. LaRose Indus. LLC*, for example, the court entered a stay pending the PTO's consideration of an IPR petition, explaining that "the statutory arrangement promises an expeditious response from [the] PTO on whether to conduct *inter partes* review":

> In other words, if the PTO declines *inter partes* review, little time is lost, but if [the] PTO grants *inter partes* review, the promise is greater for an important contribution by the PTO to resolution of the governing issues in the litigation. . . . [B]ecause the PTO apparently will not consume much time unless the PTO perceives an important patent issue within the PTO's particular expertise; and because an important issue that appears in the litigation also appears to fall within the PTO's province and particular expertise, prudence commends resort to a stay until either the PTO declines review or, finding an important issue within

> the PTO's special province, the PTO grants and completes review to the benefit
> of the parties, the court, and the public. In other words, the investment of some
> time at this juncture appears wise.

No. 8-12-cv-02346, 2013 U.S. Dist. Lexis 65754, at *6-7 (M.D. Fla. Mar. 11, 2013). Similarly, the court entered a stay pending the outcome of an IPR in *Semiconductor Energy Lab. Co. Ltd. v. Chimei Innolux Corp.*, acknowledging that the IPR proceedings were "guaranteed to finally resolve at least some issues of validity" in light of the statutory estoppel. No. 12-cv-00021, 2012 WL 7170593, at *2 (C.D. Cal. Dec. 19, 2012).

## III. All Three Factors Considered In This District Weigh In Favor Of A Stay.

In deciding whether to stay a case pending an *inter partes* review, courts in this District consider "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Software Rights Archive, LLC v. Facebook, Inc.*, No. 12-cv-03970, 2013 U.S. Dist. Lexis 133707, at *9 (N.D. Cal. Sept. 17, 2013) (granting motion to stay pending IPR).

### A. A Stay Will Not Unduly Prejudice Or Tactically Disadvantage Netlist.

For several reasons, a stay will not unduly prejudice or tactically disadvantage Netlist.

**Netlist will fully participate in the IPRs.** Because an IPR is an *inter partes* procedure, Netlist will not be prejudiced in its ability to defend itself and the Patents-in-Suit. An IPR provides for full participation by a patent owner at all stages of the proceedings in the PTO. This will allow Netlist to file written comments addressing issues raised by the PTO or by Smart Storage or Diablo. 35 U.S.C. § 316(a)(8). At the outset, for example, Netlist can file a preliminary response to Smart Storage's petition that sets forth reasons why it believes the IPRs should not be instituted. 35 U.S.C. § 313. If review is instituted, Netlist will have the ability to conduct discovery, including the ability to depose Smart Storage's or Diablo's technical experts, and submit expert testimony of its own. Netlist may also appeal any adverse IPR decision by the PTO directly to the Federal Circuit. 35 U.S.C. § 319. Netlist will not suffer prejudice or a tactical disadvantage in defending the validity of its patents to the PTO rather than to this Court.

