| | |
|---|---|
| Thomas J. Wimbiscus (*Pro Hac Vice*) | Sean C. Cunningham (CA Bar No. 174931) |
| twimbiscus@mcandrews-ip.com | sean.cunningham@dlapiper.com |
| Gregory C. Schodde (*Pro Hac Vice*) | **DLA PIPER LLP (US)** |
| gschodde@mcandrews-ip.com | 401 B Street, Suite 1700 |
| Ronald H. Spuhler (*Pro Hac* Vice) | San Diego, California 92101-4297 |
| rspuhler@mcandrews-ip.com | 619-699-2700 |
| Wayne H. Bradley (*Pro Hac Vice*) | 619-699-2701 - Facsimile |
| wbradley@mcandrews-ip.com | |

**McANDREWS, HELD & MALLOY, LTD.**
500 West Madison Street, 34th Floor
Chicago, Illinois 60661
312-775-8000
312-775-8100 - Facsimile

Benjamin K. Riley (CA Bar No. 112007)
briley@bzbm.com
Robert N. Bunzel (CA Bar No. 99395)
rbunzel@bzbm.com
W. Paul Schuck (CA Bar No. 203717)
pschuck@bzbm.com
Sony B. Barari (CA Bar No. 243379)
sbarari@bzbm.com
Simon R. Goodfellow (CA Bar No. 246085)
sgoodfellow@bzbm.com
**BARTKO, ZANKEL, BUNZEL & MILLER**
One Embarcadero Center, Suite 800
San Francisco, California 94111
(415) 956-1900
(415) 956-1152 - Facsimile

Attorneys for Plaintiff
NETLIST, INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| NETLIST, INC., | CASE NO. 4:13-CV-05889-YGR |
| Plaintiff, | **NETLIST, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO STAY** |
| v. | |
| SMART STORAGE SYSTEMS, INC., and DIABLO TECHNOLOGIES, INC., | |
| Defendants. | |

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 2

    A. Staying The Infringement Action Will Unduly Prejudice And Provide A Clear Tactical Disadvantage to Netlist .............................................................. 3

    B. Staying The Infringement Allegations As To Smart Will Not Significantly Simplify The Issues And Will Not Streamline Any Trial .................................... 8

    C. The Pending Action Is Not In Its Infancy ........................................................ 12

III. CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Agavo Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*,
No. 10-CV-02863-EJD, 2011 WL 3267768 (N.D. Cal. July 28, 2011).............................. 4

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
Case No. 11-6391 SI, (N.D. Cal. June 11, 2013)................................................................ 4

*Athena Feminine Techs., Inc. v. Wilkes*,
C 10-04868 SBA, 2012 WL 1424988 (N.D. Cal. Apr. 24, 2012) ....................................... 1

*Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.*,
No. 6:12-CV-1727-ORL-37, 2013 WL 1969247 (M.D. Fla. May 13, 2013) ................... 10

*Boston Sci. Corp. v. Cordis Corp.*,
777 F. Supp.2d 783 (D. Del. 2011) .................................................................................... 3

*CDX Diagnostics, Inc. v. U.S. Endoscopy Grp., Inc.*,
No. 13-CV-05669 NSR, 2014 WL 2854656 (S.D.N.Y. June 20, 2014).............................. 3

*Comcast Cable Comm'ns Corp., LLC v. Finisar Corp.*,
No. C 06-04206 WHA, 2007 WL 1052883 (N.D. Cal. Apr 5, 2007)................................. 1

*Cooper Notification, Inc. v. Twitter, Inc.*,
No. CIV. 09-865-LPS, 2010 WL 5149351 (D. Del. Dec. 13, 2010) ................................ 13

*Davol, Inc. v. Atrium Med. Corp.*,
No. CIV.A. 12-958-GMS, 2013 WL 3013343 (D. Del. June 17, 2013)........................... 10

*eCOMSYSTEMS, Inc. v. Shared Mktg. Servs., Inc.*,
No. 810-CV-1531-T-33AEP, 2011 WL 280942 (M.D. Fla. Jan. 26, 2011) ........................ 5

*Encap, LLC v. The Scotts Co., LLC*,
Case No. 11-C-685 (E.D. Wisc. Nov. 7, 2013)................................................................... 4

*Eon Corp. IP Holdings, LLC v. Skytel Corp.*,
No 6:08-CV-385, 2009 WL 8590963 (E.D. Tex. Apr. 29, 2009)........................................ 1

*Esco Corp. v. Berkeley Forge & Tool, Inc.*,
No. C 09-1635 SBA, 2009 WL 3078463 (N.D. Cal. Sept. 28, 2009)............................ 1, 8

*Ethicon, Inc. v. Quigg*,
849 F.2d 1422 (Fed. Cir. 1988)........................................................................................... 2

*Everlight Elecs. Co. v. Nichia Corp.*,
No. 12-CV-11758, 2013 WL 1821512 (E.D. Mich. Apr. 30, 2013)................................... 4

*Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*,
No. C-13-4513-RMW, 2014 WL 819277 (N.D. Cal. Feb. 28, 2014) ............................... 11

*Fresenius Med. v. Baxter Int'l, Inc.*,
No. C 03-1431, 2007 WL 1655625 (N.D. Cal. June 7, 2007) ......................................... 12

*Hunter Douglas, Inc. et al. v. Nien Made Enterprise Co.*,
Case No. 13-CV-01412 (D. Col. Jan. 14, 2014) ................................................................. 3

*ImageVision.Net, Inc. v. Internet Payment Exch.*,
No. CA 12-054-GMS-MPT, 2012 WL 3866677 (D. Del. Sept. 4, 2012)........................... 8

*Juxtacomm-Texas Software, LLC v. Lanier Parking Sys. of Virginia, Inc.*,
No. 3:11-CV-299, 2011 WL 3322554 (E.D. Va. Aug. 2, 2011)....................................... 13

*Kilopass Tech, Inc. v. Sidense Corp.*,
    2011 U.S. Dist. LEXIS 157267 (N.D. Cal. Feb. 8, 2011) .................................................. 8

*Landis v. North Am. Co.*,
    299 U.S. 248 (1936) .......................................................................................................... 3

*Largan Precision Co. Ltd. v. Fujifilm Corp.*,
    No. C 10-1318 SBA, 2011 WL 794983 (N.D. Cal. Mar. 1, 2011) ................................... 8

*MercExchange, LLC v. eBay Inc.*,
    500 F. Supp.2d 556 (E.D. Va. 2007) .............................................................................. 13

*Network Appliance Inc. v. Sun Microsystems Inc.*,
    No. C-07-06053 EDL, 2008 WL 2168917 (N.D. Cal. May 23, 2008) ............................ 9

*Niken v. Holder*,
    556 U.S. 418 (2009) .......................................................................................................... 2

*Nippon Steel & Sumito Metal Corp. v. POSCO*,
    No. CIV.A. 12-2429 DMC, 2013 WL 1867042 (D.N.J. May 2, 2013) ......................... 13

*Otto Bock Healthcare LP v. Ossue HF*,
    Case No. 13-00891 (C.D. Cal. Dec. 16, 2013) ................................................................ 3

*Pi-Net Int'l., Inc. v. Focus Bus. Band*,
    No. C-12-4958-PSG, 2013 WL 4475940 (N.D. Cal. Aug. 16, 2013) ......................... 3, 11

*Polymer Techs., Inc. v. Bridwell*,
    103 F.3d 970 (Fed. Cir. 1996) .......................................................................................... 5

*Proctor & Gamble Co. v. Team Techs., Inc.*,
    Case No. 12-cv-552 (W.D. Ohio Sept. 10, 2013) ............................................................ 4

*Roy-G-Biv Corp. v. Fanuc Ltd.*,
    No. CIV.A.2:07-CV-418, 2009 WL 1080854 (E.D. Tex. Apr. 14, 2009) ....................... 9

*Software Rights Archive, LLC v. Facebook, Inc.*,
    No. C-12-3970 RMW, 2013 WL 5225522 (N.D. Cal. Sept. 17, 2013) ......................... 12

*TPK Touch Solutions, Inc. v. Wintek Electro–Optics Corp.*,
    2013 U.S. Dist. LEXIS 132955 (N.D. Cal. Sept. 17, 2013) ............................................. 8

*Ultratec, Inc. v. Sorenson Commn's, Inc.*,
    Case No. 13-CV-00346-BBC, 2013 WL 6044407 (W.D. Wisc. Nov. 14,
    2013) ................................................................................................................................. 3

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
    No. C 12-05501, 2014 WL 121640 (N.D. Cal. Jan. 13, 2014) ................................. passim

*Viskase Corp. v. Am. Nat'l Can Co.*,
    261 F.3d 1316 (Fed. Cir. 2001) ........................................................................................ 1

**Statutes**

35 U.S.C. § 101 ........................................................................................................................ 10

35 U.S.C. § 112 ........................................................................................................................ 10

35 U.S.C. § 314(b) ..................................................................................................................... 5

35 U.S.C. § 315(a)(1) ................................................................................................................. 7

35 U.S.C. § 315(e)(2) ............................................................................................................... 11

35 U.S.C. § 316(a)(11) ............................................................................................................... 5

35 U.S.C. §§ 319, 141(c) ........................................................................................................... 5

37 C.F.R. § 41.52(a)(1) .............................................................................................................. 5

37 C.F.R. § 42.100(c) .................................................................................................... 5

## I. INTRODUCTION

While this Court has discretion to grant or deny a stay pending *inter partes* review of the Netlist, Inc. ("Netlist") patents, it "is under no obligation to delay its own proceeding by yielding to ongoing PTO patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze." *Athena Feminine Techs., Inc. v. Wilkes*, C 10-04868 SBA, 2012 WL 1424988 (N.D. Cal. Apr. 24, 2012); *see also Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001) ("The court is not required to stay judicial resolution in view of the reexaminations."); *Eon Corp. IP Holdings, LLC v. Skytel Corp.*, No 6:08-CV-385, 2009 WL 8590963, at *2 (E.D. Tex. Apr. 29, 2009) (noting that Congress decidedly did not provide for an automatic stay of litigation in the American Invents Act).

