Gregory L. Lippetz (State Bar No. 154228)
glippetz@JonesDay.com
Kathleen D. Lynott (State Bar No. 268387)
kdlynott@JonesDay.com
JONES DAY
Silicon Valley Office
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: 650.739.3939
Facsimile: 650.739.3900

Steven J. Corr (State Bar No. 216243)
sjcorr@JonesDay.com
JONES DAY
555 South Flower Street
Los Angeles, CA 90071
Telephone: 1.213.243.2327
Facsimile: 1.213.243.2539

Attorneys for Defendant
SMART STORAGE SYSTEMS, INC.

WILLIAM F. ABRAMS (SBN 88805)
wabrams@steptoe.com
SANJEET K. DUTTA (SBN 203463)
sdutta@steptoe.com
STEPTOE & JOHNSON LLP
1001 Page Mill Road, Building 4, Suite 150
Palo Alto, CA 94304
Telephone: (650) 687–9500
Facsimile: (202) 687–9499

DOUGLAS R. PETERSON (SBN 215949)
dpeterson@steptoe.com
STEPTOE & JOHNSON LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA 90067
Telephone: (310) 734 3269
Facsimile: (310) 734 3300

Attorneys for Defendant
DIABLO TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| NETLIST, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SMART STORAGE SYSTEMS, INC., AND DIABLO TECHNOLOGIES, INC.,<br><br>Defendants. | Case No. 4:13-cv-05889-YGR<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY PENDING *INTER PARTES* REVIEW AT THE U.S. PATENT & TRADEMARK OFFICE**<br><br>**JURY TRIAL DEMANDED**<br><br>Judge: Hon. Yvonne G. Rogers<br>Trial Date: None Set<br>Date: August 5, 2014<br>Hearing time: 2:00 p.m. |

## INTRODUCTION

A stay should be granted in this case because (1) Netlist has wholly failed to demonstrate that a stay will cause Netlist any undue prejudice or tactical disadvantage, (2) the IPR proceedings for all seven of the asserted patents are highly likely to be instituted, and some or all of the asserted claims are highly likely to be cancelled or modified, which will materially simplify this case, and (3) this case is at an early stage, with no claim construction hearing or order, no fact or expert depositions having occurred, and no trial date set. As discussed below, and for all of the reasons set forth in Smart Storage's Opening Brief and Diablo's Joinder, this case should be stayed pending the *inter partes* review of the patents-in-suit.

## ARGUMENT

### I. Netlist Will Not Suffer Undue Prejudice Or Tactical Disadvantage

Netlist will not be prejudiced by a stay of this case. There is no evidence that Netlist competes with Defendants in a particular market or that Netlist will suffer any loss of market share, customer goodwill, etc., should this case be stayed pending *inter partes* review of the patents-in-suit. Netlist's assertions of alleged harm are undercut by Netlist's failure to move for a preliminary injunction. Additionally, and contrary to Netlist's unsupported statements, Defendants have worked diligently in filing the IPR petitions and this motion.

**Netlist's failure to prove harm.** In support of its claims of undue prejudice, Netlist alleges that it will suffer from competitive disadvantage if this case is stayed. *See* Netlist's Opposition ("Opp.") at 4-6. Its submission, however, consists solely of attorney argument and unsubstantiated statements. If Netlist relies on "irreparable harm" (Opp. at 6) as its basis for undue prejudice, it must set forth evidence, not conjecture, of specific harm it will suffer that cannot be compensated for after the stay is lifted. *See Ohio Willow Wood Co. v. Alps South, LLC*, No. 2:13-CV-860, 2014 U.S. Dist. LEXIS 63735, at *7 (S.D. Ohio May 8, 2014) ("While OWW has claimed that a stay would result in irreparable harm to its interests, it has offered no evidence to demonstrate why money damages would not be an adequate remedy for any ongoing harm."). *See also Mesde v. Am. Brokers Conduit*, No. C 09-02418 JF (RS), 2009 U.S. Dist. LEXIS 59632, at *5 (N.D. Cal. June 30, 2009) (ruling on motion for preliminary injunction and finding that a

