# EXHIBIT F

1

```
 1    Pages 1 - 31

 2                      UNITED STATES DISTRICT COURT

 3                    NORTHERN DISTRICT OF CALIFORNIA

 4    BEFORE THE HONORABLE JACQUELINE SCOTT CORLEY, MAGISTRATE JUDGE

 5
      NETLIST, INC.,                    )
 6                                      )
                      Plaintiff,        )
 7                                      )
           v.                           )    NO. 13-cv-05889 YGR
 8                                      )
      SMART MODULAR TECHNOLOGIES,       )
 9    INC., et al.,                     )
                                        )
10                    Defendants.       )
      ------------------------------)
11    and related cross-action.        )
      _____)
12                                          San Francisco, California
                                            Thursday, March 27, 2014
13
              TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING
14                            OF PROCEEDINGS

15    APPEARANCES:

16    For Plaintiff:          McAndrews, Held and Malloy, Ltd.
                              500 West Madison Street, Suite 3400
17                            Chicago, Illinois 60661
                         BY:  GREGORY C. SCHODDE, ESQ.
18
                              Bartko, Zankel, Bunzel & Miller
19                            One Embarcadero Center, Suite 800
                              San Francisco, California  94111
20                       BY:  BENJAMIN K. RILEY, ESQ.

21

22           (Appearances continued on following page.)

23

24    Transcribed by:         Leo T. Mankiewicz, Transcriber
                              leomank@gmail.com
25                            (415) 722-7045
```

SHEET 2  PAGE 2

2

```
 1    APPEARANCES:  (cont.)
 2
 3    For Defendant Smart Modular Technologies:
 4                      Jones Day
                        555 South Flower Street, 50th floor
                        Los Angeles, California  90071
 5              BY:  STEVEN JOHN CORR, ESQ.
 6
 7    For Defendant Diablo Technologies, Inc.:
 8                      Steptoe & Johnson, LLP
                        1001 Page Mill Road, Building 4, Suite 150
                        Redwood Shores, California  94065
 9              BY:  WILLIAM F. ABRAMS, ESQ.
                     DOUGLAS R. PETERSON, ESQ.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

PAGE 3

3

1  Wednesday, December 18, 2013
2            ---o0o---
3  (Transcriber's Note:  Because counsel in this transcript failed
4    to identify themselves before speaking during the colloquy,
5       speaker attributions are based on BEST GUESS.)
6                    4:01 P.M.
7        P R O C E E D I N G S
8        THE CLERK:  Civil action C 13-5889, Netlist, Inc.
9  versus Smart Modular Technologies.
10       MR. SCHODDE:  Good morning, your Honor.  Greg
11 Schodde for Netlist.
12       THE COURT:  Good morning.
13       MR. RILEY:  Good morning, your Honor.  I'm Ben Riley
14 for Netlist.
15       THE COURT:  Good morning, Mr. Riley.
16       MR. CORR:  Good morning, your Honor, Steve Corr for
17 Smart Storage.
18       THE COURT:  Good morning, Mr. Corr.
19       MR. ABRAMS:  Good morning, your Honor.  William
20 Abrams and Douglas Peterson of Steptoe & Johnson for Diablo.
21       THE COURT:  Good morning.  All right, so this is --
22 well, we have Diablo's motion to strike infringement
23 contentions, plaintiff's motion for discovery.  It's sort of,
24 if I don't strike the infringement contentions then you get the
25 discovery.  So that's really the thing.

PAGE 4

4

1        And I guess the first question I would have is, it
2  seems to me it's undisputed that the plaintiffs have reviewed
3  everything that's available.  So this isn't a case -- sometimes
4  you have cases where a party actually has the product and they
5  don't want to spend the money to reverse engineer.  That's not
6  this case.
7        MR. ABRAMS:  That's not this case, because there's
8  no product.
9        THE COURT:  Right.
10       MR. ABRAMS:  The cake is not out of the oven.  They
11 don't know if it's even in the oven, they don't know what the
12 chef is doing.  They are relying on things which may or may not
13 have been in the media, but there is nothing to provide them.
14 There is a product that is a prototype under development.
15       And so to use the cake and the oven analysis,
16 there's no cake that has come out of the oven that is being
17 sold or offered for sale --
18       THE COURT:  Well --
19       MR. ABRAMS:  -- to the public.
20       THE COURT:  Well, if it isn't being offered for
21 sale, then they can't state a claim under section C71.
22       MR. ABRAMS:  That's another issue.
23       THE COURT:  Well, so why haven't you moved to
24 dismiss on that ground?
25       MR. ABRAMS:  Well, we may be moving on that, but

PAGE 5

5

1  right now before us is their request for discovery and our
2  motion to strike their infringement contentions, because they
3  cannot have infringement contentions based upon what's
4  essentially rumor and speculation.