**This litigation is in its early stages.** A stay does not present a tactical advantage where the case has not significantly progressed. Thus, "[a] stay is particularly appropriate for cases in the initial stages of litigation or in which there has been little discovery." *Ho Keung Tse v. Apple Inc.*, No. C 06-06573 SBA, 2007 WL 2904279, at *2 (N.D. Cal. Oct. 4, 2007). Here, Netlist amended its complaint as recently as April 7, 2014 and added two additional patents. (ECF No. 181.) Netlist also, based on its own request for additional time, just recently served its amended infringement contentions on May 20, 2014, which ***modified which claims Netlist is asserting*** and finally articulated its infringement allegations (Corr Decl., Exs. I, J). And while the parties have exchanged written discovery and made technical document productions, no depositions have been noticed or taken. Corr Decl. ¶¶ 2-3. Smart Storage's invalidity contentions were just served on June 6, 2014 (ECF No. 209), and briefing on claim construction will not begin for months, with a *Markman* hearing currently set for November 19, 2014. (*Id.*) The court has set no deadline for completion of fact discovery and no trial date has been set. (*See* ECF No. 140.) The early stage of this case, accordingly, weighs in favor of a stay. *See Brixham*, 2014 U.S. Dist. Lexis 58770, at *5 (holding that "case is at a relatively early stage [where the] Court has not set dates for fact or expert discovery cut-offs or for trial"); *Evolutionary Intelligence, LLC v. LivingSocial, Inc.*, No. 13-cv-04205-WHO, 2014 U.S. Dist. Lexis 6804, at *5 (N.D. Cal. Jan. 17, 2014) (granting a stay where "[o]nly limited discovery has occurred . . . [n]o pretrial dates have been scheduled and no claim construction or other substantive briefs have been filed"); *PersonalWeb Techs. LLC v. Facebook, Inc.*, No. 13-cv-01356, 2014 U.S. Dist. Lexis 4095, at *13-14 (N.D. Cal. Jan. 13, 2014) (granting stay despite significant discovery and issuance of claim construction order because "a substantial portion of the work—expert discovery, summary judgment, pre-trial preparation, and trial itself—lies ahead").

**A stay will be in place for a finite time.** As for any alleged prejudice, it is well-recognized that "[m]ere delay, without more . . . does not demonstrate undue prejudice." *Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.*, No. C 06-2252 SBA, 2007 WL 627920, at *3 (N.D. Cal. Feb. 26, 2007). Any litigation delay here will not result in undue prejudice. The stay requested by Smart Storage will be of limited duration: the PTO is statutorily required to

decide whether to institute the IPRs within the next 6 months. 35 U.S.C. §§ 313, 314(b); 37 CFR § 42.107(b). If the PTO elects not to institute the IPRs, then the stay could be lifted after only a limited 6-month delay (or less). And if the IPRs are instituted, then the PTO must by statute complete the review within 12 months. 35 U.S.C. § 316(a)(11). At that point, the statutory estoppel provision becomes effective. 35 U.S.C. § 315(e)(2). Where the speed of the overall IPR procedure is brief, and the resulting estoppel takes effect, a stay does not result in undue prejudice. *See Semiconductor*, 2012 WL 7170593, at *3 (granting stay and stating that any purported "delay caused by the new IPR procedure is significantly less than the delay caused by the old [*inter partes* reexamination] procedure").

**Smart Storage has moved swiftly in filing the petitions for IPR and this Motion.** Smart Storage filed its petitions for IPR shortly after Netlist finalized its patent claims in this case. Indeed, Smart Storage started filing the petitions on June 18, 2014, only 29 days after Netlist served its infringement contentions, and 12 days after Smart Storage served its invalidity contentions. Corr Decl. ¶ 4. In other words, Smart Storage prepared and filed the petitions for IPR immediately after Netlist disclosed the full scope of this case. *See Datatreasury Corp. v. Wells Fargo & Co.*, 490 F. Supp. 2d 749, 755 (E.D. Tex. 2006) (granting motion to say pending PTO review in part because "Defendants did not delay in moving for a stay"); *Ho Keung Tse v. Apple Inc.*, No. C 06-06573 SBA, 2007 WL 2904279, at *4 (N.D. Cal. Oct. 4, 2007) (finding no dilatory motive where defendants filed request for reexamination three months after they served their invalidity contentions because "this is not a case where, for example, a party has requested reexamination only after either an unfavorable ruling by the court or a favorable ruling by the PTO"). Netlist has not sought a preliminary injunction here. *See Ignite USA, LLC v. Pacific Market Int'l, LLC*, No. 14 C 856, Docket No. 39, slip op. at 6 (E.D. Ill. May 29, 2014) (finding that failure to seek a preliminary injunction "further supports the absence of [plaintiff's] concern regarding a pressing threat . . .").