Indeed, as this Court has previously noted, "[t]here is no per se rule that patent cases should be stayed pending reexamination, because such a rule 'would invite parties to unilaterally derail' litigation." *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. C 12-05501, 2014 WL 121640, at *2 (N.D. Cal. Jan. 13, 2014) *citing Esco Corp. v. Berkeley Forge & Tool, Inc.*, No. C 09-1635 SBA, 2009 WL 3078463, at *2 (N.D. Cal. Sept. 28, 2009); *see also Comcast Cable Comm'ns Corp., LLC v. Finisar Corp.*, No. C 06-04206 WHA, 2007 WL 1052883, at *1 (N.D. Cal. Apr 5, 2007) ("If litigation were stayed every time a claim in suit undergoes reexamination, federal infringement actions would be dogged by fits and starts. Federal court calendars should not be hijacked in this manner.").

By not providing for an automatic stay, Congress allowed courts to determine whether a stay was appropriate on a case-by-case basis. In making this determination, courts typically look at three factors. Each of them weighs in favor of denying Defendants' requested stay:

- **<u>Undue Prejudice.</u>** Courts have consistently denied a stay where the patentee and alleged infringers compete in a dynamic marketplace, as delaying the resolution of the infringement claims would cause the patentee harm for which it cannot adequately be compensated by money damages after the fact. This prejudice is amplified by the fact that the IPR proceedings, with appeal, will likely take years to complete (and possibly years longer if remanded due to, for

example, an incorrect claim construction). There is no dispute that the parties to this action offer similar products that compete in the same developing, hybrid memory market. Indeed, recent discovery has confirmed that ███████████████████████████████████████████████████████████████████████████████████████

- **Significant Simplification.** Defendants' assertion that the Patent Trial and Appeal Board ("PTAB") will institute Defendants' IPR's, or that the IPR's will significantly streamline the district court case, is pure speculation. At the very least, Defendants' motion is premature and should be denied without prejudice until the PTAB decides whether to institute Defendants' petitions. Moreover, Defendants' coordination of its IPR filings, such that both parties are not petitioners on any of the petitions, undermines the statutory estoppel provision that courts typically rely upon as a basis for simplifying the litigation actions.

- **Status of Proceedings.** Netlist's infringement claims have been pending for almost a year, during which time the parties have expended significant resources in conducting discovery, exchanging infringement and invalidity contentions and beginning the claim construction process. By comparison, the IPR's were only recently filed, and a decision from the PTAB as to whether to even institute the proceedings will likely not be forthcoming until next year.

For the reasons more fully discussed herein, Defendants' motion to stay should be denied.

## II. ARGUMENT

The decision whether to stay litigation pending PTO review is within the discretion of the court, which has the inherent power to manage its docket. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988). The burden is on the party seeking the stay to persuade the court that a stay is appropriate. *Niken v. Holder*, 556 U.S. 418, 433-34 (2009).

In determining whether to stay an infringement action pending PTO review, courts typically consider three factors: (1) whether discovery is complete and a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *See Pi-Net Int'l., Inc. v. Focus Bus. Band*, No. C-12-4958-PSG, 2013 WL 4475940, at *3 (N.D. Cal. Aug. 16, 2013). Each of these factors weighs against staying Netlist's infringement claims.

### A. Staying The Infringement Action Will Unduly Prejudice And Provide A Clear Tactical Disadvantage to Netlist

The paramount consideration in determining whether to grant a stay is the consequences of the stay on the non-moving party. *Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936) (noting that the moving party "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which it prays will work damage to someone else"). As such, courts may deny requests to stay based on undue prejudice to the non-moving party, even where the other two factors weigh in favor of a stay. *See, e.g., Pi-Net Int'l, Inc. v. Focus Bus, Bank*, Case No. C-12-4958 PSG, 2013 WL 4475940, at *3 (N.D. Cal. Aug. 16, 2013) ("Despite the first two factors weighing in favor of a stay, if Pi-Net would face undue prejudice as a result of the stay, the court would be compelled to exercise its discretion to deny the stay.").