party asserting "irreparable harm" must "demonstrate immediate threatened injury"). The product at issue, ULLtraDIMM, is a flash storage device that is an improvement on a traditional DIMM memory stick, not a hybrid memory module as alleged by Netlist. Corr Decl., Ex. R. Although Netlist states on page 2 of its Opposition that "[t]here is no dispute that the parties to this action offer similar products that compete in the same developing, hybrid memory market," Defendants do, in fact, dispute that the ULLtraDIMM competes with Netlist's products and dispute any claim that ULLtraDIMM is part of the "hybrid" market identified by Netlist. Netlist has attempted to narrow the appeal and customer base for the ULLtraDIMM product by inventing a "hybrid memory devices" market that it allegedly dominates (*see* Opp. at 4), but Netlist cannot define the exact parameters of this arbitrarily created market. Netlist does not explain whether this market has a particular customer base, nor which companies are in this market or whether Smart Storage or Diablo currently have a share. In fact, in its March 2014 SEC filing, Netlist listed as its competitors only "SK hynix [*sic*], Samsung, and Micron" as well as "STEC, SMART Modular Technologies, Inc., Agigatech, and Viking Interworks," and made no mention of Diablo or Smart Storage. Corr Decl., Ex. S, at 6. Further, Netlist offers no support for its allegation that the market is new or "dynamic." *See id.* In short, Netlist makes broad claims of competitive harm but does not substantiate any of its vague assertions about its current market share, thus failing to set forth any proof that its market share will be affected by a stay. *See Caldwell Mfg. Co. North Am., LLC v. Amesbury Group, Inc.*, No. 11-cv-6183T, 2011 U.S. Dist. LEXIS 89447, at *9 (W.D.N.Y. Aug. 11, 2011) (noting that a party claiming irreparable harm must prove it "with evidence, and may not rely on vague claims of potential harm").

On this record, Netlist has not shown that it will suffer any irreparable harm, nor any other undue prejudice, during the stay. *See Virtualagility, Inc. v. Salesforce.com, Inc.*, No. 2014-1232, 2014 U.S. App. LEXIS 13015, at *30 (Fed. Cir. July 10, 2014) (holding district court erred in finding that undue prejudice weighed heavily against stay where plaintiff offered "no evidence . . . that the two companies ever competed for the same customer or contact").

Further, Netlist's argument that the parties' products are in competition because Netlist's HyperCloud module uses a computer chip that is found in a proof-of-concept device is a red

| | |
|---|---|
| 1 | herring.  First, use of similar computer chips does not, by itself, prove that the two products |
| 2 | incorporating those chips are competitive.  Second, Diablo had express permission to use the chip |
| 3 | in question.  The chip shown in Netlist's Exhibit F was configured to use the Diablo Standard |
| 4 | Register.  Pursuant to the Development and Supply Agreement between Netlist and Diablo, |
| 5 | Diablo is explicitly allowed "to make, have made, use, design, manufacture, distribute and sell to |
| 6 | any third party the Diablo Standard Register." (*See* ECF No. 146–2, related Case No. 4:13-CV- |
| 7 | 05962-YGR (Ex. 2 to Netlist's Second Amended Complaint).)  Nothing in the Development and |
| 8 | Supply Agreement requires Diablo to obtain Netlist's permission to use these chips as the Diablo |
| 9 | Standard Register.  The MegaDIMM proof-of-concept device shown in Netlist's Exhibit F was |
| 10 | never sold and never in production, and thus, was never a competing product. |
| 11 |     Netlist also fails to refute the reality that the progression of the Trade Secret Case will |
| 12 | combat any potential harm from a stay.  (*See* ECF No. 218 at 9-10 (explaining that the ongoing |
| 13 | Trade Secret Case will provide Netlist a forum to litigate whether the accused product in this case |
| 14 | contains Netlist's confidential information).)  Netlist argues that the continued progression of the |
| 15 | Trade Secret Case will not "fully compensate" it for the alleged infringement. *See* Opp. at 7. |
| 16 | Defendants are not moving for dismissal nor suggesting that the Trade Secret Case would |
| 17 | compensate Netlist for the alleged infringement.  The Trade Secret Case, however, does provide |
| 18 | Netlist with the ability to pursue its claims of misuse of intellectual property in the one product at |
| 19 | issue in this case, the ULLtraDIMM, and thus lessens any supposed prejudice Netlist could suffer |
| 20 | from a stay.  Indeed, Netlist seeks a preliminary and permanent injunction in its second amended |
| 21 | complaint for the Trade Secret Case (ECF No. 146, 4:13-CV-05962-YGR), including an order |
| 22 | prohibiting the sale of ULLtraDIMM.  Thus, Netlist's already threadbare arguments about |
| 23 | competitive disadvantage should be rejected. |
| 24 | **Netlist's failure to seek injunctive relief.**  Even if Netlist had attempted to offer factual |
| 25 | evidence to support its claims of competitive harm during the stay, such claims would ring hollow |
| 26 | as Netlist has never sought injunctive relief here.  Netlist listed a preliminary injunction in its |
| 27 | prayer for relief in the complaint, but has not sought an injunction since filing this case.  This |
| 28 | militates against a finding of undue prejudice. *See Virtualagility*, U.S. App. LEXIS 13015, at *32 |