5        THE COURT:  But says who?  I mean, that's
6  actually -- what you seem to be saying is under the Local
7  Rule 3-1, if you don't have the products, then you can't bring
8  your case.
9        MR. ABRAMS:  That's correct, and so --
10       THE COURT:  But that's not what the local rule says
11 and it's not what the statute says, right?  Because the statute
12 says you can bring a claim based on an offer for sale.  You may
13 not yet have the product, and we can't certainly enact a local
14 rule which cuts back on what Congress had said a claim is.
15       MR. ABRAMS:  Well, if I were to say, just
16 theoretically and hypothetical, I'm going to have a product
17 that is going to infringe on your patents, I don't have it yet
18 but I intend to have it out there, and I'm going to work on it
19 and I'm going to sell it and I'm going to sell it to the world
20 just as soon as I'm done, but it's not ready, I don't think
21 that's an offer for sale, and they would have a hard time on
22 infringement contentions.
23       So our point is they have submitted to the Court
24 infringement contentions which are defective, because they're
25 based on speculation.

SHEET 3   PAGE 6

6

1    THE COURT:  No, see, that's -- I don't know if
2  they're defective, actually.  If they truly are defective, you
3  could do, like in that Hoffman case they said you could do, you
4  could do an NDA, you could show them, or you could show them
5  that you have nothing, and then if they were to proceed with
6  the case, then you'd have a great exceptional fees argument or
7  a great Rule 11 case.
8    They have set forth what their infringement
9  contentions are.  You're essentially saying -- you're not even
10  necessarily saying they're wrong.
11    MR. ABRAMS:  Well, no, we are saying that, because
12  we're saying that even if there were a product on the market,
13  they failed.  First of all, they haven't come to us and said,
14  give us an NDA and let's see what is cooking in the oven.
15    THE COURT:  I thought they've asked for a sample.
16    MR. ABRAMS:  And we don't have a sample because we
17  don't have a product.  It's speculative.  There's a prototype,
18  there is not a -- and it's under development.  It could change,
19  it is changing.  It is not on the market.
20    But with regard to their picks, your Honor, they are
21  not sufficient.  The Bender case is pretty clear.  Judge
22  Illston said that when you have an integrated circuit case, a
23  chip case like this case, you've got to map out where on the
24  chip each element of the -- each asserted claim is found, and
25  they haven't done it.

PAGE 7

7

1    What we have here is we have some photographs which
2  don't explain anything.  They're photographs of prototypes.  We
3  have over 70 statements that reasonable discovery is likely to
4  establish their contentions.
5    Well, it's like the case before Judge Corley, the
6  Fuisz case.
7    THE COURT:  No, no, I'm Judge Corley.  I don't think
8  that it's that one.
9    MR. ABRAMS:  I'm sorry, Judge Rogers, pardon me.
10  I think you may have been assigned that case.  But that's where
11  there was information and belief saying that all the
12  contentions would be supported on information and belief.
13    THE COURT:  But that's the case -- okay, that case,
14  we all know about that case, and that's the case in which the
15  plaintiff, or -- the defendants, I guess, are representing
16  themselves, and just last week actually just handed over their
17  patent, and they attached the infringement contentions there.
18  Very different from this case.  So I don't think that that case
19  I find to be that persuasive in this circumstance.
20    What I want look at is your reply, on page 1.  You
21  say -- you cite the Judge Grewal in Creagri, which is what the
22  plaintiff cited, and you say that Netlist's own case law makes
23  clear that the 3-1 obligations are not absolved by the fact
24  it's not commercially available.  It states that, "a patentee
25  must nevertheless disclose the elements in each accused

PAGE 8

8

1  instrumentality."
2    But what does Creagri state at the beginning of that
3  sentence that you quoted there?
4    MR. ABRAMS:  Well, let me get it, your Honor, I'm
5  sorry.
6    THE COURT:  Well, I'll tell you what it says.  It
7  says, "to the extent appropriate information is available to
8  it."  It actually says the exact opposite of what you quote it
9  for.  If you quoted the entire sentence, what Judge Grewal
10  said, he says, to the extent appropriate information is
11  available to it, you must nevertheless disclose the elements.
12  So I actually think the case stands exactly for the proposition
13  that they cited it.
14    MR. ABRAMS:  Well, but they weren't guessing in that
15  case, and in our case they are guessing.  They say over 70
16  times that reasonable discovery is likely to show whatever
17  they're asserting, but that's speculative.  That's not good
18  enough.  Judge Illston rejected that in the Bender case very
19  clearly, and --
20    THE COURT:  What about SAGE and Judge Ryu?
21    MR. ABRAMS:  In SAGE and those cases, the issue
22  there was that there were products on the market that they
23  could not obtain.  They were already on the market.  They were
24  either too expensive, too unwieldy to get, but there was
25  abundant public statements that demonstrated how those products

PAGE 9

9

1  work.  You could go to the web.  The products were already out
2  on the market.  The manufacturer, the accused infringer, had
3  made statements; they said how they operated, here is the
4  manual, here is background on them, and here we don't have that
5  because the product's not on the market.