**The Trade Secret Case will continue.** As discussed above, Netlist is currently litigating its trade secret claims in a parallel trade secret action against Diablo. Notwithstanding a stay in the patent case, Netlist will have a forum to address Diablo's alleged misappropriation of Netlist's

confidential information. If the Court grants a stay, Netlist will not be prevented, during the IPRs, from litigating whether the accused product contains Netlist's confidential information. In fact, the ongoing trade secret litigation could be resolved during the stay, and ultimately simplify or eliminate Netlist's patent infringement claims altogether. Netlist's ability to pursue other remedies for the alleged misappropriation will not be prejudiced by the stay.

**B.     A Stay Will Simplify The Issues.**

A stay will simplify the issues in question in this case and at trial in multiple ways.

**The PTO will review the validity of every claim asserted in this case.** Smart Storage's IPR petitions seek PTO review of the validity of every claim in the five patents it challenges; Diablo's petitions seek review of the validity of every asserted claim in the '536 and '150 patents. Corr Decl., Exs. A-H. Because all of the claims currently asserted in this litigation may be found invalid during the IPRs, thereby eliminating the litigation before this Court in its entirety, a stay pending the IPRs makes good sense. Alternatively, the patent claims may be narrowed during the IPRs based on prior art, which would also affect the scope of the claims at issue here. *See LivingSocial*, 2014 U.S. Dist. Lexis 6804, at *6 ("This case will be simplified if the PTO narrows or cancels any of the asserted claims, even if other claims remain in their original form."). And because there is only one product accused of infringement here—the ULLtraDIMM—the patent claims to be reviewed during the IPRs affect every product at issue in this litigation.

**There is a high probability that one or more of the claims of the Patents-in-Suit will be found unpatentable as a result of the IPRs**. Even if not all claims of the Patents-in-Suit are found unpatentable, it is highly likely that one or more claims will not survive the IPRs. As discussed above, the PTO has granted about 83% of petitions for *inter partes* review. Corr Decl., Ex. L. And of the patents reviewed during the IPR process, *84%* of final decisions have found at least one claim of the challenged patent(s) unpatentable. *Id.*, Ex. N at 16.

Smart Storage has raised compelling invalidity arguments and supporting prior art, making it likely that the petitions will be granted and that some or all of the claims will be found unpatentable. For each patent, Smart Storage has submitted numerous § 102 and § 103 references, setting forth persuasive arguments for anticipation and obviousness. All but one of these

references were not previously considered by the PTO and Smart Storage is confident that this prior art will invalidate the patents.

Moreover, given their recent issuance, none of the patents challenged by Smart Storage have yet been challenged to the PTO. The IPR process will confirm the invalidity of all claims in these patents.

The predecessor to IPR, the *inter partes* reexamination procedure, resulted in full cancellation of claims or amendment of the claims nearly 90% of the time. *Id.*, Ex. Q at 4. While there is statistical information available only for the 20 months IPRs have been available, there is no reason to believe that the long-term statistics for *inter partes* review will result in any less cancellation or amendment. On the contrary, there is actually a higher likelihood that the IPRs will affect the claims asserted in this case, given that the standard applied by the PTO to grant an IPR ("reasonable likelihood of success") is higher than the previous standard for *inter partes* reexaminations ("significant new question of patentability"). The higher standard indicates that the PTO will grant petitions only where it is likely that one or more of the patent claims are invalid. *See Yelp*, 2013 U.S. Dist. Lexis 178547, at *21 ("[T]he higher standard for instituting an IPR . . . as opposed to the . . . standard for instituting *inter partes* reexamination[ ] gives some promise that at least certain challenged claims will be struck down or amended if the PTAB grants the petitions." (citation omitted)).

If, while the case is stayed, all of the accused claims of the Patents-in-Suit are found unpatentable through IPRs, then the Court and parties will have avoided the cost and burden of unnecessary litigation. If the case is stayed and the PTO finds that even some currently-asserted patent claims are invalid or must be amended, then the Court and parties will have avoided wasting resources addressing invalid claims or claims that have been amended.