As this Court has noted, "[c]ourts are generally reluctant to stay proceedings where the parties are direct competitors." *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. C 12-05501 SI, 2014 WL 121640, at *3 (N.D. Cal. Jan. 13, 2014) (*citing Boston Sci. Corp. v. Cordis Corp.*, 777 F. Supp.2d 783, 789 (D. Del. 2011)).[1] "[I]nfringement among competitors can cause harm in

---

[1] *See also CDX Diagnostics, Inc. v. U.S. Endoscopy Grp., Inc.*, No. 13-CV-05669 NSR, 2014 WL 2854656, at *5 (S.D.N.Y. June 20, 2014) (denying stay where, despite not being "direct" competitors, the parties are somewhat in competition and plaintiff would nevertheless be prejudiced); *Hunter Douglas, Inc. et al. v. Nien Made Enterprise Co.*, Case No. 13-CV-01412 (D. Col. Jan. 14, 2014) (same; attached as Ex. A to the Spuhler Declaration submitted herewith); *Otto Bock Healthcare LP v. Ossue HF*, Case No. 13-00891 (C.D. Cal. Dec. 16, 2013) (holding that "courts presume that a stay will prejudice the non-movant" where parties are competitors) (citations omitted; attached as Ex. B); *Ultratec, Inc. v. Sorenson Commn's, Inc.*, Case No. 13-CV-00346-BBC, 2013 WL 6044407, at *4 (W.D. Wisc. Nov. 14, 2013) (denying stay where parties are competitors and holding that defendants have burden to show that the stay will not prejudice plaintiff and will not give defendants a tacit advantage); *The Proctor & Gamble Co. v. Team*

the marketplace that is not compensable by readily calculable money damages. Staying a case while such harm is ongoing usually prejudices the patentee that seeks timely enforcement of its right to exclude." *Agavo Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*, No. 10-CV-02863-EJD, 2011 WL 3267768, at *5 (N.D. Cal. July 28, 2011). The prejudice is even greater where, as here, the market is developing and dynamic. *See Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, Case No. 11-6391 SI, (N.D. Cal. June 11, 2013), at p. 3 ("The Court recognizes that the field covered by the patents in suit. . . is nascent but rapidly developed into a multi-billion dollar industry. The need for a final determination of the validity and scope of patents in issue, as well as their potential infringement counsels strongly against staying these cases for a significant period of time . . . . ") (attached as Ex. E).

There can be no dispute that the parties are competitors in this niche market for hybrid memory devices. Netlist spent significant sums of money developing breakthrough products including hybrid memory devices that contain DRAM and FLASH memory technologies. Netlist was the first company to bring a hybrid memory module to market (*e.g.*, Netlist's Vault Memory Storage line of products) and has been the only high-volume commercial supplier of these products for years. Infringers such as the Defendants are now only beginning to encroach on the market that Netlist created. The fact that the parties' products are in competition is best evidenced by the fact that Netlist's inspection of Diablo's first versions of the accused infringing "ULLtraDIMM" memory module (which Diablo only recently made available) revealed that the Diablo module ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Each passing day that Defendants

---

*Techs., Inc.*, Case No. 12-cv-552 (W.D. Ohio Sept. 10, 2013) (denying stay where parties are competitors; attached as Ex. C)); *Encap, LLC v. The Scotts Co., LLC*, Case No. 11-C-685 (E.D. Wisc. Nov. 7, 2013) (same; attached as Ex. D); *Everlight Elecs. Co. v. Nichia Corp.*, No. 12-CV-11758, 2013 WL 1821512, at *8 (E.D. Mich. Apr. 30, 2013) (denying Defendants' request for stay and to proceed with infringement issues related to patent in a separate trial, particularly given that the parties are competitors).

continue to market the infringing products results in lost market share to Netlist, along with irreparable damage to its goodwill.

The prejudice to Netlist is further exacerbated by the fact that, given the infancy of the IPR proceedings, it will likely be years before the IPR proceedings are finalized. The PTAB has recently assigned filing dates to the IPR petitions (for example, the IPR related to U.S. Patent No. 8,301,833, filed with the PTAB on June 20, has been accorded a filing date of July 2, 2014). Netlist may file its preliminary patent owner's response within three months of this filing date; the PTAB then has three months (January 2015) in which to decide whether to institute the IPR. 35 U.S.C. § 314(b) (2012). Thereafter, the PTO has twelve months in which to issue its decision, a deadline which can be extended by up to six months, possibly extending the final decision to July 2016. 35 U.S.C. § 316(a)(11). Both parties then have a right to request rehearing of the PTO decision (37 C.F.R. § 41.52(a)(1)) and a right to appeal the PTO's final decision to the Federal Circuit (35 U.S.C. §§ 319, 141(c)), which could add another two years, extending the proceeding until July 2018.[2] **Thus, by staying these proceedings, Defendants' infringement could easily continue unabated for a significant period of time**.