(noting that, although the plaintiff had "rational reasons" for not seeking a preliminary injunction, "the fact that it was not worth the expense to ask for this remedy contradicts [plaintiff]'s assertion that it needs injunctive relief as soon as possible"); *see also Ignite USA, LLC v. Pacific Market Int'l, LLC*, No. 14 C 856, 2014 U.S. Dist. LEXIS 73412, at *8-9 (E.D. Ill. May 29, 2014) (holding that patentee's "own delay" argues against finding of undue prejudice and finding that failure to seek a preliminary injunction "further supports the absence of [plaintiff's] concern regarding a pressing threat . . .").

Netlist provides no reason for its failure to seek an injunction and instead offers one case where a stay was denied despite the patentee's failure to seek an injunction. *See* Opp. at 8. Netlist is correct that parties may "decide to forego seeking preliminary injunction for a variety of reasons" (*id.*), but that party cannot then feign panic at the possibility of continued sales of a defendant's product during a stay. Indeed, Netlist's decision to not seek injunctive relief directly contradicts its claim that "[a]llowing Defendants to continue to market its infringing product for even the next 18-24 months . . . will cause Netlist significant harm in the marketplace." Opp. at 5. Whether or not a stay is granted, absent an injunction, there is nothing to prevent ULLtraDIMM from going to market. And because Netlist will be entitled to damages if it is successful in proving infringement, no prejudice will result from a stay. Netlist wholly fails to explain why any alleged harm it will suffer during the stay "cannot adequately be compensated by money damages after the fact." Opp. at 1. The very nature of a stay—that relief may be delayed—does not provide evidence of harm or undue prejudice.

**Smart Storage was diligent in filing the IPR petitions and this motion.** Defendants waited until it was practical to expend time and money to pursue proceedings before the PTAB. As explained in Defendants' opening brief, once the patents and claims at issue in this case were finalized on May 20, 2014, Defendants worked diligently on the IPR petitions. Filing for IPR proceedings is a complicated process that involved obtaining experts, engaging in prior art searches, and drafting sixty-page petitions; Defendants did not delay or engaged in gamesmanship (*see* Opp. at 7). Smart Storage and Diablo merely seek to avail themselves of the procedure provided by statute to challenge patent validity. Nor was there delay in filing this motion; Smart

1   Storage moved to stay this case the day the last IPR petition was filed.  (*See* ECF Nos. 218, 219.)

2   Netlist's argument would provide basis for a patentee who purposely delays the addition
3   of particular patents or claims to claim "gamesmanship" purely because the scope of infringement
4   claims in a case, and the time frame for clarifying that scope, are in the patentee's hands.  Such an
5   argument cannot stand, particularly in the face of the statutory requirements.  The statute allows
6   IPR petitions to be filed for one year following service of a complaint for infringement of the
7   challenged patent.  *See* 35 U.S.C. § 315(b).  Netlist improperly asks this Court to ignore the
8   statutory standard and impose a stricter obligation on Defendants.