6    THE COURT:  But see, I guess I don't understand it.
7  It seems to me that it's just -- you're arguing a different
8  motion.  You're arguing a motion that they can't state a claim,
9  or maybe it's a summary judgment motion because they've alleged
10  something, but that's really -- and maybe that's what you
11  should do, because I don't think you want to bring an
12  infringement case and spend all that money on a case that
13  you're then going to lose and then likely have to pay their
14  fees, or the Supreme Court actually is quite likely going to
15  make it more likely that you might have to pay their fees, but
16  that seems to be what your argument is.
17    MR. ABRAMS:  And we're going to get there, your
18  Honor, but we're not -- this is part of a --
19    THE COURT:  You're trying to get there now, because
20  you know that if I strike their infringement contentions, they
21  can't amend it because you say the product's not there.  So
22  you're actually bringing your motion for summary judgment as a
23  discovery motion on the 3-1.  That's what it is.
24    MR. ABRAMS:  Well, it's because of the context, your
25  Honor.  You're right, we're headed exactly to what you're

SHEET 4   PAGE 10

10

1  getting at, your Honor.  However, because of the context of the
2  case, we have to deal with their motion to compel, and we're
3  saying, we don't have a product to produce to you, we can't
4  produce these things, because it is not a product yet.  It is
5  under development.
6         So therefore, we're opposing the motion to compel,
7  and at the same time we're asking the Court to strike the
8  infringement contentions as a procedural aspect of the case,
9  because they are defective under the case law.
10        We will get to where your Honor is suggesting we're
11 going --
12        THE COURT:  No, you won't get there, because if
13 I strike it, you don't get there, case over, because they can't
14 amend --
15        MR. ABRAMS:  That is the next step.  We would say --
16        THE COURT:  Right, so you'd never get to that
17 summary... I mean, I guess I don't -- see, I think the
18 infringement contentions are there.  They're just contentions.
19 They're just their assertion as to where they believe each
20 element will be found, and they could be wrong, but you don't
21 strike them because they're wrong.  You then win the case
22 because they're wrong.
23        MR. ABRAMS:  You strike them because they are
24 inadequate, and the case law is pretty certain that you just
25 can't speculate on them.

PAGE 11

11

1         So Judge Illston, getting back to Bender, was
2  disturbed because the infringement contentions failed, in a
3  chip case, to match each element to where on the chip the
4  infringement was, and she said, I'm not going to put the
5  defendants to the burden of coming forward and making their own
6  discovery and meeting their obligations when you are just
7  basing your infringement contentions on mere speculation.  It
8  says, that's not what this is for.
9         This is a form of discovery to put people on notice,
10 and there you have a real product, and here we don't have a
11 real product, and the reason why we are here to strike the
12 infringement contentions is, even before we get to the other
13 things, we'd have to participate in discovery.  We have a
14 motion to compel --
15        THE COURT:  Why?  I mean, why can't you go and move
16 for summary judgment now?  Why can't you go and say -- you have
17 your declaration and you say, you allow them to depose that
18 person, you create a bit of time in there, and have it
19 adjudicated?
20        MR. ABRAMS:  These are not mutually exclusive.  We
21 can certainly do that, but --
22        THE COURT:  No, they are mutually exclusive, because
23 what you're asking me to do is grant summary judgment.  I mean,
24 that's the reality.  I mean, it would have to be an R and R as
25 well, because it's dispositive.  You're saying to me because we

PAGE 12

12

1  don't have a product, they can't state a claim.  That's, in
2  effect, what you're saying.
3         MR. ABRAMS:  That's where you get to ultimately, but
4  on this -- on this particular procedural aspect of the case.
5  We have to deal with this procedural aspect of the case if, for
6  no other reason, they have a motion to compel that we have to
7  respond to, and so we've responded to it, as you can see in our
8  opposition, in saying we need to strike the infringement
9  contentions by the same token, because otherwise, it starts a
10 chain of things we've got to respond to.  We've got to provide
11 our own invalidity contentions, we have to do other things.
12        So yes, please strike the infringement contentions,
13 and then we'll go about our business and get to the destination
14 that you've just described, but they're not mutually exclusive,
15 and it's part of the process.
16        THE COURT:  What about this, that -- I mean, let me
17 ask you this:  I mean, if the product hasn't been offered for
18 sale, then why are we even here?  Why aren't the parties
19 dealing with that first?