If the case is not stayed, however, and the Court moves forward with this action in parallel with the IPRs, there is a substantial risk of expending substantial resources to litigate the validity of patent claims that may ultimately be held unpatentable by the PTO. *See PersonalWeb*, 2014 U.S. Dist. Lexis 4095, at *16 (granting stay to "avoid[ ] duplicative costs and efforts"). The parties have yet to make the major investment of time and resources necessary for fact and expert

discovery. It would be a waste of valuable judicial and party resources to conduct parallel proceedings before this Court and the PTO for the next year or two, only to have the work of the Court undone by claim cancellations and/or amendments that are likely to occur in the patent office.

**The statutory estoppel resulting from the IPRs will simplify the invalidity issues in this litigation**. The potential outcomes of the IPRs are that: (1) the claims will be invalidated and cancelled; (2) the claims will be amended; or (3) the claims will be confirmed as patentable. Either of the first two outcomes will reduce the number of patent claims at issue in the litigation. *All* possible outcomes will simplify the invalidity issues in this litigation because Defendants will be estopped from re-litigating, in this Court, the same invalidity issues that they raised or reasonably could have raised in the IPRs. 35 U.S.C. § 315(e)(2). *See Brixham*, 2014 U.S. Dist. Lexis 58770, at *4 ( "[A]ssuming the PTO institutes review, the case is likely to be streamlined even if no claims are cancelled because of the estoppel provisions of 35 U.S.C. § 315(e) . . ."). Thus, a stay here will inevitably simplify the case.

**The court and the parties will benefit from the expert view of the PTO.** The Federal Circuit has held that "[o]ne purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is cancelled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding." *Gould*, 705 F.3d at 1342. Even if every claim of the Patents-in-Suit survives the IPRs unchanged, the Court and the parties will benefit from the expert review by three PTO Administrative Patent Judges. *See Twitter*, 2014 U.S. Dist. Lexis 28726, at *7-8 ("To the extent claims survive the reexamination process, the reexamination would facilitate trial by providing the Court with expert opinion of the PTO and clarifying the scope of the claims." (citation omitted)). If the PTO confirms the claims without amendment, the PTO's findings will be helpful to this Court when determining the scope of the Patents-in-Suit, how to construe the patent claims, and whether any of them cover the allegedly-infringing Smart Storage products.

On the other hand, if this case proceeds alongside the IPRs, there is a risk of inconsistent rulings on the issue of patent validity. *See id*. at *7 ("A stay may also be granted in order to avoid

inconsistent results, obtain guidance from the PTAB, or avoid needless waste of judicial resources."); *Yelp*, 2013 U.S. Dist. Lexis 178547, at *18-19 ("[G]ranting of a stay will avoid the possibility of inconsistent results.").

**A stay will avoid the burden of potentially having to repeat the patent claim construction process when the IPR records are complete**. During the IPRs, Netlist may make representations and admissions regarding the scope of the claims of the Patents-in-Suit to attempt to distinguish the claimed invention from the prior art. These statements during the IPR proceedings will form part of the still-developing intrinsic record of the Patents-in-Suit (the back-and-forth "prosecution history" in the PTO) that the Court must consider when it construes the claim language. *See Phillips v. AWH Corp.*, 415 F. 3d 1303, 1314–19 (Fed. Cir. 2005) (intrinsic evidence includes the claims, the specification, and the prosecution history, which comprises the complete record of the proceedings before the PTO*); American Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1336 (Fed. Cir. 2011) (statements made during PTO reexamination inform the proper construction of a claim term). If claim construction is addressed before the PTO's review of the Patents-in-Suit, before Netlist's arguments are complete, and before the claims (if they even survive) are final, that process will likely need to be repeated or revisited after the conclusion of the IPRs. *See, e.g.*, *VDF Futureceuticals, Inc. v. Sandwich Isles Trading Co. Inc.*, No. 11-cv-288-ACK-RLP, 2011 U.S. Dist. Lexis 148766, at *5-6 (D. Haw. Dec. 27, 2011) ("The Court particularly notes that some or all of the Court's determinations at the scheduled Markman hearing [ ] could be undermined by the PTO's reexamination, forcing the Court to hold a second Markman hearing to address new versions of the claims."). Because a stay pending completion of the IPRs would avoid imposing this unnecessary burden on the Court, the claim construction issues should not be litigated until the evolving intrinsic record in the PTO is complete.