Allowing Defendants to continue to market its infringing product for even the next 18-24 months of the pre-appeal IPR process – particularly in this developing niche hybrid memory market in which the parties compete – will cause Netlist significant harm in the marketplace that cannot be compensated by monetary damages. *See, e.g., eCOMSYSTEMS, Inc. v. Shared Mktg. Servs., Inc.*, No. 810-CV-1531-T-33AEP, 2011 WL 280942, at *4 (M.D. Fla. Jan. 26, 2011) (*quoting Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 975-76 (Fed. Cir. 1996) (noting that "[y]ears after infringement has begun, it may be impossible to restore a patentee's . . . exclusive position by an award of damages and a permanent injunction. Customers may have established

---

[2] As part of the IPR proceeding, the PTAB will construe the claims. The Board's claim construction is reviewed by the Federal Circuit *de novo*. While the American Invents Act includes a one-year time limit from institution to final decision, it does not include a corresponding time restriction if a case is remanded after appeal. Practitioners have speculated that, given the backlog that is developing at the PTAB, any case that is remanded may face significant delays, which would further extend the date for "final" resolution (along with extending the prejudice to Netlist).

relationships with infringers. The market is rarely the same when a market of multiple sellers is suddenly converted to one with a single seller by legal fiat."). These facts, alone, militate against a stay. Notably, Defendants' Exhibit P, which lists recent decisions from this District, does not reference a single case in which this Court granted a stay over the objection of a patentee that timely asserted its patent rights against a competitor.[3]

Defendants' other arguments regarding this factor are similarly unavailing. Defendants suggest that Netlist will not be prejudiced because it may participate in the IPR proceedings. If such logic dictated, then a patentee would never be prejudiced, as it can always participate in proceedings before the Patent Board. Obviously the wealth of opinions refusing to stay infringement actions, despite the fact that patentees may participate in the IPR proceeding (or the previous *inter partes* reexam procedure), suggests that this position should be given little, if any, weight. Instead, this Court should focus on the irreparable harm in the market place caused by years of infringement and the illegitimate development of strong market positions, and on the prejudice to Netlist in delaying the resolution of its claims, particularly where this Court is quite capable of fully resolving all of Netlist's claims in a timely fashion.

---

[3] Defendants reference twenty-one decisions in which the Northern District of California has granted a stay. (Smart Storage's Br. at 6; Ex. P.) The vast majority of these cases involve uncontested or stipulated motions (*see* Entry Nos. 3, 4, 11, 13 and 15-18), or cases filed by non-practicing entities that, by definition, are not "competitors" of the alleged infringers (*see, e.g.,* Entry Nos. 1, 2, 6, 7, 8, 10, 12 and 19).

Most telling is the court's ruling in the *Verinata* cases in which, notwithstanding its inclusion in Defendants' Exhibit P, the court **twice denied** the alleged infringers' motions to stay. The *Verinata* cases consisted of three related infringement actions. The alleged infringers sought to stay these proceedings in May 2013 in view of various IPR and interference proceedings (only some of which had been instituted or declared at the time of filing). The court denied these motions, holding that they were "unlikely to simplify all or a significant portion of the issues raised in these cases before the Court on a timely basis." (Ex. E; June 11, 2013 Order.)

In the Fall of 2013, the PTAB instituted *inter partes* review of two of the Verinata patents, based on requests filed prior to the initial motion to stay. Accordingly, one of the alleged infringers, Ariosa Diagnostics, renewed its motion to stay. The court held that the fact that the parties were direct competitors weighed "heavily against a stay," and denied the motion despite the fact that the PTO review could, in fact, streamline the infringement issues. *See Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. C 12-05501 SI, 2014 WL 121640, at *3-4 (N.D. Cal. Jan. 13, 2014).

Smart Storage has also argued that Netlist will not be prejudiced because Netlist may proceed with its trade secret counts against Diablo. Smart Storage's position, however, ignores that the trade secret claims include different factual and legal issues and remedies than the patent case; indeed, Netlist cannot seek trade secret protection for inventions on which Netlist has sought patent protection. As such, any remedies obtained during the trade secret case will not fully compensate Netlist for the Defendants' ongoing patent infringement, particularly as to Smart Storage, who is not a party to the trade secret case. Again, staying the infringement action will only serve to needlessly delay and complicate a prompt resolution of Netlist's infringement claims.

Smart Storage also argues that it "swiftly" filed its IPR petitions. To the contrary, Smart Storage was aware of the patents that it has sought review of when Netlist sued Smart Storage and Diablo for infringement of these patents in August 2013.[4] But Smart Storage only filed its IPR petitions some ten months later, after Netlist served detailed infringement contentions, and discovered that ███████████████████████████████████████████████ Smart Storage's suggestion that it had to wait for Netlist to serve its infringement contentions before filing its petitions is a red herring because Smart Storage's petitions are in no way tied to Netlist's contentions or asserted claims.[5] While Netlist believes the IPR petitions are without merit, Smart Storage (or for that matter, Diablo) has provided no justification for why it could not have proceeded with its petitions in Fall 2013, upon learning of Netlist's belief that these parties infringed the asserted patents. Defendants' gamesmanship and delay in filing these petitions further evidences the undue prejudice to Netlist that would follow a stay in this case.