9   Netlist's allegations of gamesmanship are also contradictory given Netlist's argument that
10  this motion is premature.  *See* Opp. at 9.  This motion is not premature: this court and other courts
11  in the Ninth Circuit have granted stays before petitions for IPR or reexamination were granted.
12  *See Evolutionary Intelligence LLC v. Yelp Inc*, No. C-13-03587 DMR, 2013 U.S. Dist. Lexis
13  178547, at *21-22 (N.D. Cal. Dec. 18, 2013) (rejecting argument that motion was premature
14  because IPR petitions had not been granted yet); *Riverbed Tech., Inc. v. Silver Peak Sys.*, No. C
15  13-02980 JSW, 2014 U.S. Dist. LEXIS 59382, at *8 (N.D. Cal. Mar. 14, 2014) ("The fact that the
16  PTAB has not yet determined whether it will grant the requests for IPR does not alter the Court's
17  findings."); *Pragmatus AV, LLC v. Facebook, Inc.*, No. 11–CV–02168–EJD, 2011 WL 4802958,
18  at *2–3 (N.D. Cal. Oct. 11, 2011) (granting motion to stay before PTO had determined whether it
19  would accept reexamination request); *Star Envirotech, Inc. v. Redline Detection*, LLC, No. SACV
20  12-01861 JGB, 2013 WL 1716068, at *2 (C.D. Cal. Apr. 3, 2013) (rejecting argument that
21  motion to stay prior to IPR petition being granted was premature and holding that stay would
22  simplify the case); *Semiconductor Energy Lab. Co., Ltd. v. Chimei Innolux Corp.*, No. SACV 12–
23  21–JST (JRPx), 2012 WL 7170593, at *3 (C.D. Cal. Dec. 19, 2012) ("[I]f the USPTO rejects the
24  *inter partes* request, the stay will be relatively short.  Therefore, this factor weighs in favor of a
25  stay.").  The *Evolutionary* court found that based on the "liberal policy" favoring stays pending
26  post-grant review, "a court can grant a stay even if the Patent Office is still considering whether
27  to grant a party's [ ] request."  *Evolutionary*, 2013 U.S. Dist. Lexis 178547, at *21-22 (citations
28  omitted).  Following this line of authority is particularly justified today, when statistics show that

83% of all IPR petitions are instituted.  (*See* ECF No. 219, Ex. L.)

If the Court waits until the IPRs are instituted to rule on Defendants' motion to stay, which could take up to six months from the petition filing dates, the parties will need to engage in claim construction and the Court will be forced to issue a claim construction order for claims that are statistically likely to be modified or cancelled during the IPRs.  Congress expressly allowed for petitions to stay pending review proceedings under the America Invents Act, presumably to avoid such judicial inefficiencies.  *See* AIA § 18(b)(1).

If Smart Storage waited to file this motion until three to six months from now, when the petitions are granted, the Court's time and resources litigating this case in the interim would have been wasted and Netlist would likely accuse Smart Storage of filing the motion for improper reasons, arguing that the delay between moving to stay and filing the IPR petitions was tactical.

**Diablo was diligent in filing its IPR petitions.**  It was not until January 21, 2014, that Netlist first asserted the '150 and '536 patents in its Disclosure of Asserted Claims and Infringement Contentions.  (*See* ECF No. 219, Ex. I.)  Netlist added the '150 and '536 patents in its second amended complaint (ECF No. 181) on April 7, 2014.  Diablo submitted its petitions for IPR of the '150 and '536 patents, challenging all of Netlist's asserted claims, by June 22, 2014.  Diablo thus diligently filed IPR petitions after Netlist added these patents to this case.