20        MR. SCHODDE:  I've been waiting for my turn, and
21 I think my colleague may be a little behind the times.
22        There certainly was a time when the product was not
23 available on the marketplace, that no one could by it.  That
24 time has passed.  This product is thoroughly out of the oven.
25 The information we have is it currently is being sold, and it's

PAGE 13

13

1  out there.  We've been trying to get one, we want to get one so
2  we can amend our contention.  At the time we filed our motion,
3  it wasn't available, but the timer's gone off on the oven.  It
4  was being offered for sale at the time we filed this lawsuit.
5  It is now out of the oven and in the market.
6         And I would note, in response to the motion to
7  compel, I never heard the argument from them that they didn't
8  have a sample because it was not in the oven yet, or that they
9  didn't have customer pacing documents because they didn't know
10 what they were going to say, or that they didn't have documents
11 that describe the product because they didn't know what it was.
12        I never got that in response to my request for that
13 information.  What I got was a motion to strike the contentions
14 because of this sort of a "gotcha."  You know, you don't have a
15 product so you can't, you know, prove you reverse-engineered
16 something you don't have.
17        So I'm in that infinite loop with them on that, but
18 this argument that they're going to move for summary judgment
19 because they're not offering it for sale I think my colleague
20 is just misinformed.  It's on the market now and, you know,
21 they have been offering it before.  They can make that motion
22 if they want, but they're going to lose it.  I think that's why
23 they haven't brought it.  There's no merit to that.  Frankly --
24 I think he's just not current on his information.
25        Certainly, I think your Honor's correct in the

SHEET 5   PAGE 14

14

1 observation that the local rules of discovery device, it
2 doesn't nullify the statutory right to bring a cause of action
3 for infringement on an offer for sale and I don't think it
4 carves out an exception to Rule 11 either.
5       I mean, they accuse us of speculation on a number of
6 points, but if you go look at the charts, we're very careful.
7 When we've got a good basis, we say this limitation's met.  You
8 can look at the picture, you can look at what we know about the
9 device, you can call it informed speculation if you want, but
10 we make the allegation the correct way when we can.
11      For things that are hard to divine, if you don't
12 actually have the darn thing, we point that out and we say,
13 look -- and they prop out the expert when they say, well, they
14 use -- you know, you say it's information and belief for this
15 limitation, but if you go back and look at those charts, that's
16 surrounded by considerable explanation as to why we believe
17 discovery is likely to show that that's going to be true.
18      THE COURT:  Why do you even say that "discovery is
19 likely to show"?  I mean, isn't that always the case?  I mean,
20 that's why you have discovery.  Otherwise, we would just skip
21 discovery and go right to the merits.
22      MR. SCHODDE:  Sure.
23      THE COURT:  I mean, can't we just strike -- and I'm
24 not saying, but can't we just -- aren't your contentions the
25 same whether it has that qualification?

PAGE 15

15

1       MR. SCHODDE:  You could, but I'm conscious of the
2 case law in the district that says, well, if you got the
3 device, you got to reverse-engineer it and so on.  We didn't
4 have the device.  So we want to make it clear that, look, we
5 couldn't reverse-engineer it.  I didn't want to be accused of
6 stating something as a fact when, you know, objectively you
7 couldn't possibly have proved that without having the actual
8 device.
9       And so we called those things out specifically for
10 absence in an abundance of caution on our part, but I think
11 that's what Rule 11's carve-out, reasonable opportunity for
12 discovery, is likely to show that.  I think that's what it's
13 for, and that's why I didn't put it in there.
14      And I don't think local Rule 3-1 erases the
15 availability of that for infringement contentions, particularly
16 infringement contentions on a device that, by their own
17 affidavit, wasn't available when we served the contention, and
18 are the initial infringement contentions in the case.  I don't
19 think there is anything improper about that at all.
20      And as a discovery device, what's I think singularly
21 absent from their briefing is either a well-reasoned argument
22 that they are somehow confused as to, you know, what's being
23 accused, the ULLtraDIMM memory module, or how we're reading the
24 claim.  I think if you go look at those charts objectively, we
25 didn't -- you know, in my ascertaining, I think we did a pretty

PAGE 16

16

1 good job of laying out why we think these claims are infringed,
2 and what we think what the ULLtraDIMM actually does.
3       Now, they can say, oh, you can't -- you didn't have
4 the device, but they don't say, after criticizing us, what it
5 is about the charts that either confuses them or is actually
6 wrong.  They just don't do that.
7       THE COURT:  So the device is on the market now, but
8 you're unable to buy it?
9       MR. SCHODDE:  We're trying to buy it, your Honor,
10 and I'm -- you know, I've got to get back to the client to see
11 if they had any success with that.  I believe they will be able
12 to obtain it in relative -- in the near future, from market
13 sources, but we don't actually have our hands on it yet.