**The IPRs may lead to settlement**. A stay of the litigation while the IPRs proceed in the PTO may enhance the likelihood of settlement. *See Yelp*, 2013 U.S. Dist. Lexis 178547, at *19 ("[E]ven if these claims are not all cancelled, the IPR could encourage settlement . . . ."). If, for example, Netlist is forced to amend the claims during the IPRs, then the scope of Netlist's patent

allegations may be altered, and the settlement posture will have changed considerably. Also, importantly, unlike the predecessor *inter partes* reexamination procedure, the parties may settle an IPR in the PTO without Court intervention if they reach a resolution. *See* 35 U.S.C. § 317.

### C. Discovery Has Just Begun And No Trial Date Has Been Set.

As previously discussed (*see* section III.A. *supra*), this case is still in its early stages: Netlist only recently filed its amended complaint (adding two patents to the case) and served its amended infringement contentions; no depositions have been noticed or taken; there is no definitive schedule for expert discovery; claim construction briefing will not begin for months; and the Court has not yet set a date for dispositive motions or trial, nor has it set a date by which the parties must complete fact discovery. Thus, the final factor weighs in favor of staying this case. *See Yelp*, 2013 U.S. Dist. Lexis 178547, at *14 ("When, as here, there has been no material progress in the litigation, courts in this district strongly favor granting stays pending reexamination." (citation omitted)).

## CONCLUSION

"One unique, and frankly, often puzzling aspect of patent cases is that they can proceed in any number of different venues, often at the same time. . . . The result is that multiple arms (and resources) of the United States government can be called upon, in parallel, and asked to apply multiple standards, even in a dispute involving the same plaintiff, the same defendant, the same patent, and the same accused product. . . . To mitigate the burden of these redundancies, a burden born not only by the taxpayers but the parties themselves, the law provides any number of different options to 'stay' proceedings in one venue while they continue in another." *Pi-Net*, 2013 WL 4475940, at *1.

This case exemplifies why Congress created the IPR procedure: so the validity of disputed patents could be determined on an expedited basis in the PTO, rather than through costly parallel litigation in district court. If the stay is granted, the IPR proceedings in the PTO will streamline the validity portion of the case, simplifying (if not eliminating) the issues for trial and conserving judicial resources. In a case that is in its early stages, no party will be prejudiced by a stay. For

these reasons, Smart Storage respectfully requests that the Court stay this litigation in its entirety pending the outcome of the *inter partes* review of the Patents-in-Suit.

Dated: June 24, 2014

Respectfully submitted,

JONES DAY

*/s/ Steven J. Corr*
Steven J. Corr (State Bar No. 216243)
sjcorr@JonesDay.com
JONES DAY
555 South Flower Street
Los Angeles, CA 90071
Telephone: 1.213.243.2327
Facsimile: 1.213.243.2539

Attorney for Defendant,
SMART STORAGE SYSTEMS, INC.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on this date to all current and/or opposing counsel of record, who are deemed to have consented to electronic service via the Court's CM/ECF system per Civ. L.R. 5.4(d). Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery upon their appearance in this matter.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct. Executed this 24th day of June 2014 at Los Angeles, California.

JONES DAY

*/s/ Steven J. Corr*
Steven J. Corr

SVI-146362