---

[4] Diablo filed a declaratory judgment action that same day, seeking a declaration that these five patents were invalid and/or not infringed. 35 U.S.C. § 315(a)(1) bars an IPR petition if the petitioner or a real-party-in-interest has already filed a civil action in district court challenging the validity of the relevant claims. This likely explains why Smart Storage filed the IPR petitions in these five patents (as Diablo was barred from doing so as a result of its declaratory judgment complaint), while Diablo filed the petition in the other two asserted patents.

[5] Moreover, without conceding that any of Smart Storage's petitions have merit, Smart Storage itself points out in its brief that its petitions are not limited to the asserted claims, but cover all of the claims of each of the patents at issue.

Finally, Defendants argue that Netlist would not be prejudiced because it has not sought a preliminary injunction in this matter. Several courts have rejected the argument that this factor supports a stay, noting that "[a] party may decide to forego seeking preliminary injunction for a variety of reasons having nothing to do with its view of the merits." *See Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. C 12-05501 SI, 2014 WL 121640, at *3 (N.D. Cal. Jan. 13, 2014) (*citing TPK Touch Solutions, Inc. v. Wintek Electro–Optics Corp.,* 2013 U.S. Dist. LEXIS 132955, at * 14 (N.D. Cal. Sept. 17, 2013)).

In short, Defendants have failed to meet their burden to come forward with evidence that Netlist will not be prejudiced if its infringement claims are stayed. Courts have consistently denied stays where, as here, the parties are in competition. Allowing a competitor to continue to market and sell infringing products for months – let alone years – can be devastating for a patent owner, particularly in a newly-developing industry such as the hybrid memory market at issue in this case. Defendants' motion should be denied for this reason alone.

### B. Staying The Infringement Allegations As To Smart Will Not Significantly Simplify The Issues And Will Not Streamline Any Trial

Where "the scope of the issues to be resolved during litigation substantially exceeds the scope of the issues that can be resolved during the reexamination proceedings, this factor disfavors a stay." *ImageVision.Net, Inc. v. Internet Payment Exch.,* No. CA 12-054-GMS-MPT, 2012 WL 3866677, at *1–5 (D. Del. Sept. 4, 2012); *see also Largan Precision Co. Ltd. v. Fujifilm Corp.,* No. C 10-1318 SBA, 2011 WL 794983, at *4 (N.D. Cal. Mar. 1, 2011) ("If regardless of the result of the reexamination, there are still claims or counterclaims that need to be resolved by the Court, then reexamination clearly fails to provide final resolution."); *Esco Corp. v. Berkeley Forge & Tool, Inc.,* No. C 09-1635 SBA, 2009 WL 3078463, at *3 (N.D. Cal. Sept. 28, 2009) (holding that "to truly simplify the issues . . . the outcome of the reexamination must finally resolve all issues in the litigation.") (citations omitted). This is particularly true where, as here, there are multiple patents at issue. *Verinata Health*, 2014 WL 121640, at *3 *citing Kilopass Tech, Inc. v. Sidense Corp.*, 2011 U.S. Dist. LEXIS 157267, at *8 (N.D. Cal. Feb. 8, 2011) (holding "complaints involving multiple patents are less likely to be resolved by a PTO

decision"); *Network Appliance Inc. v. Sun Microsystems Inc.*, No. C-07-06053 EDL, 2008 WL 2168917, at *3 (N.D. Cal. May 23, 2008) ("Staying the case as to the three patents in reexamination is not nearly as likely to significantly simplify . . . litigation as much as [do] stays issued in . . . single patent cases.").

In support of its motion, Smart Storage provides the credentials of its paid experts and cites to historical statistical information regarding prior *inter partes* review of unrelated, third-party patents, without providing any credible evidence as to why it believes that the PTO will grant the requests for *inter partes* review that it filed as to Netlist's asserted patents. (*See, e.g.,* Smart Storage's Br. at 2, 4-5.) Courts have held that such information is not sufficient to warrant a stay. *See Roy-G-Biv Corp. v. Fanuc Ltd.*, No. CIV.A.2:07-CV-418, 2009 WL 1080854, at *2 (E.D. Tex. Apr. 14, 2009) (holding "[t]o convince this Court that a stay will actually simplify a case, the requesting party must do more than merely proffer oft-cited reexamination statistics and generic judicial efficiency arguments.").[6] Here, the IPR process is in the very earliest stages. Indeed, it will be three months before Netlist files any initial response to the IPR petitions, and the PTAB's decision on whether to institute the petitions may not come until next year. Compounding the uncertainty, it is anyone's guess as to whether the PTAB may elect to deny all the petitions, may grant certain grounds in certain petitions and deny others, may deny all grounds in certain petitions and grant others, or may grant all the petitions. Defendants' assertion that the PTAB will institute these proceedings is thus pure speculation, and Defendants' request for a stay is therefore entirely premature, particularly given that, as noted above, delaying the infringement proceedings for even six months will significantly prejudice Netlist in the marketplace.