## II. The *Inter Partes* Reviews Will Simplify This Case

Defendants have met their burden to show that this case will be simplified by a stay pending *inter partes* review.  A moving party does not have to *prove* that a stay will simplify the case, only that it is likely. *See Virtualagility*, 2014 U.S. App. LEXIS 13015, at *17-18 (finding that a PTO post-grant proceeding, which might invalidate all patent claims, could result in the "ultimate simplification").  As noted in Smart Storage's opening brief, the voluminous IPR petitions can be provided to the Court should the Court wish to view them; Defendants did not submit them with the motion to avoid burdening the Court.  Netlist principally relies on an inapposite, nonbinding case from the Eastern District of Texas—*Roy-G-Biv*—to support its claim that Defendants have not provided sufficient information to show simplification. *See* Opp. at 9.  However, in the recent *Virtualagility* decision, the Federal Circuit expressly held that the District

- 6 -

REPLY ISO MOTION TO STAY
Case No. 4:13-cv-05889-YGR

1 Court must accept as correct the PTO's decision to institute post-grant review—*Virtualagility*,
2 2014 U.S. App. LEXIS 13015, at *16-17 (district court reviewing merits of PTAB review would
3 "undermine the purpose of the stay")—including the PTO's corresponding determination that
4 patent claims will likely be held invalid in post-grant review. *Id.* at *19. Thus, the Federal
5 Circuit has rejected Netlist's argument (and related Eastern District of Texas precedent) that
6 Defendants must independently prove the merits of their IPR petition, or submit extensive
7 evidence in that regard, in order to procure a stay.

The simplification that often results from post-grant review is not any less likely here simply because seven patents are being challenged rather than one. *See* Opp. at 8-9. Netlist should not be allowed to rely on its decision to assert multiple invalid patents against Defendants as a reason to deny the stay. Netlist's argument that the outcome of IPR proceedings on these seven patents is currently unknown also fails. *See id.* at 9. This is true in every case and yet, this court and others often stay litigation pending completion of IPR proceedings. (*See* ECF No. 219, Ex. P.) Though the future is unknown, the *likelihood* of simplification is what courts consider and here, it weighs in favor of granting the stay.

In addition, it is not only appropriate, but in fact quite common, that defendants' invalidity contentions are broader than the IPR petitions. As such, this fact does not weigh against a finding of simplification. *See* Opp. at 10. If the patents are found invalid by the PTAB, the fact that Defendants had additional invalidity arguments to assert at trial is irrelevant. On the other hand, if the patents are found valid, each Defendant will be estopped from asserting invalidity arguments that could have been raised in the IPR proceedings it initiated. In either case, this litigation will be simplified. Netlist's specific argument regarding non-patent/non-publication references must also be rejected. *See* Opp. at 10. The statute prohibits asserting such references (35 U.S.C. § 311(b)) and yet contemplates stays of litigation. Thus, the drafters allowed for the possibility of staying a case despite the IPR petition being narrower than a petitioner's invalidity contentions. *See Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*, No. C-13-4513-RMW, 2014 U.S. Dist. LEXIS 26382, at *12 (N.D. Cal. Feb. 28, 2014) ("Evolutionary Intelligence is correct that IPR proceedings are limited to just patents or printed publications under 35 U.S.C. §§

102 and 103, but these are often major issues in patent litigation. Further, this limitation of IPR proceedings has not stopped this court from granting a motion to stay in the past.").

Moreover, Netlist's argument that Diablo failed to provide evidence that the IPR petition will streamline this case is misplaced. *See* Opp. at 9-10. As stated above, a moving party does not have to prove a stay will simplify a case, only that it is likely. Diablo provided examples in its Joinder (ECF No. 220) of claims of related patents that the PTO rejected during reexamination proceedings to demonstrate that limitations of currently asserted claims have already been found in the prior art. Netlist ignores another example Diablo provided in its Joinder, demonstrating that all limitations of independent claim 15 of the '150 patent were found in another Netlist patent that was rejected during a reexamination proceeding. The examples provided in Diablo's Joinder demonstrate that a stay will likely simplify this case because the IPR petitions for the '150 and '536 patents will likely be granted. *See Virtualagility*, 2014 U.S. App. LEXIS 13015, at *17-18 ("CBM review could dispose of the entire litigation: the ultimate simplification of issues.").