14 That's my most latest information.
15      THE COURT:  Well, I mean, if you're going to get it,
16 you're going to amend your infringement contentions --
17      MR. SCHODDE:  Oh, absolutely.
18      THE COURT:  -- because then you'll have it.  So
19 maybe this is all just --
20      MR. ABRAMS:  Maybe we ought stay everything in the
21 meantime because, you know, this is all prospective.  Their
22 obligations are clear.
23      As Judge Illston said in the Bender case, while
24 plaintiff's statements may not be untrue, they are based on
25 assumptions; the Court will not order defendants to produce

PAGE 17

17

1 proprietary schematics based on assumptions.
2       THE COURT:  She also said cases in which
3 reverse-engineering was not required have tended to involve
4 situations in which analyzing the accused product was
5 impractical.
6       MR. ABRAMS:  Because there is no accused product,
7 and this is --
8       THE COURT:  There's a disagreement.  They say, and
9 there's nothing in the record one way or the other, they say
10 it's actually on the market.  You can't tell me -- I mean,
11 I don't want you to, and we don't know.  They say it's on the
12 market.  So I can't resolve that dispute.  That's not in front
13 of me.
14      I guess what I'm saying is, I mean, maybe we should
15 just figure that out.  They're happy to be more -- they would
16 like to reverse-engineer this.  It's not a question that they
17 won't spend the money to do that, which is a lot of times what
18 you find in some cases.  They're happy to spend the money.
19 It's their burden; they recognize that, as they should.  They
20 recognize that, and they're happy to do something that's not
21 based on what their informed guess is, but they need the
22 product.  So you could facilitate that or not, but we could
23 sort of work out a schedule that that's done.
24      MR. ABRAMS:  Well, in that case, if, you know, they
25 can't get it and there's a dispute about whether or not a

SHEET 6   PAGE 18

18

1    product's on the market, we should stay discovery until --
2    I mean, in fact, we should still strike the infringement
3    contentions and do what I believe Judge Rogers did in the
4    Theranos case and said, she's going to strike them and then, if
5    they want to come back and submit real picks that meet the
6    requirements, they can bring a motion and do that.
7         THE COURT:  Okay, I'm not going to strike them, and
8    actually, I think those cases that you rely on are older, and
9    actually now Judge Gonzalez-Rogers sends all of these to me.
10        MR. ABRAMS:  All right.
11        THE COURT:  It's all of them.  She doesn't do them
12   anymore.  But I appreciate -- I would cite that case, too.
13   I think that case is an outlier, with very unusual facts and
14   things, and I don't think it's the case that just because -- if
15   you don't have the product, that you lose, that you lose.
16   I don't think that's -- I don't think any court has actually
17   interpreted it that way, provided they can state a claim, if
18   they have a good claim, if there has been an offer for sale.
19   If there hasn't been an offer for sale, then they lose.
20   I mean, that's why I think that's really what the heart of
21   really what you're arguing is, it really shouldn't be a 3-1, it
22   should be a summary judgment.
23        I understand the stay argument, but on the other
24   hand, if you're going to amend, if you're going to get it
25   anyway, but if you have it, you could sell it to them.  I mean,

PAGE 19

19

1    you don't have to give it to them.
2         MR. ABRAMS:  It is -- there are prototypes that are
3    under development, and so, you know, everybody -- businesses
4    say we're going to be coming out with a new product or service
5    as some point, but you can't -- it's like a prior restraint
6    on -- you can't rush into court and prevent them from doing
7    something until they actually sell it or offer to sell
8    something, and then you go through the process that the local
9    rules contemplate.
10        They're not there yet.  They didn't -- they filed --
11   they made infringement contentions before there was a product
12   out.  It's a little Kafkaesque, because we're supposed to deal
13   with infringement contentions on a product that is not yet on
14   the market --
15        THE COURT:  But they say it is.  They say it is.  So
16   how can I decide a motion based on that fact?  I can't.
17        MR. ABRAMS:  Well, I think just on their appearance
18   of insufficient infringement contentions, then maybe the
19   Court's order, if the Court is not inclined to strike them, is
20   to tell them that they need to come back and have more
21   specificity, the kind of specificity that the courts require in
22   any case, but particularly integrated circuit cases.  You have
23   30 days, you have 60 days to come back and amend, and show
24   where each element of your asserted claims is on the accused
25   products, and that's what you need to do on a chip case.

PAGE 20

20

1         And the reason why these cases are old is they go --
2    this is the way that chip cases have been handled for years.
3         THE COURT:  Yes, if you have the chip.  I mean, if
4    you have it, but they don't have it.  They want it.  You say it
5    doesn't exist.  They say it does.  I say that's a great -- that
6    will answer the whole case.
7         And so why not -- so it seems to me that's the
8    question that needs to be answered.  I really -- I hear what
9    you're saying.  If it doesn't exist, then you're right, we
10   shouldn't be here.  There should be a way to figure that out.