Diablo has likewise failed to provide any actual evidence that Defendants' IPR requests will streamline these proceedings in any meaningful way. In its joinder, Diablo pointed to dependent claims in related patents that have been rejected in reexamination proceedings filed by third parties. Diablo's argument ignores that these dependent claims also include all limitations

---

[6] A quick review of the PTAB statistics suggests that many of the IPR's to date have involved patents owned by non-practicing entities that may be viewed as being relatively "weaker," and thus, more susceptible to cancellation.

Netlist's Opposition to Smart Storage's Motion To Stay     - 9 -     4:13-CV-05889-YGR

of the corresponding independent claim, which provide numerous bases for differentiating the asserted claim from the related claim being reexamined. For example, asserted claim 1 of the '536 patent (from which claim 16 of the '536 patent, the claim identified in Diablo's brief, depends) includes the following limitation: "selectively isolate a load of the DDR memory circuits of at least one rank of the first number of ranks from the computer system in response at least in part to the set of signals." (*See* Ex. G; U.S. Patent No. 8,081,536, col. 41, lns. 36-39.) None of the claims of the related '386 patent include this novel load isolation feature. It should also be noted that the references that form the basis of the rejections in the '386 patent (including Amidi and JEDEC) were all cited during the prosecution of the '536 patent. (*Id.* at p. 2-4.) Nevertheless, the PTO determined that the claims of the '536 patent, which include this "load isolation" feature, were patentable over these references. Diablo has provided no basis for why Netlist's claims should be stayed so that Diablo can re-raise references already considered – and rejected – by the PTO during the original prosecution.

As such, Defendants have failed to provide any evidence to suggest that the PTO will, in fact, institute the review of the Netlist asserted patents, let alone on what claims or grounds, or that any such review will, in fact, significantly streamline this litigation.

Moreover, it is unlikely that resolution of the IPR's will completely resolve issues of invalidity. The IPR's will be limited to patents and printed publications that allegedly anticipate and/or render obvious the patented inventions. *Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.,* No. 6:12-CV-1727-ORL-37, 2013 WL 1969247, at *3 (M.D. Fla. May 13, 2013) ("Even if the USPTO decides to initiate a review, the law makes clear that the review itself is limited to anticipation and obviousness, which are only two of the many, many defenses to patent infringement."); *Davol, Inc. v. Atrium Med. Corp.,* No. CIV.A. 12-958-GMS, 2013 WL 3013343, at *6 (D. Del. June 17, 2013). Defendants' invalidity contentions contain additional allegations related to 35 U.S.C. § 101 and 112 and non-patent/publication references, none of which will be addressed in the IPR. Denying the requested stay will result in all invalidity issues being resolved in a single forum.

Even if the PTAB institutes some or all of the IPR proceedings, such proceedings will not significantly streamline Netlist's infringement claims. Typically, the benefit of a stay pending IPR is premised upon the fact that the petitioner is estopped from re-litigating in the district court issues that were, or reasonably could have been, raised during the IPR. *See* 35 U.S.C. § 315(e)(2). This estoppel restricts the IPR petitioner and the real party in interest or privy of the petitioner. As noted above, however, Smart Storage and Diablo coordinated their IPR filings so that Smart Storage filed petitions in the five cases in which Diablo was barred from filing, and Diablo filed petitions in the remaining two.[7] Because Diablo was not named as a party to Smart Storage's petitions, and *vice versa*, the Defendants will argue that they may not be bound by the statutory estoppel as it relates to the other Defendant's petitions. As such, the IPR currently provides **no** simplification (let alone a significant simplification), as at least one of the Defendants may attempt to re-litigate every single issue and the exact same prior art addressed by the PTAB.[8]

Finally, contrary to Defendants' assertion, staying the litigation is likely to deter settlement negotiations. As mentioned, it is highly unlikely that the IPR will result in the cancellation of all of Netlist's asserted claims. If even a single claim survives, infringement of that claim would entitle Netlist to significant monetary damages and injunctive relief against both Diablo and Smart Storage. Put another way, it is likely that, to receive full compensation, Netlist will need to obtain relief from Smart Storage. Smart Storage is not a party to the trade secret action, so staying the infringement claims will allow Smart Storage to "watch from the sidelines," with little or no incentive to negotiate a potential resolution. The best way to facilitate settlement is to keep the pressure on all parties, including making Diablo and Smart Storage answer for their continued infringement.

---

[7] If discovery shows that Diablo qualifies as the real party in interest in the petitions filed by Smart Storage, the PTAB can deny Smart Storage's petitions for lack of standing.

[8] To prevent multiple bites at the apple, in the event that the Court grants Smart Storage's motion, it should condition the stay on the Defendants' agreement that they will all be estopped from raising arguments that were, or could have been, raised by any of the petitioners. *See, e.g., Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*, No. C-13-4513-RMW, 2014 WL 819277 (N.D. Cal. Feb. 28, 2014) (conditioning stay on non-petitioner agreeing to be estopped); *Pi-Net Int'l, Inc. v. Focus Bus. Bank*, No. C-12-4958-PSG, 2013 WL 4475940, at *5 (N.D. Cal. Aug. 16, 2013) (same).