Finally, this case will be simplified by a stay despite the fact that two of the IPR petitions were filed by Defendant Diablo and five were filed by Smart Storage. Defendants are not required to agree to be estopped for the benefits of a stay to be realized. *See Evolutionary Intelligence, LLC v. Facebook, Inc.*, No. C 13-4202 SI, 2014 U.S. Dist. LEXIS 9149, at *8 (N.D. Cal. Jan. 23, 2014) ("[E]ven if Groupon is not bound by the petitions, simplification of the issues could still occur in the event the PTO affirms the claims . . . ."). If the Court requires that the non-petitioning parties have some restrictions placed upon them to avoid re-litigating issues decided by the PTO, the appropriate restrictions would be limited to re-arguing grounds actually considered and rejected by the PTO. *See Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.,* No. 12-cv-1107(GMS), 2014 U.S. Dist. LEXIS 47430, at *21-22 (D. Del. Apr. 7, 2014) (imposing limited estoppel on non-petitioning defendant to prevent it from asserting only those references used by the PTAB in finding anticipation or obviousness); *e-Watch Inc. v. Avigilon Corp.*, No. H-13-0347, 2013 U.S. Dist. LEXIS 176807, at *6-7 (S.D. Tex. Dec. 17, 2013) (limiting non-petitioner to "estoppel precluding its assertion of any invalidity arguments based on prior art publication(s) on which the PTAB bases its Final Written Decision").

## III. This Case Is At An Early Stage

As explained in Smart Storage's opening brief, this case is at an early stage. The parties have not completed discovery, no depositions have been taken, no claim construction briefs have been served, no claim construction order has issued, no dispositive motions have been filed, and no trial date has been set. This is not a case where litigation has progressed to a point such that it would be inefficient to grant a stay nor where it is clear that a party is moving to stay late in a case to avoid a summary judgment ruling or put off trial.

Given these irrefutable facts, Netlist's Opposition can only point to irrelevant dates in its attempt to show that the case is not at an early stage. *See* Opp. at 2 ("[the] claims have been pending for almost a year"), 12 ("Netlist first asserted its infringement claims over ten months ago."). This is, at best, relying on a technicality and, at worst, a blatant attempt to mislead the Court. While this case was indeed filed in July of 2013, Netlist did not make clear what particular patents and claims it was asserting until May 20, 2014. (*See* ECF No. 218 at 3, 8; ECF No. 219, Ex. J.) And while Netlist declares that thousands of documents have been produced (*see* Opp. at 12), the overwhelming majority Netlist's produced documents are merely file wrappers and other publicly available information. Discovery of the underlying technical information related to the patents and accused products, as well as documents relating to damages, consumer demand and other related discovery, has thus not yet begun in earnest.

Further, Netlist failed to inform the Court that the scheduled depositions of two third parties—former Diablo employees (*see* Opp. at 12)—are being taken for the Trade Secret Case, not the patent case. Netlist's motion for issuance of letters rogatory was filed in the Trade Secret Case (4:13-CV-05962-YGR) and not the patent case. Corr Decl., Ex. T. Netlist's motion in that case makes clear that these depositions will focus on the deponents' information "relevant to Netlist's trade secret misappropriation claims" and that Netlist is deposing these individuals because they were mentioned in an anonymous letter Netlist received regarding the alleged misappropriation. Corr Decl., Ex. T, at 3. This case is far from completion and no trial date has been set. The Court and the parties will benefit from staying this action and, if necessary, proceeding with a simplified case after the IPR proceedings are completed.

| | | |
|---|---|---|
| Dated: July 17, 2014 | | Respectfully submitted, |
| | | Jones Day |
| | | By: */s/ Steven J. Corr* |
| | |     Steven J. Corr |
| | | Counsel for Defendant |
| | | SMART STORAGE SYSTEMS, INC. |
| Dated: July 17, 2014 | | STEPTOE & JOHNSON LLP |
| | | By: */s/ Sanjeet K. Dutta* |
| | |     Sanjeet K. Dutta |
| | | Attorney for |
| | | DIABLO TECHNOLOGIES, INC. |

SVI-149026v5