11   There should be a way to figure that out, right?  I mean, maybe
12   you should just leave, after today, you should share with him
13   what your information is as to why it's on the market, you
14   should get on the phone with your client and figure it out.
15        MR. ABRAMS:  But part of the issue there, your
16   Honor, is that that is flipping the burden to us as the accused
17   infringer to do their work.  Their work is to locate an accused
18   product that is on sale or has been offered for sale, and to
19   give sufficient infringement contentions, and now, the burden
20   will be shifted to us to say, come and give us what you may be
21   developing out in your labs and discussing with your clients,
22   your customers, and that's proprietary information --
23        THE COURT:  No, no, no.  Your burden is that they've
24   made an allegation in this case that there's been an offer for
25   sale, and your burden is to prove that that assertion is

PAGE 21

21

1    untrue, not to prove that they can't prove it.  You could do it
2    two ways.  You could do it by saying they don't have any
3    evidence to support that, or you can put forth your own
4    evidence refuting that, but that is essentially what you're --
5    you do have a burden here, because what you're saying is they
6    don't have a claim, that they can't bring their case.  That's
7    essentially what you're arguing on these infringement
8    contentions, that they can't bring their case.  It's like a
9    12(b)(6) or a Rule 56.
10        MR. ABRAMS:  Well, in a sense yes, but also in a
11   sense no, because they do have this procedural burden to show
12   that they have mapped out the claims with facts on an accused
13   product, and because the accused product isn't there, it fails
14   despite any of their assertions as to why they can't do it.
15        And so again, I get back to, if the Court is not
16   inclined to strike, they should be required to come back and
17   try to amend.  So maybe they come back to the Court and they
18   say, "We tried to do it, we have this information and, you
19   know, this is the best we can do," but we haven't gotten to
20   that point.  They haven't made that effort to get to that place
21   and try to amend and give us more sufficient infringement
22   contentions than just, reasonable opportunity for discovery is
23   likely to show that the data handlers are going to do this and
24   that they're going to be able to establish it.  That's
25   insufficient, and that's long been held insufficient.

22

1    THE COURT:  Well, all right, I hear --
2    MR. SCHODDE:  Your Honor?
3    THE COURT:  Yes, go ahead.
4    MR. SCHODDE:  I'm sorry but, you know, they're
5  falling back to the next trench, you know, in the delay cycle.
6  We filed the lawsuit in August, based on an offer to sell the
7  ULLtraDIMM.  The infringement contentions I think are very well
8  reasoned.  We've stated a claim.  This argument suddenly is
9  shifting to, you know, "there's no real offer for sale" is out
10  of left field for me, but this all started with a motion to
11  compel.  The response was never, we don't have the stuff.  It
12  was, we don't like your infringement contention very much.  The
13  infringement contention is good and sufficient under the case
14  law, under Rule 11, and it fits very neatly with our cause of
15  action.
16    I think we're entitled to the discovery.  You know,
17  whether or not we can prove there's an actual sale or not, that
18  there's an actual sale, this has got nothing to do with what
19  we're here for today.  What we're trying to do is advance the
20  case, and this is core information that is going to help us --
21    THE COURT:  Well, it does have something to do,
22  right?  You can't have filed this suit unless you had a
23  good-faith belief that there was an offer for sale, and courts
24  aren't going to require them to produce all that discovery if
25  there isn't even that, right?  You can't... So there has to be

23

1  that, but that's why I asked why you hadn't moved.  I mean,
2  they've certainly had plenty of time to move for summary
3  judgment if that was, in fact, the case, or if they hadn't, you
4  know, you could probably make an argument under Twombly.
5    MR. SCHODDE:  Yeah, I mean, the "no good faith basis
6  for an offer for sale" is out of left field for me.  I mean,
7  I hadn't heard until this argument, and we've been in court
8  with them now since August.  They've never said, "Oh, we're not
9  actually offering it for sale."  That's just -- I want to be
10  charitable --
11    THE COURT:  Well, it is.  It's beyond the papers, as
12  well.  I mean, it was argued was that they don't have it, not
13  that it --
14    MR. ABRAMS:  And we don't have it.  We have things
15  under development.  And a couple things for context, your
16  Honor.  One is, there's no disagreement that the product was
17  not available when the infringement contentions were served in
18  January.  There's no disagreement.  Look at the letter brief on
19  that.
20    THE COURT:  Yes.
21    MR. ABRAMS:  And the other context is that, getting
22  outside of this courtroom and these very interesting issues of
23  law, there's a lot in the media from Netlist about this
24  lawsuit, about the lawsuits that they're waging, about the
25  infringement contentions, about all the bad acts that they're

24

1  alleging against Diablo and the other defendants, and that has
2  a significant commercial effect.  It's very troubling, lots of
3  press releases on it, and they're going ahead and doing those
4  things without the proper basis, because there just isn't a
5  product.