Because Defendants have failed to provide any evidence that their requests for IPR will significantly simplify the resolution of Netlist's infringement claims, this factor also weighs in favor of denying Defendants' requested stay.

### C. The Pending Action Is Not In Its Infancy

The final factor – the current state of the litigation – also counsels against a stay here. Courts typically grant stays only when the case is "in [its] relatively nascent stages." *Fresenius Med. v. Baxter Int'l, Inc.*, No. C 03-1431, 2007 WL 1655625, at *3 (N.D. Cal. June 7, 2007); *see also Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. C 12-05501 SI, 2014 WL 121640, at *2 (N.D. Cal. Jan. 13, 2014) (finding factor weighed against a stay despite the fact that "there is much more work ahead of the parties," including completion of fact and expert discovery, the filing of dispositive motion and trial).

Netlist first asserted its infringement claims over ten months ago, and since then, the parties have engaged in significant discovery. Both sides have served multiple sets of discovery requests, and have served responses (including supplemental responses) to multiple interrogatories and document requests. To date, the parties have produced well over 100,000 pages in response to those requests. Diablo has also made available for inspection the accused device, and precursors thereto, which, as noted above, ███████████████████████████████████████████████████████████████████████ Netlist has also filed a motion to compel additional discovery, which this Court granted.[9] [Dkt. No. 182.] Based on information produced to date, Netlist has filed detailed infringement contentions, and Defendants have served their invalidity contentions. Netlist is also scheduled to take the depositions of Diablo employees that reside in Canada (and were served via the Hague

---

[9] Defendants should not be entitled to argue that discovery has not significantly advanced given that Defendants have stonewalled efforts by Netlist to obtain discovery that is unquestionably relevant to the infringement issues. Even assuming that Defendants' arguments are correct, this factor is, at best, neutral. *See Software Rights Archive, LLC v. Facebook, Inc.*, No. C-12-3970 RMW, 2013 WL 5225522, at *2 (N.D. Cal. Sept. 17, 2013) (factor neutral where significant resources had been devoted to discovery, but discovery was not near completion, claim construction had not commenced, dispositive motions were months away and no trial date was set). Given that the other two factors – including particularly the undue prejudice to Netlist – weigh heavily against a stay, this Court should deny Defendants' motion.

1  Convention) in August. Such depositions will undoubtedly provide additional information
2  regarding Netlist's infringement claims. Moreover, the parties have exchanged their proposed
3  claim terms to be construed and are set to exchange preliminary constructions and evidence next
4  week. Simply put, this case has proceeded well beyond its "nascent" stages, and the parties have
5  already invested considerable resources, time, and money in this litigation.

In addition, when analyzing this factor, the Court should compare the stage of the litigation against that of the PTO review. *See, e.g., Nippon Steel & Sumito Metal Corp. v. POSCO*, No. CIV.A. 12-2429 DMC, 2013 WL 1867042 (D.N.J. May 2, 2013)); *Juxtacomm-Texas Software, LLC v. Lanier Parking Sys. of Virginia, Inc.*, No. 3:11-CV-299, 2011 WL 3322554, at *2 (E.D. Va. Aug. 2, 2011) (holding that "the proper inquiry considers the stage of the litigation in comparison to the stage of the PTO examination.") *citing MercExchange, LLC v. eBay Inc.*, 500 F. Supp.2d 556, 565 (E.D. Va. 2007); *Cooper Notification, Inc. v. Twitter, Inc.*, No. CIV. 09-865-LPS, 2010 WL 5149351, at *3 (D. Del. Dec. 13, 2010) ("Turning to the status of the litigation, this case is still at a relatively early point, but so, too, is the reexamination. This conclusion is all the more compelling, in the Court's view, given the early stage of the reexamination."). As noted, the IPR petitions were just recently filed, and it will likely be about six months before the PTAB even issues a decision whether to institute any of these proceedings. By the time that the PTAB institutes the IPR proceedings – assuming that it decides to do so – fact discovery and the claim construction process (including briefing, tutorial and hearing) would be substantially completed.

This factor, therefore, weighs against a stay.

### III. CONCLUSION

For the foregoing reasons, Netlist respectfully requests that this Court deny Defendants' motion to stay Netlist's patent infringement claims.

**McANDREWS, HELD & MALLOY, LTD.**

Dated: July 10, 2014

/s/ Gregory C. Schodde
THOMAS J. WIMBISCUS
GREGORY C. SCHODDE
RONALD H. SPUHLER
WAYNE H. BRADLEY

**BARTKO, ZANKEL, BUNZEL & MILLER**
BENJAMIN K. RILEY
ROBERT N. BUNZEL
W. PAUL SCHUCK
SONY B. BARARI
SIMON R. GOODFELLOW

**DLA PIPER LLP (US)**
SEAN C. CUNNINGHAM

Attorneys for Defendant NETLIST, INC.