6    So I'm stumped.  I don't know what to do on the
7  motion to compel.  I don't think there's any basis, there's no
8  case law cited that says that a suspected infringer has to open
9  up their laboratories, has to open up their development efforts
10  so that somebody who has a patent can see if they may or may
11  not be infringing, and that's basically the situation that
12  we're --
13    THE COURT:  No, it's not.  This is what Creagri
14  says, what SAGE says.  The rule requires the plaintiff to
15  disclose the factual basis of its allegations of infringement
16  with as much specificity as possible, with the information
17  currently available to it.  And that was a case, SAGE, in which
18  the product was not available.  They did everything.  They
19  hired private investigators to go through their trash and they
20  still couldn't find it.  I don't think you're going to suggest
21  that they should try to steal anything.
22    MR. ABRAMS:  They shouldn't do so, but they haven't
23  shown that in this case, and those cases --
24    THE COURT:  Haven't shown what?
25    MR. ABRAMS:  They haven't shown any effort to try to

25

1  get this other than a discovery device in which the response
2  was, we don't have anything to supply to you.  That's exactly
3  the point, your Honor.  We have said we do not have a product,
4  we have prototypes under development, and so there's nothing to
5  share with them other than very proprietary internal efforts
6  and discussions perhaps with customers about development of a
7  product.  And so they're suspicious of infringement, and they
8  think that somehow that -- that they're just speculating.
9  These are assumptions about a product that is not on the
10  market.
11    THE COURT:  Well, they're assumptions that are based
12  on the information that they have.  Those are the assumptions
13  that they've made.  If those are assumptions that are wrong,
14  you win.  If the product doesn't exist, you win.  That's why
15  I don't understand you didn't file your motion for summary
16  judgment -- why you didn't file it in September.
17    MR. ABRAMS:  Well, because the case was getting
18  started, and we are where -- well, we have three cases,
19  actually four cases -- in various jurisdictions that are
20  running around, but the read that breaks on that is that these
21  contentions don't work because of this "reasonable discovery is
22  likely to show."  "Reasonable discovery is likely to show,"
23  that's not sufficient, even if they don't have the product.
24  That's guesswork.  That is not the kind of work that we see in
25  the SAGE and the other cases, where they have other sources of

26

1  information, from the internet, from third-party reporters,
2  from reliable sources, where they can say, here's what we know.
3  This is just saying, we're going to guess that reasonable
4  discovery is going to bear us out, but guessing that reasonable
5  discovery is going support them isn't enough.
6        THE COURT:  What if their guess turns out to be
7  right?
8        MR. ABRAMS:  Then good for them, ultimately, but
9  right now, at this case -- at this status, it doesn't work,
10  because unlike the people in SAGE and all the other cases, they
11  had other sources to support them, and in those cases, you
12  know, they could say, we guess we're going to assert that
13  discovery will support these other sources.  Here they're just
14  saying, we're going to assume that other discovery is going to
15  support our guesswork.
16        THE COURT:  Well, their guesswork is based on
17  certain things.  It's based on patents and it's based on --
18  I can't remember what else.
19        MR. ABRAMS:  Let's stop on the -- so it's based on
20  patent applications.  Patent applications could be for
21  anything.  They don't match these patent applications with any
22  products of the company that are accused of infringement.
23  They're just saying there's a patent application out here that
24  we think that that somehow relates to this product that we
25  can't find, and what we're saying is it's not yet on the

27

1  market, it's in development.  So the patent applications are
2  red herrings.
3        THE COURT:  So when you bring your motion, then,
4  your summary judgment, and you win and you can bring your fee
5  motion and then you'll win that, too.  If all you're saying is
6  true, that it's unreasonable, that there was no basis for doing
7  so, then you'll win.
8        But I don't think that, and I think the case law now
9  is clear, that Rule 11 is not in 3-1.
10        MR. ABRAMS:  This is not a Rule 11 motion.
11        THE COURT:  No, but that's what you're arguing.
12  You're arguing that they have no basis to make the contentions
13  that they made, that it's pure guesswork, that there's no --
14  that it's unreasonable.  That's what you're saying, even though
15  they could get lucky and turn out to be right.
16        MR. ABRAMS:  Well, I'm saying it's -- as a --
17  focusing on the sufficiency of 3-1 and 3-2, it fails to meet
18  that standard.  We can talk about Rule 11 later, we can talk
19  about motions for summary judgment later, but for this discrete
20  issue, they don't meet the test.  And that's why getting back
21  to Theranos --
22        THE COURT:  Which test?
23        MR. ABRAMS:  The test of 3-1 --
24        THE COURT:  Yeah, but what?
25        MR. ABRAMS:  -- to sufficiently match, based upon

28

1  information available to them, the elements of the claim to the
2  parts of the circuit that they claim are infringing, and they
3  can't do it, one, on saying that they think reasonable
4  discovery is going to show it, two, patent applications that
5  have no relation to any product that's out there, and three,
6  diagrams that they have made on their own, and four,
7  photographs of prototypes that, you know, are just photographs.
8  There's no basis to connect them.
9        Theranos, which I know your Honor thinks is
10  distinguishable, but there is an important similarity.  The
11  infringement contentions are based on information and belief,
12  which is just another way of saying, we think, with a
13  reasonable opportunity for discovery, we'll be able to support
14  our contentions.
15        And so what Judge Rogers did there was said, okay,
16  that's not sufficient, and the solution is, I'll strike it and
17  you can come back to me with sufficient infringement
18  contentions if and when you get to that point, and then I'll
19  consider letting you do that, and that's the remedy for this
20  aspect of the case.  Summary judgment, Rule 11, those are other
21  things not yet before the Court, which may very well be before
22  the Court, but on this issue, I think Judge Rogers' solution in
23  Theranos is the right solution: Let's strike them.  If they
24  can come back and show the Court that they can meet 3-1 and
25  3-2, let them do what Judge Rogers suggested.

29

1        THE COURT:  And they would meet it by having the
2  device.  Otherwise, they can't meet it.
3        MR. ABRAMS:  Well, let's say -- and I --
4  theoretically and for purposes of argument, if they didn't get
5  the device but the device is out there, and there is
6  information on the web, there are technical specifications
7  available, there are third parties who report about it, there
8  are schematics that are available, there are manuals, et
9  cetera, you know, maybe they get there.
10        THE COURT:  All right, anything further?
11        MR. RILEY:  Just real briefly, your Honor.  I think
12  my colleague left out in his recitation of the patent
13  applications and photos and whatnot, the history between the
14  companies.  There's a related case detailing the trade secret
15  theft that we believe went on here.  The patent applications he
16  is talking about, we don't show they apply -- frankly, I don't
17  know what else they would apply to.  It all came out of work
18  that was being done between Diablo and Netlist using Netlist's
19  designs, Netlist instructions, Netlist architecture, and
20  I think you're seeing some of that in the whistle blower and
21  anonymous confessions that we're getting from former Diablo --
22  we think they're former Diablo employees who got fired, saying,
23  look, they stole your stuff, right?  They copied it and --
24        THE COURT:  Well, they're anonymous letters.
25  I mean --

SHEET 9  PAGE 30

30

1    MR. RILEY:  I know -- well, we don't put that --
2    THE COURT:  It wouldn't get anywhere, like, to get
3 you a search warrant or anything, it's not even -- there's
4 nothing there.
5    MR. RILEY:  But again, you can call it speculation
6 and guessing if you want, but we think it's reasonable and
7 informed inference based on the information that we have, and
8 we've got to get moving forward.  It's a Catch-22, in their
9 view.  You never get off the dime.  If we were filing the case
10 now and the product was on the market and our Complaint was
11 filed-stamped today, you know, maybe something different
12 applies, but the case was filed in August.  The contentions
13 were filed based on what we knew at the time, and I've got a
14 schedule I'm trying to meet, and this is core information and
15 I need to meet that schedule.
16    THE COURT:  All right.  I'll go ahead and issue a
17 written order.  I'll think about it, but I'm inclined to deny
18 the motion and grant the motion to compel.
19    I will say this, though:  If you're going to get the
20 product and you're going to substantively amend your
21 contentions, then you should do them the courtesy of not having
22 them have to do invalidity contentions in response to
23 contentions that you're going to amend anyway.  In other words,
24 you should amend the schedule, if you get that.
25    MR. SCHODDE:  All reasonable requests for

PAGE 31

31

1 contentions, your Honor, will be favorably considered.
2    THE COURT:  All right.  Thank you very much.
3    MR. RILEY:  Thank you, your Honor.
4    MR. ABRAMS:  Thank you.
5                         9:42 a.m.
6            ---o0o---
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

PAGE 32

32

1
2
3              CERTIFICATE OF TRANSCRIBER
4
5    I, Leo Mankiewicz, certify that the foregoing is a
6 true and correct transcript, to the best of my ability, of the
7 above pages of the official electronic sound recording provided
8 to me by the U.S. District Court, Northern District of
9 California, of the proceedings taken on the date and time
10 previously stated in the above matter.
11    I further certify that I am neither counsel for,
12 related to, nor employed by any of the parties to the action in
13 which this hearing was taken; and, further, that I am not
14 financially nor otherwise interested in the outcome of the
15 action.
16
17    _____4/4/2014
18    Signature of Transcriber       Date
19
20
21
22
23
24
25